**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Action No. 14-cr-00231-WJM-15

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. RICKY GARRISON,
2. JAMES TILLMON,
3. CHRISTOPHER MARTINEZ,
4. FRANSISCO AGUILAR,
5. SIMEON RAMIREZ,
6. CHRISTOPHER VIGIL,
7. TRAVIS EDWARDS,
8. DONDRAI FISHER,
9. ARCHIE POOLE,
10. LUIS RAMIREZ,
11. MELVIN TURNER,
12. **SHAWN BEARDSLEY,**
13. SIDNEY TAYLOR,
14. GREGORY WILLIAMS,
15. ROBERT PAINER, AND
16. LATOYA WIMBUSH,

      Defendants,

---

**OBJECTIONS AND CORRECTIONS TO PRE-SENTENCE INVESTIGATION REPORT**

---

Shawn Beardsley, by and though counsel submits the following objections to the Presentence Investigation Report filed in this matter pursuant to Fed. R. Crim. P. 32(f) and states:

1. Page 3 of the PSI, (Document 525). (When referencing the page # of the PSI,

Document 525, Defendant will be referring to the page # at the top of the each page, ie, Page 3 of 39.)  Under the section entitled Alias(es): Mr. Beardsley denies he has ever used any name other than his true name of Shawn Russell Beardsley and Shawn R. Beardsley.  He has no idea who Anselmo Vasquez is and hasn't ever used that name.

    2. Page 4, Alternate ID's...Mr. Beardsley denies using any of the alleged alias DOB or SSN ID's listed.  The Driver's License and DOC # are his correct numbers.

    3. Page 5, Section 4.  Mr. Beardsley was an orderly for approximately 4 months in 2014.  The reason it was only 4 months was that he got moved to a different pod due to other co-defendants in the case being placed in his pod.  It should be noted he is now an orderly again, in Pod A with good evaluations.

    4. On pages 7-9, sections 14-18, 20-26, 32-25  relate to others that Mr. Beardsley does not know and acts that Mr. Beardsley had no part of.  Mr. Beardsley was not involved in any gangs.  The acts set forth in section 19 relate to matters of which Mr. Beardsley has no knowledge.  Melvin Turner (identified in section 27) was someone Mr. Beardsley met only once when he brought 6.45 grams of heroin to Mr. Beardsley on 4-11-14.  This is the small amount of heroin Mr. Beardsley pled to in the instant case.

    5. Mr. Beardsley disputes the alleged facts in paragraph 28 on page 8.   Mr. Beardsley asserts that the officer did not jump a fence while pursuing him.  To the contrary, Mr. Beardsley realized the police were looking for him.  He looked over a fence and saw them.  It was Mr. Beardsley who jumped a fence going TOWARD the officers to surrender himself.  When he did so, he dropped into a ravine and tore his ACL.  The officer then had Mr. Beardsley lay face down, which he did.  The officer then got on top of him and punched him twice in the head

yelling about Mr. Beardsley making them pursue him.  Mr. Beardsley was taken to urgent Care in Arapahoe County.

      6.  Page 8, section 29.  Mr. Beardsley denies the statements of Thorson.  Mr. Thorson brought the methamphetamine to the home of Mr. Beardsley in the early morning hours of June 6, 2014.  The meth in the bag of Thorson was what he'd brought to the house and then left with.  It was never Mr. Beardsley's meth.

      7.  Page 9 Section 30.  Mr. Beardsley denies there was 12.7 grams of meth in his home.  If there was such an amount, he was completely unaware of it.  The girlfriend of Mr. Beardsley was in the home when officers searched and noted they removed a baggie containing maybe 1-2 grams of meth, not 12.7.  Mr. Thorson owned all the meth that had been in the home.  He brought it there and, as far as Mr. Beardsley knew, he left with it in the bag which was later found with Mr. Thorson.   If any meth was left in the home when Thorson exited, Mr. Beardsley was unaware of it and not in possession of it. Mr. Beardsley is a small time user of drugs.  He readily admits he has been an addict for years until he went to prison and got out, clean, in 2007.  He remained clean until 2014 when he was dating another woman with whom he started using again.  There is absolutely no basis to believe that Mr. Beardsley had 12.7 grams of meth.  Mr. Thorson came to the home to visit with Thorson's girlfriend and baby.  When he came in, he had a giant bag of meth.  He left the home with the giant bag of meth after asking Mr. Beardsley and Ms. Boyd to watch his child.  When caught in his car right after leaving the home, it was found that Mr. Thorson had massive quantities of meth in the bag.  If he did leave some meth in the home of Mr. Beardsley, Mr. Beardley was unaware of it.  Additionally, it should be noted that Mr. Beardsley did not live in the home alone.  Ms. Boyd (Beardsley girlfriend) and another man,

Leroy Forbes, shared the premises.  There is simply not any evidence that any meth found in the home after Mr. Thorson left belonged to Mr. Beardsley.

      8.  Page 9 Section 30.  Mr. Beardsley denies the guns as described.  There was no rifle in the home.  There were 2 shotguns only and both of these were in the garage.  The home was solely rented to LeRoy Forbes (he was solely on the lease).  Ms. Boyd and Mr. Beardsley then rented part of the home from Mr. Forbes.   One of the shotguns was on a hook up high in the garage and was not owned by Mr. Beardsley.  The other shotgun was a Sears antique that did not belong to Mr. Beardsley.  It was completely inoperable and was in about 15 pieces.   The disassembled gun belonged to Ryan Reed and, because it was an antique, it had a broken lever and was not usable.  Additionally, because it was in about 15 pieces it was not operable.  Neither of these guns amounts to a dangerous weapon possessed by Mr. Beardsley since neither gun was his, neither were possessed by him, neither were in the area of the house he rented, and one of the guns was completely inoperable.  At no time when Mr. Beardsley was ever found to be in possession of any drugs (either in this case or in any prior case) was he in possession of any guns.  Further, there is no evidence of when, if ever, a meth lab was being operated in the home and no evidence that any operable gun was in Mr. Beardsley's possession at any such time.  Contrary to the justification of the Pretrial Services officer, there is simply no history of Mr. Beardsley owning or possessing guns nor that he owned or possessed in relation to any drug offenses.

      9.  Page 9, Section 30.  Mr. Beardsley's child was placed with his girlfriend (Ms. Boyd)'s parents.

      10.  Page 9, Section 31.  This relates to a motorcycle that Mr. Beardsley sold to Mr. Martinez.  Mr. Martinez was supposed to pay for it in cash.  When he couldn't come up with all

the cash, he gave Mr. Beardsley 5 oz of meth on one occasion in lieu of part of the money he owed on the motorcycle. Mr. Beardsley couldn't use it all so he gave 1 oz back to Mr. Martinez who then gave it back to Mr. Beardsley on another occasion. Mr. Beardsley objects to the implication that he was doing multi ounce deals on a number of occasions which make it seem he was a big player which is not true. Mr. Beardsley is one of the smallest participants in this case (if not the smallest). He was an addict who was generally looking for small amounts for his own personal use. As to the heroin for which he entered this plea, it was not for himself. He saw that a woman friend of a friend was going through bad withdrawal and he was attempting to procure a small amount because she was so sick in her withdrawal.

    11. Page 10, section 40. Mr. Beardsley has pled to the heroin offence which involved 6.45 grams of heroin. Mr. Beardsley objects to the probation officer's attempt to hold him accountable for the firearms. Mr. Beardsley pled only to the possession of the 6.45 grams of heroin,. He was not charged with possession of firearms nor did he plead to such possession. There is not an adequate factual or legal basis for holding him accountable for those firearms. There is insufficient evidence that they were his or were operable. Additionally, Mr. Beardsley objects to the probation officer's attempt to hold him accountable for 12.7 grams of meth. He denies any knowledge of 12.7 grams of meth in the home he shared with 2 other adults. If there was that amount, which he disputes, it was not his and there is no such evidence that it was his. There is not adequate factual or legal basis to hold him accountable for that meth. There is not an adequate factual or legal basis for an upward guideline departure under U.S.S.G. 5K2.21. There is inadequate factual or legal justification for a sentence above the guideline range under 18 U.S.C. 3553. The plea paperwork itself notes that the government has taken account of his conduct,

their investigation, and other potential charges, yet they have found that sentencing Mr. Beardsley to the guideline range of 15-21 months "adequately reflect the seriousness of the actual offense behavior". (Plea Agreement, Document 474, Section VII. )

12. Pages 10 and 11, Section 41. Mr. Beardsley objects to the calculations including meth which was not his. As noted in the plea agreement, the base offense level for the offense to which Mr. Beardsley pled is 12. He admits to possessing a small amount of heroin and there is not a factual or legal basis sufficient to sentence him for meth which he denies possessing.

13. Page 11, section 42. Mr. Beardsley objects to the specific offense characteristics adjustment being applied. There is not sufficient evidence to conclude he operated a meth lab nor that there were any operable guns that belonged to him, nor that any operable guns were possessed by him in conjunction and at the same time any meth lab was operated. The purpose of the location was as a home to Mr. Beardsley, his girlfriend, their child and another roommate.

14. Page 12, Section 48. Mr. Beardsley objects to the adjusted Offense Level being listed as 18. As noted above, he pled only to 6.45 grams of heroin. There is not sufficient evidence that any meth found in the home belonged to Mr. Beardsley and he can't be held accountable for those amounts. Further, he shouldn't be given characteristics adjustment of 2 levels as noted above. His base level should be 12, not 18.

15. Page 12, Section 52. Because his base offense level is 12, he should have a 2 level Acceptance of responsibility adjustment bringing is offense level to 10.

16. As to the criminal history, Mr. Beardsley notes that the offense listed on page 13 at section 58 is not his. He was living out of state at the time of this offense and doesn't believe this is properly attributed to him.

As to the item at Section 64 on page 16, he would note that this offense took place 14 years before the current events and that the felony charge in that case came from meth resin found in a pipe stem in his car. The misdemeanor was for 1-8 ozs of marijuana. He also indicates he never had electronic monitoring in the case. Because of the limited nature of the drugs involved in the case and the age of the case, he would ask that the court consider the 3 points assigned to this case as over-representative of the actual criminal conduct.

As to item at Section 67 on page 19, Mr. Beardsley only notes that this case ran concurrent with the case at Section 64 (resin in the pipe stem). After Mr. Beardsley completed his sentence here, he has since completed everything in all other cases without any remaining issues. Additionally, as to this matter, Mr. Beardsley asserts there was no fire in a motel room. Further, he did not "escape" from a facility. He was staying at his mother's home. One night he stayed with a girlfriend overnight. His mother didn't know where he was when he slept out one night and turned him in.

As to item 69 (page 20), Mr. Beardsley doesn't believe he ever got any jail time on this case.

As to item 74 on page 22, Mr. Beardsley wasn't the owner of the Geneva home. Further, there is a motion to Dismiss this case that is pending. The warrant issued in this case was because Defendant was in federal custody on the within matter and couldn't appear in Arapahoe County.

As to item 75, as noted in #5 above, the facts of the arrest are not correct. It was Mr. Beardsley who jumped a fence TOWARD the officers in order to turn himself in and tore his ACL in so doing. He was then punched twice in the head by the officer.

17. As to item 88 on page 24, the facts are not correct. Mr. Beardsley's girlfriend went to the hospital believing she was in labor. They told her it wasn't labor and to go home. They also gave her a prescription for 2 Ambian's to help her get some sleep. The Drug Store that filled the prescription gave Ms. Boyd approximately 30 Ambian's by mistake. Ms. Boyd hadn't used Ambian before this and didn't realize how they would affect her. She mistakenly took too many. However, the probation report makes it seem like the baby was born while Ms. Boyd was asleep. This is untrue. Ms. Boyd woke up and told Mr. Beardsley that she was in labor. He asked if he had time to take a shower before they went to the hospital. She said yes. Mr. Beardsley was in the shower and Ms. Boyd started to deliver the baby. Mr. Beardsley assisted with the delivery. When the baby arrived, she wasn't breathing and Mr. Beardsley had to resusitate her. He then started to drive to the hospital and encountered a police officer who then called an ambulance. Mr. Beardsley was actually quite heroic in the situation, having helped Ms. Boyd deliver the baby, breathing into the child's mouth, the putting mother and baby in the car to take them to the hospital.

18. As to item 89, it is not true that the child was taken by DCFS at the time of the 2nd bite. The child went to Ms. Boyd's parents upon the arrest of the defendant in the instant case.

19. As to item 93, the home was actually rented by Leroy Forbes II and his was the only name on the lease. Mr. Forbes shared the home with Mr. Beardsley and Ms. Boyd.

20. As to item 112, Mr. Beardsley completed the ARTS program and completed 3 years of parole.

21. As to item 139, there is insufficient evidence to establish that Mr. Beardsley operated a clandestine meth lab or that he was in possession of a firearm as noted above. Further, there is

8

no evidence as to when any such lab was in operation or that there was a gun possessed by Mr. Beardsley at the time of such operation.

22. As to item 144, it should be noted that the pending felony has a pending motion to dismiss. The other two cases are relatively minor cases (misdemeanor and petty offense).

23. As to item 145, there was no fire. There is no evidence that Mr. Beardsley was operating a met lab in the hotel, he wasn't ever charged or convicted of that. Further, there isn't evidence that Mr. Beardsley ever manufactured meth to sell to anyone as opposed to personal use.

24. As to item 146, it should be noted that Mr. Beardsley was out of custody in 2005 and for 7 years stayed drug free. Mr. Beardsley has only been in prison once and in Community Corrections once in the same case. ARTS was the only time he had any drug treatment.

25. As to item 149, Defendant admits he has had a drug problem for years. A look at his record confirms this. His cases are primarily drug and traffic matters, not crimes of violence and not gang cases. His drug cases are all pleas to possession of drugs. He spent years as an addict and his record reflects that.

26. As to item 151, Mr. Beardsley's grandmother will appear at sentencing and we believe she will tell the court she is amenable to Mr. Beardsley living with her. She was just not happy about the thought of the police searching through and maybe breaking her belongings but understands Mr. Beardsley's probation officer may need to come into the house to verify Mr. Beardsley is there and is not involved in drug activity.

27. As to page 35, Mr. Beardsley objects to the recommendation of 37 months since it is contrary to his plea agreement, sentences him for unsubstantiated alleged conduct, and is greater

than necessary in the circumstances of this case. Additionally, in the Footnote to this section, the Pretrial Services officer indicates she is recommending the low end of the range that she had determined. In fact, her determination (to which we object) is for a level 15, Criminal History category of IV, so the range would be 30-37 months. She then recommends 37 months which is the HIGH end of the range.

28. As to page 37, item 2 recommending RRC, Defendant objects that it is not necessary. In fact, since his offense level is actually 12, with a two level acceptance bringing it to Level 10, and even with a Category IV Criminal History, his guideline range is 15-21 months. Mr. Beardsley has been in custody on this case since June 6, 2014. Thus, by his sentencing date of September 9, 2015, he'll have actually served over 15 months.

29. As to page 38, Defendant objects to the justification. The first felony was 16 years ago and related to drugs in his car. The 2nd felony was 15 years ago and related to meth resin in a pipe stem and a small amount of marijuana in a car. The 3rd and 4th felonies were one case, 12 years ago and related to someone else's home having a meth lab in it, not Defendant's home. Officers charged defendant only with possession and criminal mischief. A hotel room was found with some damage but it was not proven that Defendant ran a meth lab in that room or was even present when any such damage was done. Defendant wasn't charged with running a meth lab and didn't plead to that.

Defendant also objects to the statement on this page that defendant has a history of firearms possession. That is not accurate.

Mr. Beardsley's criminal history, cited as justification for an above guidelines maximum sentence was more than adequately accounted for in his plea bargain under the guideline

calculation of 15-21 months.

30.  The Plea Agreement (Document 474) entered into by Mr. Beardsley and the government provides that the "government agrees to refrain from filing a request for an enhancement of sentence in this case pursuant to the provisions of Title 21 U.S.C. Section 851, if applicable.  All remaining charges in the Indictment will be dismissed at the time of the sentencing.  Further, The government agrees to not bring any additional potential charges that are the result of or part of the existing discovery or investigation conditioned upon the defendant continued cooperation as outlined below."

When the government offered Defendant its proposed agreement, it was aware of Defendant's criminal history, the other charges it was dismissing, and the investigation in this case.  Yet, the government still agreed to refrain from requesting an enhancement of the sentence.  The parties were so clear on this issue in the Plea Agreement that they wrote in the following language on page 5 of the Plea Agreement:

"Understanding this and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following three criteria: .....(2) the Court, after determining the otherwise applicable sentencing guideline range, either departs or varies upwardly, or (3) the Court determines that the offense level is greater than 12 (before reduction for acceptance of responsibility) and imposes a sentence based upon that offense level determination.  "

Defendant is entitled to the benefits of the agreement which the government offered and he accepted.  The recommendations in the PSI, if followed, would alter the terms of the plea agreement which was accepted by the Defendant.

Further, at page 9 of the plea agreement (Document 474) it provides that the parties agreed that the base offense level is 12 with a 2 level downward adjustment for acceptance of

11

responsibility resulting in an offense level of 10.  The parties then stated on page 10 that the advisory sentencing range from the agreement is appropriately calculated "because all relevant conduct is disclosed, the sentencing guidelines take into account all pertinent guideline sentencing factors with respect to this defendant, and the charges to which the defendant has agreed to plead guilty adequately reflect the seriousness of the actual offense behavior".   The recommendations and justifications of the probation officer writing the PSI contravenes the plea bargain entered into by the parties and speculates about uncharged and unproven allegations.

WHEREFORE, Defendant Shawn Beardsley notes the objections to his PSI Report.

Respectfully submitted,

s/ Elisa Moran
Elisa Moran
8451 E. Oregon Place
Denver, Co 80231
(Ph) 303-745-6560
(Fax) 303-632-5998
(Email) elisaatty@aol.com
Attorney for Defendant, Beardsley

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Objections and Corrections to Pre-Sentence Investigation Report  was electronically filed with the Clerk of the Court using the CM/ECF system on this 24th  day of August, 2015, which will send notification of such filing to the following email addresses:

Zachary Phillips
AUSA
Zachary.phillips@usdoj.gov

Kyla Hamilton,
U.S. Probation Officer
kyla_hamilton@cod.uscourts.gov

12

                    <u>s/Elisa Moran</u>  
                    Elisa Moran