**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Action No. 14-cr-00231-WJM-15

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. RICKY GARRISON,
2. JAMES TILLMON,
3. CHRISTOPHER MARTINEZ,
4. FRANSISCO AGUILAR,
5. SIMEON RAMIREZ,
6. CHRISTOPHER VIGIL,
7. TRAVIS EDWARDS,
8. DONDRAI FISHER,
9. ARCHIE POOLE,
10. LUIS RAMIREZ,
11. MELVIN TURNER,
12. **SHAWN BEARDSLEY,**
13. SIDNEY TAYLOR,
14. GREGORY WILLIAMS,
15. ROBERT PAINER, AND
16. LATOYA WIMBUSH,

      Defendants,

---

**MOTION FOR BELOW-GUIDELINE OR VARIANT SENTENCE**

---

    Shawn Beardsley, by and though counsel submits the following Motion for Below-Guideline or Variant Sentence and states:

    1. The parties agreed in the plea agreement (document 474) that Mr. Beardsley would plead to count 62, possession of 6. 45 grams of heroin.  The Plea Agreement entered into by Mr.

1

Beardsley and the government provides that the "government agrees to refrain from filing a request for an enhancement of sentence in this case pursuant to the provisions of Title 21 U.S.C. Section 851, if applicable.  All remaining charges in the Indictment will be dismissed at the time of the sentencing.  Further, The government agrees to not bring any additional potential charges that are the result of or part of the existing discovery or investigation conditioned upon the defendant's continued cooperation as outlined below."

When the government offered Defendant its proposed agreement, it was aware of Defendant's criminal history, the other charges it was dismissing, and the investigation in this case.  Yet, the government still agreed to refrain from requesting an enhancement of the sentence.  The parties were so clear on this issue in the Plea Agreement that they wrote in the following language on page 5 of the Plea Agreement:

"Understanding this and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following three criteria: .....(2) the Court, after determining the otherwise applicable sentencing guideline range, either departs or varies upwardly, or (3) the Court determines that the offense level is greater than 12 (before reduction for acceptance of responsibility) and imposes a sentence based upon that offense level determination.  "

Further, at page 9 of the plea agreement (Document 474) it provides that the parties agreed that the base offense level is 12 with a 2 level downward adjustment for acceptance of responsibility resulting in an offense level of 10.  The parties then stated on page 10 that the advisory sentencing range from the agreement is appropriately calculated "because all relevant conduct is disclosed, the sentencing guidelines take into account all pertinent guideline sentencing factors with respect to this defendant, and the charges to which the defendant has agreed to plead guilty adequately reflect the seriousness of the actual offense behavior".

2

The U.S. Attorney's office has been true to its word in this case and after consulting with the Assistant U.S. Attorney, Mr. Phillips, yesterday, it is clear they plan to honor their plea agreement as set forth above.

If the Court also honors that plea agreement, then Defendant would withdraw this motion.

However, the Probation Officer who wrote the PSI in this case is recommending that the Court sentence defendant to a much longer sentence, which is what necessitated this motion.   In the PSI the probation officer is attempting to have Mr. Beardsley sentenced for 12.7 grams of Meth that is not his, which raises his base offense level to 16 minus 3 for acceptance = 13,  then attempts to upwardly depart by 2 levels more claiming that he should be sentenced for a meth lab and guns...none of which were proven to have been his or operable.    Defendant notes his objections to the PSI filed on 8-24-15.  (Document 540).

2.  Consistent with the holding in Gall v. U.S. , 552 U.S. 38, 128 S. Ct. 586 (2007), this Court is required to begin its sentencing analysis with a correct calculation of the advisory sentencing guidelines.  Then, the court must turn to an "individualized assessment" of the case "based on the facts presented".  Id at 597.  That assessment is done within the mandatory framework of 18 U.S.C. 3553(a).

Therefore, Defendant would first assert that a correct calculation of the advisory sentencing guidelines provide that Defendant should only be sentenced for the 6.45 grams of heroin to which he pled with a base of 12 and an adjusted level of 10 after acceptance.  If the Court does so, this motion becomes unnecessary.  If, on the other hand, the Court were to calculate the guideline as recommended by the PSI, Defendant would have to object but nevertheless argue that the factors in Section 3553(a) warrant a downward variance.

3

The language of that statute is that this Court "shall impose a sentence which is sufficient but not greater than necessary to comply with the purposes set forth in paragraph (2) of this subsection". The Court must consider the seven factors set forth therein. The Guidelines are to be given no more weight than any other of the statutory factors.   The 10th Circuit issued its opinion in U.S. v. Smart , 518 F3d 800,807 (10th Cir. 2008) in which it abrogated prior opinions requiring district courts to justify "degrees of variance" from the Guidelines. Accordingly, Mr. Beardsley asks this court to consider all the arguments in light of the Section 3553 factors and objectives and to impose a sentence of 15 months.

3.  The mandate of 18 U.S.C 3553 requires the Court to independently assess two groups of facts: Those which define the defendant and those which aggravate or mitigate against the seriousness of the instant offense.  Nothing about the statute encourages the Court to manufacture aggravators for the purpose of justifying a sentence.  But, when writing the PSI report, the Probation officer did just that...assuming the role of stating certain "facts" without the evidence to support them.  Those alleged "facts" and "justifications" contravention the  Plea Agreement of the parties wherein the adjusted guideline level of 10 for the offense took into consideration the relevant conduct including the knowledge of the investigation and what was not charged in the case.   Defendant asserts that the "facts" presumed by the Probation Officer in attempting to count 12.7 grams of Meth in the base offense when he only pled to 6.45 grams of heroin was in error.  The 12.7 grams of Meth attributed to him was not his and he was never in possession of it.  On June 6, 2014, Troy Thorson was caught in his car with large quantities of meth after he went into Defendant's home with a bag and dropped off his baby with Defendant. He had brought the drugs into Defendants home and, as far as defendant knew, he'd left with all

his drugs still in his bag. Defendant did not know he'd left any meth in Defendant's home. Therefore, it cannot be established that Defendant possessed the meth for which the PSI is intending to sentence him.  He was never charged with that meth for the very reasons stated...it cannot be shown it was his.

Further, the alleged "meth lab" and "guns" that the Probation officer used to justify the 2 level upward departure are in error.  There was not a "meth lab" set up in the home.  There may have been certain components that can be used to cook meth, but there was no "meth lab" in the home at the time of the arrest.  Further, there was no evidence as to when a meth lab was ever operable in the home.

As to the guns:  there was no evidence that defendant owned the guns, had possession of the guns, that the guns were operable, and that the guns were in the possession of the Defendant when any drug offense was occurring. Mr. Beardsley shared the home with 2 other adults.  The guns were in the garage, not in the part of the home lived in by Mr. Beardsley.  One gun was completely inoperable and was found in about 15 pieces.  Further, there is no "tie" between one shotgun in the garage hung high up on the wall, one shotgun in many pieces, (neither of which belonged to Defendant) and any alleged meth lab or other illegal drug activity.

Mr. Beardsley pled only to the small amount of heroin from an April 11, 2014 buy.  This all took place outside of his home.   He had no guns on that date and was not anywhere near a meth lab.   He rode his motorcycle to pick up the heroin which he was buying for a friend's girlfriend who was having a bad detox.   Simply put, the Probation Officer's recommendation that Mr. Beardsley should be sentenced for meth that wasn't his almost 2 months after the date of the heroin deal which was the subject of Count 62 is not supportable by the evidence.

Additionally, the "meth lab" and guns that weren't operable or weren't his which is why they weren't charged to Defendant in the indictment and he didn't plead to those assertions. This is a substantial over-statement of the seriousness of the instant offense with no empirical or other rational justification.

4. Other Statutory Factors support a guideline sentence below that recommended by the probation officer in the PSI.

A. The History and Characteristics of this Defendant.

Mr. Beardsley is 46 years old. He is a skilled carpenter and mechanic. He has had a long history of drug addition. When he is clean and sober, he has a history of good paying jobs. His criminal record reflects that he has been an addict for a long time. He has a string of traffic violations and drug possession convictions. What he doesn't have is any gang affiliations and no crimes of violence. He is a tiny player in the instant case. He generally would only possess very tiny amounts of drugs at any given time...just enough for his own personal use. In the instant case, he procured the 6.45 grams of heroin for the girlfriend of a friend who was suffering bad withdrawal symptoms. Mr. Beardsley doesn't use heroin...this was to assist a friend and it was a small amount of the drug.

When Mr. Beardsley completed his one and only State court prison term in 2005, he managed to remain clean and sober for 7 years until 2012 when he started dating a woman who was using meth and he began using again. Thereafter, he began to see Ms. Boyd and was attempting to quit drugs again when he was arrested in this case.

The 2-26-2000 felony of Mr. Beardsley for possession occurred 14 years before the instant case. It barely made the cutoff date for not even being counted. The 2003 drug case

6

which gave him 3 points was 11 years before the instant case.  Between them, they account for 6 of his 8 criminal history points.  Importantly, Mr. Beardsley criminal history has been accounted for under the guidelines and has resulted in a criminal history category of IV.

Having now been incarcerated for 15 months, he has again achieved complete sobriety. More importantly, he is the father of baby Daisy.  As noted in the Objections to PSI, Mr. Beardsley helped deliver baby Daisy on the floor of his home.  When she arrived, she wasn't breathing.  Mr. Beardsley had to resuscitate her and then rushed mother and child to the hospital. That was a life-changing event for Mr. Beardsley.  He is clean and sober, he has work skills, he has jobs lined up for after his term of imprisonment, he has housing lined up with his grandmother...and he knows he has to be a good father for baby Daisy.  He is highly motivated to use his sobriety and this chance to make a difference in his life and that of Daisy.

> B.  The need to protect the public, promote respect for the law and afford adequate deterrence.

Mr. Beardsley doesn't dispute his history of traffic offenses and drug possession offenses. However, he poses no threat to the public.  He has already served his time on the prior drug offenses but would point out that none of them involved guns, none involved crimes of violence, none involved gang activity (he is not and never has been in a gang).

Defendant would point this court to the Memorandum to the U.S. Attorneys and Assistant Attorney General for the Criminal Division issued by the Attorney General, Eric Holder on August 12, 2013 (attachment 1).  While it specifically references mandatory minimum sentences, much of the language there in is applicable here.  As Atty General Holder notes, "Long sentences for low-level, non-violent drug offenses do not promote public safety, deterrence, and

rehabilitation.  Moreover, rising prison costs have resulted in reduced spending on criminal justice initiatives, including spending on law enforcement agents, prosecutors, and prevention and intervention programs.  These reductions in public safety spending require us to make our public safety expenditures smarter and more productive."

Attorney General, Holder, reiterated these themes again on December 19, 2014 and referenced the Smart on Crime initiative.(hereinafter SOC)  (Attachment 2).  SOC focuses on prosecutions of the Most Serious Cases involving national security, violent crime, financial fraud and protecting the most vulnerable in society.  Mr. Beardsley, in this case, falls under none of those categories.

The sentence set forth in the plea agreement of Level 10, Criminal History Level IV, is adequate to promote respect for the law and deterrence.  He pled to possession of 6.45 grams of heroin.  He didn't even know most members of the conspiracy (he knew Martinez and he met Turner only once when he brought him the 6.45 gr. of heroin).  The purposes of the statute are adequately served by a sentence of 15-21 months.

C.  Just Punishment

Sentencing is set for September 9, 2015.  By that time, Mr. Beardsley will have been in continuous custody for over 15 months.  He asks the Court to find that serving over 15 months in Custody for the purchase of a small amount of heroin (6.45 grams) is just punishment for what Mr. Beardsley did in this case.

D.  The need to avoid unwarranted sentencing disparities.

Here, the AUSA,  who is knowledgeable about the facts of the case, the complete investigation, knew about the dismissed charges, and about what other charges could have been

8

brought, made the decision to offer the plea agreement to defendant.  The AUSA had assessed what it could and couldn't prove and then made the plea bargain noting that if the Court were to calculate the Guidelines above level 12 (minus 2 for acceptance), Defendant could appeal.  The AUSA made a calculated decision in this case.  That decision by the AUSA here is consistent with the Smart on Crime Initiative (SOC) (Attachment 2) because Mr. Beardsley was a low-level, nonviolent drug offender who has no ties to large-scale organizations, gangs or cartels.   SOC provides that...  "these people would receive sentences better suited to their individual conduct rather than excessive prison terms more appropriate for violent criminals or drug kingpins Reserving the most severe penalties for serous, high-level, or violent drug traffickers will better promote public safety, deterrence, and rehabilitation—while making our expenditures smarter and more productive." (Attachment 2, page 3).

The PSI asserts that Mr. Beardsley should be sentenced for 12.7 grams of meth that was not his.  This, in and of itself, would allow for unwarranted sentencing disparities.  The same is true for the request in the PSI for a 2 level upward adjustment for an alleged meth lab and guns in the house.  There was no operable lab in the house...only some chemicals and components that may be used for that purpose.  There wasn't evidence Mr. Beardsley had operated that alleged meth lab nor that the 2 guns (one broken and in about 15 pieces) (one hanging in the garage)   1) were his, 2) were operable, 3) were possessed during a drug crime.  To enhance Mr. Beardsley's sentence on these unproven assertions would amount to unwarranted sentencing disparities between Mr. Beardsley and other defendants who have a criminal history level IV and have pled to possession of 6.45 grams of heroin.

5.  For all the foregoing reasons, if this Court is inclined to follow the recommendation of

the Probation officer in the PSI, then Mr. Beardsley requests this court give him a sentence below

those recommended guidelines and sentence him pursuant to his plea bargain with a range of 15-

21 months...and seeks a sentence at the low end of 15 months.

Respectfully submitted,

s/ Elisa Moran
Elisa Moran
8451 E. Oregon Place
Denver, Co 80231
(Ph) 303-745-6560
(Fax) 303-632-5998
(Email) elisaatty@aol.com
Attorney for Defendant, Beardsley

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Objections and Corrections to Pre-Sentence Investigation Report  was electronically filed with the Clerk of the Court using the CM/ECF system on this 24th  day of August, 2015, which will send notification of such filing to the following email addresses:

Zachary Phillips
AUSA
Zachary.phillips@usdoj.gov

Kyla Hamilton,
U.S. Probation Officer
kyla_hamilton@cod.uscourts.gov

s/Elisa Moran
Elisa Moran

10