expense after Medicaid. At the federal level, the Bureau of Prisons comprises one-third of the Justice Department's budget.

This requires a top-to-bottom look at our system of incarceration. For many non-violent, low-level offenses, prison may not be the most sensible method of punishment. But even for those defendants who do require incarceration, it is important to ensure a sentence length commensurate with the crime committed. Our policies must also seek to eliminate unfair sentencing disparities.

It is time for meaningful sentencing reform. As a start, the Attorney General is announcing a change in Department of Justice charging policies so that certain people who have committed low-level, nonviolent drug offenses, who have no ties to large-scale organizations, gangs, or cartels will no longer be charged with offenses that impose draconian mandatory minimum sentences. Under the revised policy, these people would instead receive sentences better suited to their individual conduct rather than excessive prison terms more appropriate for violent criminals or drug kingpins. Reserving the most severe penalties for serious, high-level, or violent drug traffickers will better promote public safety, deterrence, and rehabilitation – while making our expenditures smarter and more productive.

The Attorney General also plans to work with Congress to pass legislation that would reform mandatory minimum laws. A number of bipartisan proposals – including bills by Senators Dick Durbin (D-IL) and Mike Lee (R-UT), as well as Senators Patrick Leahy (D-VT) and Rand Paul (R-KY) – show the emerging consensus in favor of addressing this issue.

Sentencing reform also entails considering reductions in sentence for inmates facing extraordinary and compelling circumstances – and who pose no threat to public safety. In late April, the Bureau of Prisons (BOP) expanded the medical criteria that will be considered for inmates seeking compassionate release. In a new step, the Attorney General is announcing revised criteria for other categories of inmates seeking reduced sentences. This includes elderly inmates and certain inmates who are the only possible caregiver for their dependents. In both cases, under the revised policy, BOP would generally consider inmates who did not commit violent crimes and have served significant portions of their sentences. The sentencing judge would ultimately decide whether to reduce the sentence.

III. **PURSUE ALTERNATIVES TO INCARCERATION FOR LOW-LEVEL, NON-VIOLENT CRIMES.**

3

Incarceration is not the answer in every criminal case. Across the nation, no fewer than 17 states have shifted resources away from prison construction in favor of treatment and supervision as a better means of reducing recidivism. In Kentucky, new legislation has reserved prison beds for the most serious offenders and re-focused resources on community supervision and evidence-based programs. As a result, the state is projected to reduce its prison population by more than 3,000 over the next 10 years – saving more than $400 million.

Federal law enforcement should encourage this approach. In appropriate instances involving non-violent offenses, prosecutors ought to consider alternatives to incarceration, such as drug courts, specialty courts, or other diversion programs. Accordingly, the Department will issue a "best practices" memorandum to U.S. Attorney Offices encouraging more widespread adoption of these diversion policies when appropriate.

In its memorandum, the Department will endorse certain existing diversion programs as models. In the Central District of California, the USAO, the court, the Federal Public Defender, and the Pretrial Services Agency (PSA) have together created a two-track specialty court/post-plea diversion program, known as the Conviction and Sentence Alternatives (CASA) program. Selection for the program is not made solely by the USAO, but by the program team, comprised of the USAO, the Public Defender, PSA, and the court. Track one is for candidates with minimal criminal histories whose criminal conduct appears to be an aberration that could appropriately be addressed by supervision, restitution and community service. Examples of potential defendants include those charged with felony, though relatively minor, credit card or benefit fraud, mail theft, and narcotics offenses. Track two is for those defendants with somewhat more serious criminal histories whose conduct appears motivated by substance abuse issues. Supervision in these cases includes intensive drug treatment. Examples of eligible defendants are those charged with non-violent bank robberies, or mail and credit card theft designed to support a drug habit.

The Department will also recommend the use of specialty courts and programs to deal with unique populations. Examples include a treatment court for veterans charged with misdemeanors in the Western District of Virginia, and the Federal/Tribal Pretrial Diversion program in the District of South Dakota, which is designed specifically for juvenile offenders in Indian country.

IV.   **IMPROVE REENTRY TO CURB REPEAT OFFENSES AND RE-VICTIMIZATION.**

4

After prison, recidivism rates are high. A reduction in the recidivism rate of even one or two percentage points could create long-lasting benefits for formerly incarcerated individuals and their communities.

To lead these efforts on a local level, the Department is calling for U.S. Attorneys to designate a prevention and reentry coordinator within each of their offices to focus on prevention and reentry efforts. As part of this enhanced commitment, Assistant U.S. Attorneys will be newly encouraged to devote time to reentry issues in addition to casework. The Executive Office of U.S. Attorneys will report periodically on the progress made in USAOs on the reentry front.

Other efforts to aid reentry are also being launched. It is well documented that the consequences of a criminal conviction can remain long after someone has served his or her sentence. Rules and regulations pertaining to formerly incarcerated people can limit employment and travel opportunities, making a proper transition back into society difficult. Currently, the Justice Department is working with the American Bar Association to publish a catalogue of these collateral consequences imposed at the state and federal level. To address these barriers to reentry, the Attorney General will issue a new memorandum to Department of Justice components, requiring them to factor these collateral consequences into their rulemaking. If the rules imposing collateral consequences are found to be unduly burdensome and not serving a public safety purpose, they should be narrowly tailored or eliminated.

The Attorney General's Reentry Council has published helpful materials on reentry efforts related to employment, housing, and parental rights. In an update to these materials, the Department will publish new fact sheets on ways to reduce unnecessary barriers to reentry in two areas: (1) to connect the reentering population with legal services to address obstacles such as fines and criminal records expungement when appropriate; and (2) to highlight efforts to reduce or eliminate fines at the local level.

V.    **'SURGE' RESOURCES TO VIOLENCE PREVENTION AND PROTECTING MOST VULNERABLE POPULATIONS.**

Even as crime levels have fallen, many of our communities still suffer from alarming rates of homicides, shootings and aggravated assaults. Confronting this problem and its root causes with a holistic approach remains a priority for the Department of Justice.

By exploring cost-effective reforms to our prison system, it will allow law enforcement to redirect scarce federal resources towards the priority of violence prevention.

Under a new memorandum issued by the Deputy Attorney General, U.S. Attorneys will put in place updated anti-violence strategies that are specific to their district. As an initial step, they will be urged to lead anti-violence forums to include Special Agents-in-Charge,

5

Assistant Special Agents-in-Charge, U.S. Marshals and Chief Deputy Marshals, and State and Local Police Chiefs, Commanders, and Captains. With multiple federal, state, and local agencies involved in the fight against violent crime, strong relationships and robust information sharing are critical to achieve common goals and to avoid the unnecessary duplication of competing resources and efforts.

To monitor the success of these district-based anti-violence strategies, the Department will, in the coming months, implement new information-sharing techniques to share data from high-crime communities across Justice Department components.

The Department will also stress efforts to reduce and respond to violence, particularly violence against women and youth violence.

Within the Department, the Office of Community Oriented Policing Services (COPS), the Office of Victims of Crimes (OVC), and the Office of Violence Against Women (OVW) have partnered together to provide law enforcement agencies with the resources, technical assistance, and support they need to combat gender bias and sexual assault.

In April, the Department issued a revised Sexual Assault Forensic Examinations (SAFE) Protocol to standardize up-to-date approaches to victim-centered forensic medical examinations. In a new step, OVW will release a companion document that applies the protocol's recommendations for use in correctional facilities. A similar document will be released in the coming weeks for tribal communities.

In the coming months, the Department will also work with the Federal Bureau of Investigation to support states' implementation of the revised Uniform Crime Report definition of "rape."

In the effort to further protect children, the Department envisions several new steps:

- As part of the Attorney General's Defending Childhood Initiative:

    o This fall, the Department will launch a public awareness and community action campaign to stem youth violence.

    o The Department will establish a Task Force on American Indian/Alaska Native Children Exposed to Violence.

    o The Department will partner with select states to form "State Commissions" that will implement model public policy initiatives at the state and local level to reduce the impact of children's exposure to violence, including the adaptation and implementation of recommendations of the Attorney General's Task Force on Children Exposed to Violence.

- The Department will prioritize School Resource Officer requests in its COPS Hiring grant awards this year.

6

- The Department and the Department of Education will jointly issue guidance to public elementary and secondary schools on their federal civil rights obligations to administer student discipline without discrimination on the basis of race, color, or national origin, and the Department will continue to vigorously enforce civil rights laws to ensure that school discipline is fair and equitable.

- In September, the Department will host the National Forum Youth Violence Prevention Summit, which, for the first time, will convene stakeholders from the Forum, Defending Childhood, Community-Based Grant Programs, and youth violence prevention initiatives at other federal agencies to collaborate on innovative strategies and comprehensive solutions to end youth violence, protect the children that are exposed to it, and create safer and healthier communities.

In addition to these violence prevention efforts, the Department also remains focused on serving victims of crime. In June, the Justice Department issued the *Vision 21* report that offers an unprecedented snapshot of the current state of victim services and calls for sweeping, evidence-based changes to bring these services into the 21st century. It will empower survivors by closing research gaps and developing new ways to reach those who need our assistance the most.

7