IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal case No. 14-cr-00231-WJM-01

UNITED STATES OF AMERICA,

    Plaintiff

v.

**1. RICKY GARRISON,**
2. JAMES TILLMON,
3. CHRISTOPHER MARTINEZ,
4. FRANCISCO AGUILAR,
5. SIMEON RAMIREZ,
6. CHRISTOPHER VIGIL,
7. TRAVIS EDWARDS,
8. DONDRAI FISHER,
9. ARCHIE POOLE,
10. LUIS RAMIREZ,
11. MELVIN TURNER,
12. SHAWN BEARDSLEY,
13. SIDNEY TAYLOR,
14. GREGORY WILLIAMS,
15. ROBERT PAINTER, and
16. LATOYA WIMBUSH**,**

    Defendants.

---

### MOTION FOR DISCOVERY CONCERNING CONFIDENTIAL SOURCES

---

Defendant Garrison, joined by all co-defendants, request that this Court order the prosecution to produce the materials and information set forth below:

**I. LAW**

    **A.   THE GOVERNMENT'S OBLIGATION TO DISCLOSE EVIDENCE FAVORABLE TO THE ACCUSED**

1

1. **Due Process Requirements**

The Due Process Clause of the Constitution of the United States requires that the government must disclose information favorable to the accused that is material to either guilt or to punishment. In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87.

The Court subsequently extended the prosecution's disclosure obligation to include "evidence that is useful to the defense in impeaching government witnesses, even if the evidence is not inherently exculpatory." *United States v. Rivas*, 26 F. Supp. 3d 1082, 1105 (D.N.M. 2014) (citing, inter alia, *Giglio v. United States*, 405 U.S. 150, 153 (1972); see also *Douglas v. Workman*, 560 F.3d 1156, 1172-73 (10th Cir. 2009) ("no distinction is recognized between evidence that exculpates a defendant and 'evidence that the defense might have used to impeach the [United States'] witnesses by showing bias and interest.'")

2. **The Government's Discovery Obligations Do Not Require the Accused to Request Disclosure of Favorable Evidence, Although Such Disclosure Is Specifically Requested Here**

The Supreme Court in *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) elucidated that it is not necessary that a defendant request exculpatory evidence: "regardless of request, favorable evidence is material, and constitutional error results from its suppression by the government 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been

different.'" (quoting *United States v. Bagley*, 473 U.S. at 682). See also *Douglas v. Workman,* 560 F.3d at 1172 ("The government's obligation to disclose exculpatory evidence does not turn on an accused's request."); *United States v. Summers*, 414 F.3d 1287, 1304 (10th Cir. 2005) ("[T]he prosecution has an affirmative duty to disclose exculpatory evidence clearly supporting a claim of innocence even without request."), overruled on other grounds as recognized in *United States v. Martinez*, 78 F. App'x 679, 685 (10th Cir. 2003) (unpublished).

The reason that burden is placed on the government to produce material favorable to the defense is that "the prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of 'reasonable probability' is reached."  *Kyles v. Whitley*, 514 U.S. at 437.

### 3. Where the Government Fails to Produce Evidence that is Helpful to the Accused, Whether the Prosecutor acted with Good Faith or Bad Faith is Irrelevant

The Supreme Court in *Brady* made clear that due process is violated whenever the government suppresses evidence favorable to the defendant, "irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. at 87; *United States v. Quintana*, 673 F.2d 296, 299 (10th Cir. 1982) ("Under *Brady*, the good or bad faith of government agents is irrelevant."). "This means, naturally, that a prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence." *Kyles v. Whitley*, 514 U.S. at 439. The United States has an obligation to "volunteer exculpatory evidence never requested, or requested only in a general way," although the obligation only exists "when suppression of the evidence would be of sufficient

significance to result in the denial of the defendant's right to a fair trial." *Kyles v. Whitley*, 514 U.S. at 433 (internal quotation marks omitted).

4. **The Prosecution has a Duty to Search Files Maintained by Other Government Agencies**

In *Kyles v. Whitley*, 514 U.S. 419, 437 (1995), the Supreme Court held that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." Thus, a prosecutor may have a duty to search files maintained by other "governmental agencies closely aligned with the prosecution" when there is "some reasonable prospect or notice of finding exculpatory evidence." *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992). It is equally well established that "a prosecutor's office cannot get around *Brady* by keeping itself in ignorance, or by compartmentalizing information about different aspects of a case." *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984). As Judge Matsch recognized in *United States v. McVeigh*, 954 F. Supp. 1441, 1450 (D. Colo. 1997):

> The lawyers appearing on behalf of the United States, speaking for the entire government, must inform themselves about everything that is known in all of the archives and all of the data banks of all of the agencies collecting information which could assist in the construction of alternative scenarios to that which they intend to prove at trial. That is their burden under Brady.  They must then disclose that which may be exculpatory under the materiality standard of *Kyles*.

Furthermore, the objection that discovery requests are "burdensome" is not a proper objection, as "[t]he failure to comply with a constitutional command to present evidence fairly at trial is not excused by any inconvenience, expense, annoyance or delay. Determining materiality of information discoverable under Rule 16 or required to be produced under *Brady* must not be made according to a cost benefit analysis." *Id*.

4

The Government's investigation of Mr. Garrison appears to have involved numerous agencies, including, but not limited to, the Aurora Police Department, the Rocky Mountain Safe Streets Task Force (which is a partnership between the Federal Bureau of Investigation ("FBI"), Federal Protective Service; the Aurora, Denver, and Lakewood Police Departments; the Colorado State Patrol; and the Jefferson County Sheriff's Office), Department of Immigration Customs ("ICE"), the Drug Enforcement Administration ("DEA") and the Metro Gang Task Force which is comprised of several local law enforcement groups and federal agencies such as the FBI. This requires that the government search the files maintained by these entities and agencies for evidence favorable to Mr. Garrison. The scope of the government's obligation to search was reiterated *Smith v. Secretary of N.M. Dep't of Corrections*, 50 F.3d 801, 825 n. 36 (10th Cir. 1995), where the court stated:

> The question of how much of the knowledge possessed by various arms of the State should be imputed to the prosecution is an issue of first impression in this circuit. Clearly, if the prosecution had actual knowledge that several arms of the State were involved in the investigation of a particular case, then the knowledge of those arms is imputed to the prosecution.

(emphasis supplied).  See also *United States v. Beers*, 189 F.3d 1297, 1303 (10th Cir. 1999) ("Information possessed by other branches of the federal government, including investigating officers, is typically imputed to the prosecutors of the case.")  The court in *United States v. Brooks* explained that:

> The cases finding a duty to search have involved files maintained by branches of government "closely aligned with the prosecution", *United States ex rel. Fairman*, 769 F.2d 386, 391 (7th Cir. 1985), and in each case the court has found the bureaucratic boundary too weak to limit the duty. Thus in *United States v. Auten* ,632 F.2d 478 (5th Cir. 1980)] the duty reached the key witness's convictions in the FBI and National Crime Information Center files, see 632 F.2d at 480-81; in *United States v.*

5

> *Deutsch*, 475 F.2d 55 (5th Cir. 1973) - possible adverse information in the personnel file of a Post Office employee who testified that defendants sought to bribe him…

966 F.2d at 1503.

### 5. Because the "Materiality" Prong is only Functional in an Appellate Context, it Should not be Applied in a Pretrial Application of *Brady*

The holding in *Brady v. Maryland* requires disclosure of evidence that is both favorable to the accused, and "material" either to guilt or to punishment." 373 U.S. at 87. "This standard was developed in the context of appellate consideration of the effect of non-disclosure." *United States v. Carter*, 313 F. Supp. 2d 921, 924 (E.D. Wis. 2004). See, e.g., *Cone v. Bell*, 556 U.S. 449, 470 (2009) ("favorable evidence is subject to constitutionally mandated disclosure when it 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" (quoting *Kyles v. Whitley*, 514 U.S. at 435)); *United States v. Bagley*, 473 U.S. at 682. ("Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."); *United States v. Allen*, 603 F.3d 1202, 1215 (10th Cir. 2010) (evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." (quoting *United States v. Velarde*, 485 F.3d 553, 558 (10th Cir.2007)). See also *United States v. Acosta*, 357 F. Supp. 2d 1228, 1232 (D. Nev. 2005) ("*Brady* and its progeny arise in a post-trial context. Specifically, these cases address after trial whether the failure to disclose favorable material evidence in violation of defendant's due process rights justifies a new trial. As *United States v. Bagley*, 473 U.S. 667 (1985), makes clear, only suppression of

6

evidence that cumulatively rises to the level of 'material' violates defendant's due process rights. *Brady's* concern whether a constitutional violation occurred after trial is a different question than whether Brady is the full extent of the prosecutor's duty to disclose pretrial. Brady's materiality standard for due process violations in a post-trial context should not be used to sanction any and all conduct that does not rise to a constitutional violation of defendant's due process rights because the United States Attorney is held to a higher standard."); *United States v. Carter*, 313 F. Supp. 2d at 924. ("[T]he materiality prong presumes that the trial has already occurred and requires the court to determine whether the result could have been different had the evidence been disclosed. But a court deciding whether material should be disclosed prior to trial does not have the luxury of reviewing the trial record."). See also *United States v. Agurs*, 427 U.S. 97, 108 (1976) ("there is a significant practical difference between the pretrial decision of the prosecutor and the post-trial decision of the judge"). Judge Matsch recognized this distinction in *United States v. McVeigh*:

> There is no established procedure for the due process disclosures required by Brady. The information should be given to the defense as it becomes known to the government, since the information and material must be available to the defense in sufficient time to make fair use of it. Generally, Brady violations first come before a court after the trial and the court may then consider the materiality of what was suppressed or omitted from disclosures made, in the context of the complete trial record. Indeed, it is not possible to apply the materiality standard in Kyles before the outcome of the trial is known.

954 F. Supp. at 1449-1450.

The leading case in applying *Brady* in the pretrial context is *United States v. Sudikoff*, 36 F. Supp. 2d 1196, (C.D. Cal. 1999). Judge Pregerson in *Sudikoff* stated,

> "This [*Brady/Bagley*] standard is only appropriate, and thus applicable, in the context of appellate review. Whether disclosure would have influenced

7

the outcome of a trial can only be determined after the trial is completed and the total effect of all the inculpatory evidence can be weighed against the presumed effect of the undisclosed *Brady* material. . . . This analysis obviously cannot be applied by a trial court facing a pretrial discovery request. Additionally, the post-trial review determines only whether the improper suppression of evidence violated the defendant's due process rights. However, that the suppression may not have been sufficient to violate due process does not mean that it was proper. . . . In this light, it is clear that *Brady*'s materiality standard determines prejudice from admittedly improper conduct. It should not be considered as approving all conduct that does not fail its test. Therefore, post-trial standards and cases applying them are not helpful for determining the government's disclosure obligations.

This standard is only appropriate, and thus applicable, in the context of appellate review. Whether disclosure would have influenced the outcome of a trial can only be determined after the trial is completed and the total effect of all the inculpatory evidence can be weighed against the presumed effect of the undisclosed Brady material. [citations omitted]. This analysis obviously cannot be applied by a trial court facing a pretrial discovery request.

Additionally, the post-trial review determines only whether the improper suppression of evidence violated the defendant's due process rights. However, that the suppression may not have been sufficient to violate due process does not mean that it was proper. This conclusion is clear from consideration of an analogous standard of review, the standard for ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). In Strickland, the Supreme Court set the standard for ineffective assistance of counsel as assistance that falls below reasonably objective standards and that prejudiced the defendant. As its standard for prejudice, the Supreme Court drew from *Brady* 's materiality standard. See *Strickland*, 466 U.S. at 694 ("Accordingly, the appropriate test for prejudice finds its roots in the test for materiality of exculpatory information not disclosed to the defense by the prosecution...."); *United States v. Spawr Optical Research*, Inc., 864 F.2d 1467, 1472 n. 6 (9th Cir.1988) ("The Strickland Case standard for prejudice has been considered to impose virtually the same burden on the defense as the standard for materiality in *Brady* claims."). Thus, the tests for *Strickland* and *Brady* are similar.  In this light, it is clear that *Brady's* materiality standard determines prejudice from admittedly improper conduct. It should not be considered as approving all conduct that does not fail its test. Just as unreasonably deficient assistance of counsel is improper even if it does not meet the prejudice prong of *Strickland* and result in a Sixth Amendment violation, so suppression of exculpatory evidence is improper even if it does not satisfy the materiality standard of Brady and result in a due process violation.

8

> Though an error may be harmless, it is still error. Therefore, post-trial standards and cases applying them are not helpful for determining the government's disclosure obligations.

36 F. Supp. at 1198–99.

The court in *Sudikoff* concluded that, before trial, the standard should simply be whether the evidence is favorable to the accused, i.e., whether it relates to guilt or punishment and tends to bolster the defendant's case or impeach prosecution witnesses. *Id*. at 1199 ("the government is obligated to disclose all evidence relating to guilt or punishment which might reasonably be considered favorable to the defendant's case").

The holding in *Sudikoff* has been applied by other courts. See *United States v. Olsen*, 704 F.3d 1172, 1183 n.3 (9th Cir. 2013) ("The prosecutor cannot be permitted to look at the case pretrial through the end of the telescope an appellate court would use post-trial. Thus, the government must always produce any potentially exculpatory or otherwise favorable evidence without regard to how the withholding of such evidence might be viewed — with the benefit of hindsight — as affecting the outcome of the trial."); *United States v. Carter*, 313 F. Supp. 2d at 925 ("[I]n the pre-trial context, the court should require disclosure of favorable evidence under *Brady* and *Giglio* without attempting to analyze its "materiality" at trial. The judge cannot know what possible effect certain evidence will have on a trial not yet held. In most cases, the judge will have only a vague approximation of what the proof will be; thus, he cannot meaningfully evaluate how the addition of other evidence would alter the trial. Therefore, the court should ordinarily require the pre-trial disclosure of all exculpatory or impeachment evidence."); *United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005) (following

9

*Sudikoff*, holding that: "The only question before (and even during) trial is whether the evidence at issue may be "favorable to the accused"; if so, it must be disclosed without regard to whether the failure to disclose it likely would affect the outcome of the upcoming trial."); *United States v. Acosta*, 357 F. Supp. 2d 1228, 1239-40 (D. Nev. 2005) ("[T]he 'materiality' standard usually associated with *Brady* for pretrial discovery purposes...should not be applied to pretrial discovery of exculpatory materials."); *United States v. Peitz*, No. 01–CR–852, 2002 WL 226865, at *3, 2002 U.S. Dist. LEXIS 2338, at *7–8 (N.D.Ill. Feb. 13, 2002) (following *Sudikoff*, holding that: "In the pretrial context, the government is obligated to disclose all evidence relating to guilt or punishment which might reasonably be considered favorable to the defendant's case, with doubt as to usefulness resolved in favor of disclosure."[1]

The government stipulated to this standard as being appropriate in a similar Title III case before Judge Krieger in *United States v. Valle Sierra*, et al., 06-cr-00431-MSK. The government stipulated to this standard in *United States v. Medina et al*., 05-cr-00294-PSF at Docs #444 and #529.

## II.     SPECIFIC REQUESTS

**1.**     The discovery that has been produced has revealed that a number of informants were used in the case.  The government has indicated in the Discovery Conference Memorandum and Order (Doc. # 79) that an informant(s) may be called as a witness at trial. See Discovery Conference Memorandum and Order (Doc. # 79), para. I(D)(1).

---

[1] It should be noted that, in an unpublished decision, Judge Babcock declined to follow Sudikoff. See *United States v. Weiss*, No. 05-CR-179-B, 2006 WL 1752373, at *4, 2006 U.S. Dist. LEXIS 45124, at *10-11 (D. Colo. June 21, 2006).

**2.** The defense requests for each informant the government intends on calling at trial or for whom they intend to elicit a hearsay statements or a statement described in Rule 801(d)(2)(C), (D), or (E) all information as set forth in the paragraphs 1-11 of the concurrently filed "MOTION FOR TIMELY DISCOVERY OF GIGLIO MATERIALS."

### III. APPLICATION

**3.** The State has a qualified privilege not to disclose the identity of a confidential informant. *Roviaro v. United States*, 353 U.S. 53, 59, 77 S. Ct. 623, 627, 1 L. Ed. 2d 639 (1957).

**4.** This privilege exists to encourage citizens to perform their obligation to tell the police information about crimes. Id.

**5.** The privilege, however, is not absolute. *Roviaro*, 363 U.S. at 60-61; *McCray v. Illinois*, 386 U.S. 300, 312-14, 87 S. Ct. 1056, 1063-64, 18 L. Ed. 2d 62 (1967); ("considerations of fundamental fairness sometimes require that the identity of such informant be revealed").

**6.** "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure. . . ." *Roviaro*, 353 U.S. at 60-61.

**7.** There are 12 Confidential Sources used in this indictment. They are described as follows:

    a) CHS-1: Upon information and belief CHS-1 was the girlfriend of Francisco Ramirez, the named interceptee for the initial wiretap (Target Telephone

One) and was a narcotics user[2]. CHS-1 provided evidence concerning the alleged conspiracy dating back to June 1, 2013 and continuing until June 1, 2014. CHS-1's statements to law enforcement form the primary basis for obtaining the first wiretap which was of Mr. Ramirez's phone and for Target Telephone Two which was identified as the phone used by Ricky Garrison. It appears from a review of the application that CHS-1 allegedly obtained her information from discussions with Francisco Ramirez. CHS-1 provided the information in the application for both phones that Francisco RAMIREZ was a source of cocaine and methamphetamine for Ricky GARRISON. In the wiretap applications for Target Telephone One and Two nothing is mentioned concerning CHS-1's relationship to Francisco Ramirez nor is any information provided in order to determine whether law enforcement vetted CHS-1. The applications do indicate that much of the information provided by CHS-1 was not corroborated and attempts to corroborate such information indicated that the information provided was inaccurate. As CHS-1 is both an eye and ear witness to the alleged transactions between Ramirez and Garrison which form the basis for both wiretap applications and Count One, the Conspiracy count, disclosure of all information possessed by the government at the time of both applications concerning CHS-1 is "essential to a fair determination" of any wiretap challenges under *Franks v. Delaware*, 438 U.S. 154, 171, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978)("To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of

---

[2] The defense is aware of the identity of CHS-1 but does not reveal the name in a public pleading absent an order of the Court disclosing the identity. As the defense is aware of the identity of CHS-1 the defense is not requesting disclosure of the CHS-1's identity.

reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons." Disclosure of the requested information concerning CHS-1 is necessary in order to fully present a *Franks* challenge. The defense incorporates by reference all information regarding CHS-1 as set forth in the Defendant Garrison's Motion for Specific Discovery.

      b)    CHS-2 and CHS-3:  CHS-2 and 3 provided information to law enforcement concerning narcotics sales in Civic Center Park. A review of the indictment, the wiretap applications and the discovery reveals no connection between such sales and any of the charges in this case. As such the defense has no grounds to request discovery concerning these individuals. The defense reserves the right to request disclosure if further disclosures alter the evidentiary landscape with regard to CHS-2 and 3.

      c)    CHS-4:  CHS-4 is an individual who has worked with law enforcement as an informant for several years. The affidavits indicate CHS-4 had worked as a confidential informant in exchange for legal consideration on criminal charges and for money at different times during his/her involvement with the Aurora Police Department.  The affidavit is silent as to the reliability of the information provided by CHS-4 prior to involvement in the investigation of this case. CHS-4 provided information concerning the allegations in Count 1. Count 1 has as its time period June 1, 2013 to June 1, 2015.  It appears that information from CHS-4 and CHS-1 forms the basis in the indictment for Count One that the time period of the conspiracy began as

13

early as June 1, 2013. The defense incorporates by reference all information regarding CHS-1 as set forth in the Defendant Garrison's Motion for Specific Discovery. The defense, therefore, requests disclosure as detailed in paragraph 2 above.

      d)    CHS-5:   CHS-5 is an informant who provided information concerning the actions of Jesus Molina-Villareal and Javier Segura-Cisneros. Jesus Molina-Villareal and Javier Segura-Cisneros are alleged to be the suppliers of narcotics to Francisco Ramirez. Although unindicted in this case, both individuals are alleged to have been part of the conspiracy alleged in Count One of the indictment. As such CHS-5 is an eye and ear witness to the allegations in Count One and discovery is requested. The defense incorporates by reference all information regarding CHS-1 as set forth in the Defendant Garrison's Motion for Discovery. The defense, therefore, requests disclosure as detailed in paragraph 2 above.

      e)    CHS-6, 7, 8 and 10:  A review of discovery reveals that these two informants provided nothing of use in the investigation and as such the defense is not requesting any discovery concerning these individuals. The defense reserves the right to request disclosure if further disclosures alter the evidentiary landscape with regard to CHS-7 and 8.

      f)    CHS-9:  A review of discovery reveals that this individual provided information regarding the investigation but not with respect to Mr. Garrison.  As such the defendant Garrison is not requesting any discovery concerning this individual. The defense reserves the right to request disclosure if further disclosures alter the evidentiary landscape with regard to CHS-9.

        g)     AP-1: Information from AP-1 is relied upon for the continuation of the wiretap on Target Telephone Two and the initial application for all subsequent wiretap applications. Upon information and belief AP-1 is a relative of the woman who was the alleged homicide victim in Aurora in which Ricky Garrison is allegedly a suspect. The relationship of AP-1 to the homicide victim was not disclosed in any of the wiretap applications. The information possessed by law enforcement with regards to AP-1 is necessary to fully develop a claim under *Franks* that the government recklessly or intentionally withheld information from the reviewing court in all wiretap applications except the initial one.

        h)     AP-2: Information from AP-2 is relied upon for the continuation of the wiretap on Target Telephone Two and the initial application for all subsequent wiretap applications. AP-2 provided information to law enforcement concerning the distribution of ecstasy in Colorado by individuals not named in this indictment. A review of the indictment, the wiretap applications and the discovery reveals no connection between such sales and any of the charges in this case. As such the defense has no grounds to request discovery concerning these individuals. The defense reserves the right to request disclosure if further disclosures alter the evidentiary landscape with regard to AP-2.

**8.**     The Government represented by AUSA Phillips has indicated he will respond to this motion.

DATED this 9th day of October, 2015.

s/James A. Castle
James A. Castle
Attorney at Law
1544 Race St.
Denver, CO 80206
(303) 675-0500
f: (303) 329-5500

s/Mitchell Baker
Mitchell Baker
1543 Champa Street, Suite 400
Denver, CO  80202
(303) 592 - 7353
mitchbaker@estreet.com

_____

CERTIFICATE OF SERVICE
_____

I hereby certify that on this 9th day of October, 2015, I served a true and correct copy of the foregoing motion via U.S. Court ECF filing to all parties:

                                          s/James A. Castle

                                          James A. Castle