## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Criminal Action No. 14-cr-00231-WJM-1**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**v.**

**1.    RICKY GARRISON,**

      **Defendant.**

---

## RESPONSE TO DEFENDANT RICKY GARRISON'S MOTION
## FOR SPECIFIC DISCOVERY
### (Doc. No. 611)

---

COMES NOW the United States of America, by John F. Walsh, United States Attorney for the District of Colorado and through the Assistant United States Attorney Zachary Philips, and hereby files the following response to the above-captioned motion. The Government responds as follows:

The Defendant moves the Court for an Order directing the Government to furnish specific discovery, as detailed herein, including State investigation materials, confidential source information, the results of agency criminal database analysis, and the interception of State-ordered wiretaps. For all of the reasons set forth below, the Defendant's motion should be denied in its entirety.

Much of what the Defendant has requested in the motion has been supplied in discovery and is already in the possession of the Defendant and his counsel. The Government is aware of its obligations as set forth in *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*,

405 U.S. 150 (1972), and will continue to provide the materials required by these cases and subsequent decisions.

The Defendant's extremely lengthy motion casts an extremely wide net as a casual request for additional discovery which is far from sufficient to justify the extraordinary relief they ask the Court to provide in their motion. "The constitution does not grant criminal defendants the right to embark on a 'broad and blind fishing expedition among documents possessed by the government . . .'" *United States v. Mayes*, 917 F.2d 457, 461 (10th Cir. 1990), cert. denied, 498 U.S. 1125 (1991), citing *Jencks v. United States*, 353 U.S. 657, 667 (1957) and *United States v. Manzino*, 860 F.2d 981, 985 986 (10th Cir. 1986).

The first 30 pages of the Defendant's motion is a lengthy mixture of background and case law covering numerous legal theories. It is not until page 31 of the motion that the Defendant actual requests specific discovery. Although the Government is aware that this Court has issued a staggered motion order in this case and has ordered only motions for discovery and motions regarding the indictment due at this time, the Government feels compelled to respond some of the Defendant's arguments. For ease of the Court and the Parties, the Government will attempt, as best possible, to respond to each "bullet" of the Defendant's motion in the same order as initially outlined by the Defendant.[1]

## II.    Law, Sections A, B, and C

Early in the Defendant's motion, the Defendant argues the Government has failed to provide full disclosure so that defense can challenge wiretaps and seek to suppress evidence. The Government has provided all discovery to which it is obligated at this point in the procedural

---

[1]In doing this, the Government's numbering and lettering of sections will correspond to the Defendant's numbering and lettering. Since not every number or letter of the Defendant's motion need be addressed, some numbers or lettering in the Government's motion may be missing. However, it is the Government's hope that by mimicking the Defendant's numbering and lettering it will be easier for all the parties to review the initial motion and the Government's response.

process.  The law does not require the Government to search for all possible exculpatory evidence on behalf of the defense.  *United States v. Meros*, 866 F.2d 1304, 1309 (11th Cir.), cert. denied, 493 U.S. 932 (1989).  The Government is in agreement that this court has authority to issue orders regarding disclosure.  However, the Government has provided all discovery within its possession which it is obligated to provide at this time.  The Government has provided extensive discovery and will continue to do so as required by constitutional dictates and its continuing duty to disclose pursuant to Federal Rule of Criminal Procedure 16.

The Defendant then argues or challenges whether the affidavit(s) set forth a full and complete statement regarding necessity. The Defendant argues that the Government has not proven that it tried and failed at normal investigative procedures.  In fact, each affidavit has very lengthy discussions as to the efforts law enforcement made through traditional investigative techniques.   The affidavits were reviewed by Senior District Court Judge Wiley Y. Daniel, Senior Circuit Court Judge David M. Ebel, and Chief District Court Judge Marcia S. Krieger, who all found the Government had met the statutory requirements of 18 USC § 2518(1)(c) and (3)(c), including the three items enumerated by defense counsel in its motion:  necessity, the organizational component, and alleged subterfuge.

The Defendant further makes a veracity or *Franks* challenge.  The Defendant argues that although not capable of being resolved by reviewing contents of affidavits, false statements or omissions can negate the necessity or "have significance as to the necessity analysis."  The Defendant is inferring that receiving the additional discovery requested will allow defense to determine the existence of false statements or omissions.

The Government maintains no false statements exist in the Government's affidavit and no intentional omissions have been made.   In fact, the affidavit In Support of Application for Target

Telephone Two is a 95-page document, supported by evidence in this case, describing in detail surveillance at many locations conducted over a number of months.  Providing additional discovery, of which there is none that Defendant Garrison is entitled to at this time, will not assist the Defendant in revealing the existence of false statements or omissions.  Additionally, defense fails to indicate in any manner what facts it alleges to be false, and what information was allegedly omitted.  The Government is not able to look into the possibility that additional documentation was inadvertently omitted from discovery without a basis upon which to begin an inquiry.

Although Defendant's assertions as to a *Franks* challenge are premature in a motion requesting additional discovery, the Government nonetheless addresses the challenge.  In *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), the Supreme Court held that a search warrant is void where the defendant can show that:  (1) the affidavit supporting the warrant contains statements that are intentionally false, or made with reckless disregard of the truth; and (2) without the false statements, the affidavit lacks probable cause for issuance of the warrant.  Likewise, evidence derived from a facially sufficient affidavit can be suppressed if the affiant is found to have intentionally omitted, or intentionally misrepresented material facts, and the inclusion of such facts would have vitiated the need for the warrant.  *Franks*, 438 U.S. at 155–56, 98 S.Ct. 2674.  The *Franks* standard further applies to the analysis of Title III applications and orders. *United States v. McDowell*, 520 Fed. App'x 755, 760-61 (10th Cir. 2013) (unpublished); see also *United States v. Green*, 175 F.3d 822, 828 (10th Cir.1999).

Because affidavits are presumed valid, a defendant is entitled to a hearing on his allegations of falsity "only upon a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth" was included in the

affidavit. *United States v. Poulsen*, 655 F.3d 492, 504-05 (6th Cir. 2011), cert. denied, 132 S. Ct. 1772, 182 L. Ed. 2d 533 (2012). This, and the other prerequisites to a *Franks* hearing have been stated as: 1) the defendant must allege specifically which portions of the warrant affidavit are claimed to be false; 2) the defendant must contend that the false statements or omissions were deliberately or recklessly made; 3) a detailed offer of proof, including affidavits, must accompany the allegations; 4) the veracity of only the affiant must be challenged; [and] 5) the challenged statements must be necessary to find probable cause. In fact, the Tenth Circuit has specifically held that a defendant's motion based on *Franks* could be denied simply on the basis that the defendant failed to submit affidavits in support of the motion. *United States v. McDowell*, No. 09-20133, 2011 WL 32440, at *2 (D. Kan. Jan. 4, 2011) (unpublished) (citing *United States v. Artez*, 389 F.3d 1106, 1116 (10th Cir.2004)).

Applying the *Franks* standard to a necessity challenge, the "substantial preliminary showing" requirement of *Franks*, in the context of a necessity challenge to a wiretap, is substantial and not lightly met. Specifically, an evidentiary hearing is not required where the defendant merely disagrees with the affiant's conclusions, fails to show that information was false, shows that some information may be incorrect, disagrees with the potential or actual effectiveness of traditional investigative procedures, merely submits only conclusory assertions about allegedly false statements made by the affiant, or fails to show that inclusion of omitted information would have affected the necessity finding. *McDowell*, 2011 WL 32440, at *2.

## II.    Law, Section D

The Defendant then goes on and discusses specific challenges to a Title III application and intercepted communications. In general, defense argues that the Government failed to meet constitutional and statutory requirements for interception of calls. In fact, the Government

strictly adhered to the statutory requirements of 18 USC § 2518(1)(c) & (3)(c), and specifically met the standards as to the three items enumerated by defense counsel in its motion: necessity, the organizational component, and alleged subterfuge.

Any review of a wiretap authorization order must begin with the presumption that the order was properly issued and the defendant bears the burden of overcoming this presumption. *United States v. Radcliff*, 331 F.3d 1153, 1160-61 (10th Cir. 2003) (wiretap authorization order presumed proper and defendant carries the burden of overcoming the presumption); *United States v. Nunez*, 877 F.2d 1470, 1472 (10th Cir. 1989); *United States v. Mitchell*, 274 F.3d 1307, 1310 (10th Cir. 2001) (same).  The defendant must come forward with a prima facie showing that the wiretap was conducted pursuant to an illegal order.  *United States v. Borrayo-Gutierrez*, 119 F. Supp. 2d 1168, 1170 (D.Colo. 2000), *quoting United States v. Bennett*, 825 F. Supp. 1512, 1518 (D. Colo. 1993).  Not every failure to comply with the requirements in the wiretap statute renders the interception of wire or oral communications unlawful.  *Id*.  The defendant must not only demonstrate a deviation from the requirements of the statute, <u>but this deviation must be substantial</u>. *Id*. (emphasis added).

The Defendant has objected in such a vague way to the sufficiency of the affidavits in support of the wiretaps that the Government is unable to completely or adequately respond. Once a claim of illegal electronic surveillance is made, the Government must affirm or deny the occurrence of the alleged unlawful act pursuant to Title 18 U.S.C. §3504.  *See In Re Grand Jury Proceedings*, 786 F.2d 3, 7 (1st Cir.1986).  To that extent, the Government denies any substantive defects raised by the Defendant, however specific or vague, which would support suppression on any of the Target Telephones.  *In Re Grand Jury Matter*, 906 F.2d 78, 91 (3rd Cir. 1990); *United States v. Alvillar*, 575 F.2d 1316, 1321 (10th Cir.1978) (Government's

unsworn denial sufficient where the witness presented no more than a bald allegation of illegality).

## II.      Law, Section D, Subsection 1

The Defendant argues there is a difference between probable cause and necessity and attacks the affidavit(s) by alleging the Government has failed to show in the affidavit(s) that normal investigative techniques would not have been successful and by NOT including facts regarding failure of traditional methods, the applicant will more likely be successful in establishing necessity.   The Defendant's argument is essentially that the Government omitted facts.

The Court is not so easily deceived so that it would be more likely to grant a wiretap based on less information, in regard to necessity and failure of traditional investigatory methods. In this case, the affiant has included substantial details pertaining to its use of tradition or normal investigatory methods.   The Government has provided details of many instances in which it attempted surveillance and was unsuccessful.   The Defendant in his motion asserts that the material the defense requests largely pertains to omissions and that material is uniquely in the control of the Government.   However, that assertion is vague, providing no clues as to any types of facts which were allegedly omitted, and has no basis in fact.

The court must focus its *Franks* analysis not on what the Government could have learned with more investigation, but on what the Government actually knew when it prepared the affidavits in support of the wiretap applications.   *United States v. Carrillo*, 123 F.Supp.2d 1223, 1252 (D.Colo. 2000)   "[U]nless the government has lied to the issuing judge, the suppression issue should turn on what was in the government's affidavits, not on what defendants assert with the benefit of hindsight the government should have known." *United States v. Ozar*, 50 F.3d

1440, 1445-46 (8th Cir.1995).  "[R]ecklessness may be inferred from the fact of omission of information from an affidavit only when the material omitted would have been clearly critical" to the findings of the issuing judge. *Ozar*, 50 F.3d at 1445.  Moreover, it is not necessary that every single relevant detail has been included in the affidavit.  *United States v. Yeje-Cabrera*, 430 F.3d 1, 9 (1st Cir. 2005).  In this case, the Defendant has failed to provide any examples of so-called omissions.  The supposed omissions are no more than the Defendant's guesses regarding what may have not been included in regard to normal investigative techniques.

## II.    Law, Section D, Subsection 2

The Defendant argues the Government failed to identify the existence of a criminal organization, and lacked particularity in describing the persons subject to wiretaps.  This argument is without merit.  As an example, in the Government's Affidavit in Support of Application for Interception of Wire and Electronic communications to and from Target Telephone Two (Doc. No. 5), the Government identifies the known criminal organization "the Gangster Disciples" and several of its known members and associates by name and often address and/or vehicle.  On page 3 under the heading "Summary of Investigation—Identification of Persons Whose Communications are to be Intercepted," the Government, specifically affiant and Task Force Officer Joshua Mohlman, provides seven pages of detailed information regarding the Gangster Disciples and the criminal activity for which they were being investigated.  Each of the Affidavit's contains similar sections and information.

## II.    Law, Section D, Subsection 3

The defense makes an allegation and requests additional discovery in order to assert that the Government used wiretap applications as a subterfuge to obtain phone calls to be used in a state homicide investigation.

8

This allegation is misplaced and untrue.  The Government in this case, lawfully applied for Title III wiretaps as a means of obtaining evidence to prove that members of the Gangster Disciple street gang and their associates were involved in the distribution of illegal narcotics, robberies, homicides, and other acts of violence.  The Government's "Affidavit in Support of Application" for interception of calls placed on Target Telephone Two states that previously collected information indicates that Defendant Ricky Garrison is a habitual criminal involved in distribution of drugs, robbery, assault, and homicide (Doc. No. 5).  The Government's purpose, as stated in the affidavit, was to obtain wire and electronic communications on Target Telephone Two, at the time believed to be in the possession of Ricky Garrison, to obtain admissible evidence of crimes being committed by Ricky Garrison and know associates and members of the Gangster Disciples Organization.  The Federal Government did not make Title III applications for wiretaps with the purpose of obtaining phone call evidence for use in a state homicide investigation.

## II.      Law, Section E

The Government is aware of its obligations as set forth in *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), and will continue to provide the materials required by these cases and subsequent decisions.  *See United States v. Ruiz*, 536 U.S. 622, 122 S.Ct. 2450, 2457 (2002).   Further, the Government will comply fully with its discovery obligations under Fed. R. Crim. P. 16 and 26.2 and Title 18 U.S.C. § 3500.  Defense quotes the Court's order stating that suppression motions shall be file 60 days after the hearing on discovery issues.  The defense suggests that the 60-day time period begin to run from receipt of discovery the defense needs to review and conduct investigation.  The Government would not object to the Defendant's request.

III.     **Specific Materials Requested and the Basis for Each Such Request**

A.      **GANGSTER DISCIPLES INFORMATION**

Defense counsel asserts that "within the four corners of the affidavit, the only individual identified as a Gangster Disciple was Ricky Garrison."  Defense counsel also asserts that within the four corners of the affidavit, the only gang affiliation ascribed for any of the remaining six individuals was as to Francisco Ramirez, "described as a Duke Sureno."  Paragraph 6, sub-parts (a) through (k) describe the persons whose communications are to be intercepted, their criminal history across several states, and their involvement with and relationship to Ricky Garrison and his criminal enterprise.   In fact, Paragraph 7, sub-part a. specifically addresses the gang affiliation, stating that "<u>Several members and/or associates of the Gangster Disciples Organization, including</u> named target and interceptees Francisco Ramirez (a/k/a "Poncho"), Ricky Garrison (a/k/a "G"), Jesus Molina, Villarreal (a/k/a "Vato"), Salvador Marruffo (a/k/a "Chava").   Javier Segura-Cisneros (a/k/a "Gabby"), FNU LNU (a/k/a "Drug Courier-1"), Glen Walls (a/k/a "Beef"), and others yet unknown and unidentified, are committing and will to continue to commit the following offenses against the United States:"   (See Doc. No. 611 Paragraph 7. A. for the specifically enumerated offenses.) (emphasis added)  The Government concedes that the affidavits for wiretaps list Francisco Ramirez as a Duke Sureno.  For example, the affidavit files in support of the application for wiretap on Target Telephone One, paragraph 25. asserts that Francisco Ramirez, as a Duke Sureno, is suspected to have conspired with Gangster Disciple gang members to commit robberies.  Francisco Ramirez's affiliation with the Duke Surenos does not detract from the overall target investigation of the Gangster Disciples, as the affidavits clearly document the close involvement of Garrison and Ramirez.  In fact, the facts stated in each of the affidavits support Count One of the Indictment (Doc. No. 10) that the listed

Defendants, as either members or associates of the Gangster Disciples gang, knowingly and intentionally conspired to distribute and possess the controlled substances listed in the Indictment.

**Section A-1**

The Government in this case has met its *Brady, Giglio, Jencks*, and all other discovery obligations in regard to production of materials pertaining to this investigation of the Gangster Disciples in the Denver Metropolitan Area from January 2012 through June 2014.  This request by defense counsel is overly broad and an unreasonable request.   "The constitution does not grant criminal defendants the right to embark on a 'broad and blind fishing expedition among documents possessed by the Government . . .'"   *United States v. Mayes*, 917 F.2d 457, 461 (10th Cir. 1990), *cert. denied*, 498 U.S. 1125 (1991), citing *Jencks v. United States*, 353 U.S. 657, 667 (1957), and *United States v. Manzino*, 860 F.2d 981, 985-986 (10th Cir. 1986).

In the defense motion the defense states that "[T]he wiretap applications indicate that the Gangster Disciples had been investigated in 2012, which would be the year before this [federal] investigation began.  The applications state:  On March 2012, the Metro Gang Task Force (MGTF), a multi-jurisdictional . . . Thus far, MGTF investigators have not discovered any links between this current investigation and the aforementioned Gangster Disciple investigation conducted in 2012." (emphasis added).

However, this quote is misleading to the Court.  First, Defense selected a quote that is true *only* as to affidavits in support of applications for the interception of wire and electronic communications to and from Target Telephones One through Seven.  (See Doc. Nos. 1, 5, 12, 17, and 27.)  A close reading of the discovery produced in this case reveals that in both the original and Amended Affidavit in Support of Application for the renewal of interception of wire

and electronic communications from Target Telephones Two and Eight and the initial interception of communications from target telephone Nine, the affiant describes the recently discovered link between the previous Gangster Disciples investigation and the then current investigation.  At page 27, Paragraph 25 of Doc. No. 42 and at page 28, Paragraph 28 of Doc. No. 48, the Affiant describes a surveillance event on January 28, 2014, in which investigators utilized interceptions on Target Telephone Four to observe a suspected drug transaction between Greg LNU and Flynn Yancey, a suspected Gangster Disciple member and target of the previous investigation.  That same link is reiterated in the Affidavits in Support of Application for interception of communications on Target Telephones Nine, Ten, and Eleven.  (See Doc. Nos. 48, 53, and 65.)

Second, all information in the possession of the investigating agencies, concerning THIS investigation of the Gangster Disciples in the Denver Metro Area, to the extent that it is discoverable material, for which the production of such would not result in a threat to the safety of a witness or informant, has been provided by the Government to all Defendants.  Statements and reports of witnesses will be provided as part of discovery after said witnesses have testified on direct examination in the trial of the case.  (18 U.S.C. §3500; Fed. R. Crim. P. 26.2)

The Government did indeed make a full and complete statement as to necessity of to the Gangster Disciples in each of its affidavits in support of wiretap applications.  The Defendant's assertion in his Motion for Specific Discovery that "if the government had infiltrated this gang, had informants providing information on the organization or had conducted surveillance and other traditional investigative techniques on the organization such has not been described in the Title III applications."  (Doc. No. 611, p. 32)  In fact, the Affiants for each affidavit provided in detail, factual summaries of their other investigative procedures including a U.S. Postal Service

mail check (Doc. No. 5, Paragraphs 105-107); use of CCTV surveillance cameras (Doc. No. 5, Paragraphs 108-110); GPS tracking devices (Doc. No. 5, Paragraphs 111-112); execution of search warrants and other court orders (Doc. No. 5, Paragraphs 123-132); the use of confidential sources and undercover employees (Doc. No. 5, Paragraphs 133-151); interviews with witnesses, development of additional witnesses, and use of Grand Jury (Doc. No. 5, Paragraphs 152-162), the use of pen register data and trap and trace devices (Doc. No. 5, Paragraphs 163-171); the use of trash runs (Doc. No. 5, Paragraphs 172-178) and finally, the use of administrative subpoenas, as well as checks of the Colorado Department of Motor Vehicles and criminal histories (Doc. No. 5, Paragraphs 179-180).  In addition to the normal investigative techniques described above from the affidavit supporting the application for interception of Target Telephone 2, each affidavit for initial and continued interception in this case similarly describes investigators' efforts to obtain the required evidence through normal methods.

Furthermore, regardless of whether the Government was able to provide materials "in possession of any of the investigating agencies, in whatever form, concerning any aspect of the Gangster Disciples in the Denver Metropolitan Area from January, 2012 through June, 2014," the Government has met the necessity standard in each of its wiretap applications, as it has provided "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be likely to succeed if tried or to be too dangerous."  18 U.S.C. § 2518(1)(c).  A district judge may not approve a wiretap unless he finds that the applying officers have met this standard. 18 U.S.C. § 2518(3)(c);  *United States v. Foy*, 641 F.3d 455, 464 (10th Cir. 2011)

The Tenth Circuit has consistently recognized that the Government's burden to establish compliance with §2518(1) (c) is "not great."  *United States v. Verdin–Garcia*, 516 F.3d 884, 890

(10th Cir. 2008); *United States v. Bennett*, 825 F. Supp. 1512, 1525 (D. Colo. 1993). Moreover, the necessity requirements must be read in a commonsense fashion with the understanding that law enforcement officers should be given wide latitude and discretion to determine what steps are reasonable to try under the given set of circumstances. *United States v. Oraikhi*, 57 F.3d 1290, 1298 (4th Cir. 1995); *United States v. Armendariz*, 922 F.2d 602, 607, (10th Cir.1990*), reh'g denied*, (1991), *cert. denied sub nom.*; *Aguirre v. United States*, 502 U.S. 823, 112 S.Ct. 87, 116 L.Ed.2d 59 (1991); *United States v. Castillo-Garcia*, 117 F.3d 1179, 1187 (10th Cir. 1997), overruled on other grounds, 291 F.3d 1219 (10th Cir. 2002). In evaluating the showing of the Government's good faith effort to use normal investigative techniques, the Court must use a standard of reasonableness and keep in mind that the Government is in the best position to weigh issues of danger and probability of success. *United States v. Ippolito*, 774 F.2d 1482, 1489 (9th Cir. 1985). All that is required to satisfy necessity under the statute is for the affiant to explain the need for wiretaps with some degree of specificity and "simply inform the issuing judge of the difficulties involved in the use of conventional techniques." *Cline*, 349 F.3d at 1280–81; *United States v. Pacheco*, 489 F.2d 554, 565 (5th Cir. 1974). These statements must be factual in nature and must specifically relate to the organization targeted by the wiretap. *Cline*, 349 F.3d at 1281.

**Section A-2**

The Government has provided in discovery all information in its possession and provided to it by federal investigative agencies. If defense counsel can more specifically describe materials which will assist in this determination, the Government will make a good faith effort to locate and provide the specified documentation. Defense conjectures that because affidavits in support of the interception of Target Telephones One through Seven state that MGTF

investigators have not discovered a link between the current and the 2012 investigation into the Gangster Disciples, that it must have conducted searches to determine that no link existed.  There is no factual basis for this assumption.

Gang association is inherently difficult to determine, simply due to the nature of gang membership and behavior.  Some individuals are associates or affiliated with certain gangs, but are not members.  Gang members do not readily supply information to law enforcement regarding their gang membership.

**Section A-3**

The Government has provided organizational charts of this drug trafficking organization. These charts were presented to the Grand Jury and subsequently provided to all the Defendants in discovery.  Additionally, the Government has supplied all discoverable reports pertaining to this drug trafficking organization.  The Government is aware of its obligations as set forth in *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), and will continue to provide the materials required by these cases and subsequent decisions.

**Section A-4**

The Defendant is not entitled to informants that may have been used in previous investigations.  "The constitution does not grant criminal defendants the right to embark on a 'broad and blind fishing expedition among documents possessed by the government . . .'" *United States v. Mayes*, 917 F.2d 457, 461 (10th Cir. 1990), *cert. denied*, 498 U.S. 1125 (1991), *citing Jencks v. United States*, 353 U.S. 657, 667 (1957), and *United States v. Manzino*, 860 F.2d 981, 985 986 (10th Cir. 1986).

**Section A-5  "All Title III interceptions targeting or intercepting members of the Gangster Disciples Between [sic] in the Denver Metro area."  (Doc. No. 611 p. 34)**

The Government is not able to properly respond to this request as it is currently phrased. The Government will confer with defense counsel to get a better understanding of their request in order to determine their specific request.

**Section B.       HOMICIDE AND ROBBERY INVESTIGATIONS**

**Section B-1**

The Government has already provided substantial discovery material related to the identification of Molina-Villarreal as a known drug dealer.  MGTF investigators conducted surveillance on, and organized controlled buys with, Villarreal.  For evidence as to Jesus Molina-Villarreal, please see the following examples of documents provided in the Government's discovery:

DF_MGTF_WT_000053 - 54:  Paragraph 85 of the Government's Affidavit in Support of Application for initial interception of Target Telephone One states that pen register/call detail data revealed that between September 18, 2013, and October 10, 2013, Target Telephone One made or received 6 calls to subscriber Jesus Villarreal.  Based on information provided by CHS-1 and other surveillance, investigators believed Javier Segura-Cisneros to be a drug courier for Jesus Molina-Villarreal

DF_MGTF_GJ_000008:  In Grand Jury testimony, FBI Special Agent Sarah Aerts described an arranged drug transaction between a confidential informant and Jesus Molina-Villerreal.

DF_MGTF_PEN_001955:  In the Government's application for an order authorizing the use of pen registers and trap and trace devices on Target Telephone with number 720-227-6366,

paragraphs 12 through 19 describe an October 8, 2013, meeting between CHS-5 and investigators in which CHS-5 provided information about a controlled purchase of cocaine from Villarreal.  CHS-5 was to meet Villarreal to purchase one ounce of cocaine at Denny's restaurant.  A known drug courier for Villarreal arrived at Denny's and provided the cocaine, repeating the pricing information Villarreal had provided on the earlier recorded call with CHS-5.

DF_MGTF_PEN_004166:  In the Government's application for an order authorizing the use of pen registers and trap and trace devices on Target Telephone with number 720-436-5532, paragraphs 12 through 16 describe three controlled purchases of cocaine from Villarreal (including the one listed above in October of 2013).  In this application investigators identify Javier Segura-Cisneros as a drug courier for "higher level drug distributer Jesus Molina-Villarreal."

DF_MGTF_PEN_005920:  In the Government's application for an order authorizing the use of pen registers and trap and trace devices on Target Telephone with number 720-732-8730, at paragraph 28, Villarreal is identified as the source of cocaine sold by Ramirez to an Undercover Employee.  Villarreal employed two separate drug couriers to deliver the cocaine to Ramirez.

Again, the Government would assert that such a request is simply a fishing expedition which has been addressed.  "The constitution does not grant criminal defendants the right to embark on a 'broad and blind fishing expedition among documents possessed by the government . . .'"  *United States v. Mayes*, 917 F.2d 457, 461 (10th Cir. 1990), cert. denied, 498 U.S. 1125 (1991), citing *Jencks v. United States*, 353 U.S. 657, 667 (1957), and *United States v. Manzino*, 860 F.2d 981, 985 986 (10th Cir. 1986).

**Section B-2**

The defense requests Aurora Police Department's homicide investigation records which were shared with any of the investigators working on the narcotics investigation. The Government is not obligated to provide discovery in ongoing investigations which are not the subject of this investigation. The Government is aware of its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny. The Government is also mindful of its obligations under Section I(A) and I(B) of the Discovery Order, which also addresses this topic. (Doc. No. 410, pages 2-4.) To comply with those obligations, the Government has provided full discovery in this matter and will continue to do so as required by constitutional dictates and its continuing duty to disclose, as pursuant to Rule 16 of the Federal Rules of Criminal Procedure. In this case, the homicide investigation related to the shooting of Aurora Police Confidential Informant on January 19, 2013, is ongoing and the Government does not provide information related to ongoing homicide investigations.

**Section C.     Red Dawn Information (Sections C-1 through C-4)**

The defendant throughout sections C-1 through C-4 asserts that the Government is in possession of Red Dawn materials, particularly including defendant interrogations of Francisco Ramirez. The defense makes a "catch-22" argument that if Defendants were interviewed regarding Ramirez, those materials have been withheld and should be provided as discovery. If the Defendants were NOT interviewed regarding Ramirez, the Defendants' argument as to necessity is substantiated. Further, the Defendant alleges investigators intentionally or recklessly omitted Red Dawn investigative materials from their affidavits.

These allegations and assertions are not true. As Deputized Task Force Officer Bradley Gullicksrud states in his affidavit in support of application for continued interception

paragraph 224, of Target Telephone Two, and initial interception of Target Telephone Three, "As detailed in the Prior Applications Section of this Affidavit, named target and interceptee Francisco RAMIREZ was also a named target and interceptee in several affidavits in 2012 during "Operation Red Dawn," a DEA investigation of a drug trafficking organization.  Case agents assigned to the case determined that Francisco RAMIREZ and named target and interceptee of this current investigation Salvador MARRUFFO were involved in the distribution of multiple ounce quantities of cocaine and methamphetamine.  Several calls involving and related to Francisco RAMIREZ and Salvador MARRUFFO were intercepted.  However, Francisco RAMIREZ and Salvador MARRUFFO were not indicted or arrested at the conclusion of "Operation Red Dawn."  Operation Red Dawn resulted in the indictment of 11 Defendants. Although one of the Defendants in Operation Red Dawn identified a photograph of Francisco RAMIREZ as "Poncho," the Defendant stated nothing further than that "Poncho" was a "criminal associate."  That one Defendant is in state custody and unable to provide further information at this time.  MGTF investigators have contacted the state prosecutor and lead agent in charge of Operation Red Dawn and will actively pursue any additional investigative leads which may result as the prosecution of Operation Red Dawn proceeds.

Defense is not entitled to discovery related to Operation Red Dawn because, as stated in the affidavits in support for application for interception of target telephones, at no time during Operation Red Dawn did case become aware of Ricky Garrison, Jesus Molina-Villarreal, or other named targets and interceptees listed (not including Francisco Ramirez and Salvador Marruffo).  (Doc. No. 48, Paragraph 188.)  As stated in the affidavit "Although the "Operation Red Dawn" interceptions provided information related to Francisco RAMIREZ and Salvador MARRUFFO, those interceptions are approximately 1 year old and do not relate to this

ongoing Gangster Disciple investigation.  Investigators do not believe those interceptions or the related case will assist in meeting the full objectives of this investigation."

The Government has established necessity in its application and affidavit without the inclusion of reports regarding the interrogations of Red Dawn witnesses.  On page 41 of its motion, defense cites *Kyles v. Whitley*, 514 U.S. 419 (1995) and conjectures that information in the possession of investigators who worked on Red Dawn is "in the possession of the government."  There is no repository of case materials which is shared among agencies and among multiple levels of Government.  The State-run Red Dawn investigation was not an investigation into the Gangster Disciples organization; therefor those materials were not included in the discovery produced in this case.  State investigation material from Red Dawn is not material to this case.  *Brady* obligates the Government to disclose only favorable evidence that is "material."  The "touchstone of materiality is a 'reasonable probability' of a different result." *Kyles v. Whitley*, 514 U.S. 419 (1995).

**Section D.        CONFIDENTIAL SOURCES**

In determining whether to compel disclosure of names of any Government informant's identity against Defendant's need to prepare effective defense, the Court should not intrude upon informant confidentiality unless undisclosed information is essential to fair determination of the case.  *U.S. v. Padilla*, 744 F.Supp 1425 (N.D. Ill. 1990).

In this case, previous disclosure of confidential source information has resulted in that source's murder.  Paragraph 25 of the affidavit in support of the interception of Target Telephone Two describes the events leading up to the January 19, 2013, shooting of a confidential informant used in a controlled buy of crack cocaine from Ricky Garrison on September 6, 2011. The controlled buy, described in the affidavit at Paragraph 24, resulted in the issuance of an

arrest warrant for Garrison.  As stated in the affidavit for interception of Target Telephone Two, on July 25, 2013, Confidential Human Source (CHS-1) told MGTF investigators that she overheard Garrison and Ramirez boasting about killing a female who had worked with police in this case.  For these reasons, and due to the violent nature of Defendants' crimes as described in the affidavits supporting wiretaps in this case, the Government asserts that providing any additional information pertaining to confidential sources is not justified at this time.

In *Roviaro*, the Court stated, "We believe that no fixed rule with respect to disclosure is justifiable.  The problem is one that calls for balancing **629 the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."  *Roviaro v. United States*, 353 U.S. 53, 62, 77 S. Ct. 623, 628-29, 1 L. Ed. 2d 639 (1957).

**Section D-1.1**

The affidavits and discovery address and detail the known reliability of CHS-1.  Because the specific nature of this request is unclear, counsel for the Government will confer with defense counsel on this issue and, with the Court's permission, may file a supplemental response if an agreement cannot be reached.

**Sections D-1.2 through 1.4 and Sections D-2, D-3, D-4, and D-5**

The Defendant is asking for overly broad pretrial disclosures concerning confidential informants in general, as well as the informants used in this case specifically.  Defendants frequently express an interest in ferreting out persons who may be assisting law enforcement. Ferreting out sources of information generally is contrary to the public policy interest served by

encouraging persons to assist law enforcement, which was explicitly recognized and given weight in *Roviaro*. The law is settled; the Government has a privilege of refusing to disclose the identity of its informants at trial. *McCray v. Illinois*, 386 U.S. 300 (1967). The rationale underlying this privilege was expressed in *Roviaro*, 353 U.S. at 59:

The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

The privilege, however, is not an absolute one, and where the disclosure of an informant's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. *Roviaro* at 60-61. The *Roviaro* court, however, explicitly declined to establish any fixed rule requiring disclosure:

The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders non-disclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the significance of the informant's testimony, and other relevant factors.

Id. at 62.

Under established case law, the United States need not disclose the identities of confidential informants prior to trial. *United States v. Ruiz*, 536 U.S. 622, 629 (2002) ("There is no general constitutional right to discovery in a criminal case."); *Roviaro*, 353 U.S. at 59. Disclosure at this point in time in the case is inconsistent with the practices and principles which have controlled the disclosure of information about confidential informants since *Roviaro*. Under the *Roviaro* criteria for disclosure, a defendant must describe how the informant was a

direct participant in an incident described in the Indictment and set forth the evidentiary significance of the testimony he ostensibly seeks to adduce from any confidential informant regarding any such specific incident.  However, the Government has a privilege to refuse to disclose the identity of its informants, even at trial.  The United States, at this time, is asserting the privilege of non-disclosure until a time no later than 30 days before trial.

Once the *Roviaro* privilege is asserted, the burden of showing the necessity for making a disclosure is on the defendant.  The Tenth Circuit consistently has held disclosure is not required where the information sought would be merely cumulative, or where the informant did not participate in the illegal transaction.  *United States v. Brantley*, 986 F.2d 379, 383 (10th Cir. 1993).  Mere speculation about the usefulness of an informant's testimony is not sufficient to warrant disclosure.  *Id.*  Indeed, where a defendant fails to make a factual showing that disclosure would be helpful to the defense, or where the information provided by the informant is merely cumulative and is not necessary to the presentation of the Government's case, no error results from the refusal to reveal the informant's identity.  *United States v. Sherman*, 576 F.2d 292, 296 (10th Cir. 1978), *cert. denied*, 439 U.S. 913 (1978).

Here, as indicated in documents and recordings already disclosed to the Defendants in discovery, the Government's case is based on actions taken by police agents such as phone recordings, surveillance, traffic stops, search warrants, etc.  Accordingly, the United States respectfully declines to identify a person as a cooperating witness in open court or in public court documents until the case is closer to trial.  Assuming that a confidential informant may be called as a witness at trial, the Government will disclose the identity, criminal history, and other pertinent information of any testifying confidential informant(s), subject to a protective order issued by the Court, no less than 30 days before the first day of trial.

The Defendant is asking for a laundry list of information about the confidential informants used in this case.  These requests are overly broad and should be denied to the extent that they request information beyond the scope of Fed.R.Crim.P 16, *Brady, Giglio* and their progeny.

To the extent that these motions are a request for early production of *Jencks* Act material, the Government objects.  Under *Ruiz*, 536 U.S. at 629, information pertinent to an informant witness would be a trial right rather than a pretrial discovery right.  As stated above, in the event that the United States decides to call any informant or cooperating individual as a witness in this case, the United States will disclose the identity of that person to the defendant no later than 30 days prior to trial.  The United States will also timely disclose any materials required to be disclosed under *Brady, Giglio* and the *Jencks* Act.

The Government established necessity in each of its Affidavits in Support of Application of wiretaps without the use of communications involving CHS-1, or records of information obtained as a result of information provided by CHS-1.  The Affiants provided detailed summaries of normal investigative procedures which were attempted and failed or were only partially successful or appeared unlikely to succeed, or were too dangerous to employ in this investigation.   Necessity was established without resorting to providing records of communications or actual communications between CHS-1 and investigating law enforcement agencies as requested in D-1.2 and D-1.3.

**Section E.        PARALLEL CONSTRUCTION**

The defense asserts that federal investigators drafted two investigative reports addressing the same event, one of which was "sanitized" of sensitive information and investigative leads. The argument made by defense counsel regarding "Parallel Construction" is baseless and

frivolous.  Counsel for the Government will confer with defense counsel on this issue and, with the Court's permission, may file a supplemental response if an agreement cannot be reached.

**Sections F, G, and H**

The Government has provided all relevant material and data which was obtained by law enforcement through pen register, trap and trace materials, toll records, and private databases. Defense counsel has received extensive discovery of these materials and has the same data as the Government.  If the Government intends to use any charts, summaries, or organizational charts at trial, the Government will provide those materials as required by the Federal Rules of Criminal Procedure and Federal Rules of Evidence.

Throughout these sections the defense again asks for material that casts an extremely wide net as a casual request for additional discovery which is far from sufficient to justify the extraordinary relief they ask the Court to provide in their motion.  "The constitution does not grant criminal defendants the right to embark on a 'broad and blind fishing expedition among documents possessed by the government . . .'"  *United States v. Mayes*, 917 F.2d 457, 461 (10th Cir. 1990), cert. denied, 498 U.S. 1125 (1991), citing *Jencks v. United States*, 353 U.S. 657, 667 (1957), and *United States v. Manzino*, 860 F.2d 981, 985 986 (10th Cir. 1986).  The Defendant makes requests of numerous internal agency systems.  These systems have limited checks and internal controls.  These systems and their information should be protected.  They often contain abstracts or summaries of reported information.  The defense has already received investigator reports and any information which was relied upon from such internal agency systems.  Because of the manner with which these systems operate, such as how NADDIS numbers are assigned and methods for which they are used, release of the information could allow violators to avoid apprehension, and could place law enforcement personnel or informants

in danger, since many details of a DEA investigation would be disclosed," the declarant explains. *U.S. v. Higgins*, 919 F.Supp.2d 131, 150, D.D.C. 2013.   It is this same rational that the Defendant's overly broad requests should be denied.

The Government reiterates it is well settled that the requirement of necessity does not equal the principle of exhaustion.   Therefore, law enforcement need not "exhaust all other conceivable investigative procedures before resorting to wiretapping."   *Barajas*, 710 F.3d at1107; Foy, 641 F.3d at 464, *citing Zapata*, 546 F.3d at 1185–86.  Nor must wiretapping be the "last resort." *Castillo-Garcia*, 117 F.3d at 1187 ("the government need not exhaust or explain its failure to exhaust every conceivable investigative procedure before resorting to wiretapping"). Indeed, "the government may obtain a wiretapping warrant without trying any other methods of investigation if it demonstrates that normal investigatory techniques reasonably appear to be unlikely to succeed if tried, or would be too dangerous to try."   *Castillo–Garcia*, 117 F.3d at 1187.

Consistent with the holdings that the necessity requirement is not an exhaustion requirement, that it was not intended to place wiretapping off limits, and that it must be applied in a commonsense fashion, a defendant's necessity challenge should not become a license to turn the necessity analysis into nit-picking critique of the investigation.  Indeed, Courts within this District, specifically addressing a defendant's arguments as to what the agents might have done or could have done in an investigation, have consistently held that "*Castillo-Garcia* does not allow a defendant to second guess a narcotics investigation by arguing that, because certain steps that could have been taken were not, the government's wiretap is unconstitutional." *United States v. Crumpton*, 54 F.Supp.2d 986, 1008 (D. Colo. 1999; *citing United States v. Chavez*, No. 97-CR-197-D (D. Colo. May 13, 1998); *United States v. Small*, 229 F.Supp.2d. 1166, 1189,

(D.Colo. 2002); *Carrillo*, 123 F.Supp.2d at 1245 (D.Colo. 2000).  In other words, courts should refuse to invalidate a wiretap order simply because defense lawyers are able to suggest post-factum some investigative technique that might have been used but was not.  These types of "after-the-fact" suggestions by defense attorneys as to how an investigation might have been handled are entitled to little weight in the analysis of statutory compliance with Section 2518(1)(c).  *Carrillo*, 123 F.Supp.2d at 1245.  In this case, each affidavit in support of interception of communications devoted many pages to outlining specific normal, previously attempted and ongoing investigative techniques in detail, referencing dates and other very specific information.

Wherefore, except for those requests the Government has conceded and agreed, the Defendant's motion should be denied in its entirety for all of the reasons set forth above.

Dated this 9th day of November, 2015.

Respectfully submitted,

John F. Walsh
United States Attorney

By    *s/Zachary Phillips*_____
      ZACHARY PHILLIPS
      Assistant United States Attorney
      U.S. Attorney's Office
      1225 17th St., Suite 700
      Denver, CO 80202
      Telephone (303) 454-0118
      Fax (303) 454-0401
      e-mail:  zachary.phillips@usdoj.gov
      Attorney for the Government

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of November, 2015, I electronically filed the fore-going **RESPONSE TO DEFENDANT RICKY GARRISON'S MOTION FOR SPECIFIC DISCOVERY (Doc. No. 611)** using the CM/ECF system which will send notification of such filing to all counsel of record in this case.

_s/Maggie E. Grenvik_
Maggie E. Grenvik
Legal Assistant