**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 14-cr-231-WJM

UNITED STATES OF AMERICA,

        Plaintiff,

v.

**1.    RICKY GARRISON,
4.    FRANCISCO AGUILAR,
5.    SIMEON RAMIREZ,
9.    ARCHIE POOLE,
11.  MELVIN TURNER,
15.  ROBERT PAINTER,
16.  LATOYA WIMBUSH,**

        Defendants.[1]

---

## ORDER ON PENDING MOTIONS

---

        Before the Court are seven motions seeking discovery from the Government and

two motions attacking the indictment.  For the reasons explained below, the Court

---

[1] Most of the motions at issue in this order were filed on behalf of one named defendant and "all co-defendants" or "the remaining codefendants."  (*See, e.g.*, ECF No. 611 at 1; ECF No. 614 at 1; ECF No. 615 at 1.)  As the Court previously noted, such generic designations are inappropriate.  (*See* ECF No. 627.)  "Going forward, joint motions shall accurately state the names of the defendants on whose behalf the motion is filed."  (*Id.*)  The Court further explained that it is likewise inappropriate, when filing through CM/ECF, to check the box indicating that a filing is being made on behalf of all defendants, because that results in motions being designated "as filed by or on behalf of all defendants regardless of whether a defendant has pleaded guilty or intends to."  (*Id.*)  Even so, counsel for Defendant Garrison has since filed a Status Report regarding the various motions (ECF No. 689, discussed in more detail below) showing on its first page that it is filed on behalf of Garrison and Defendant Painter, but whose CM/ECF docket text shows that it was filed on behalf of all sixteen Defendants.  The disparity between the first page and the docket text is unacceptable.  The disparity between the first page and the original motions (filed on behalf of "all co-defendants" or "the remaining codefendants") is needlessly confusing.  It is unclear whether any other Defendant still joins the outstanding motions.  For simplicity's sake, this caption reflects all of the defendants who have yet to file a notice of disposition.

denies all of the discovery motions (either as moot, premature, or insufficiently supported).  The Court reserves ruling on the motions attacking the indictment in light of its Order on Procedures.  (*See* ECF No. 99 ¶ 8(a).)

## I.  BACKGROUND

This sixteen-defendant case principally involves what the Government alleges to be a large conspiracy to distribute cocaine, heroin, and methamphetamines.  (*See* ECF No. 10.)  The Government used a number of Title III wiretaps while investigating the alleged conspiracy.  According to Defendant Garrison, the Government obtained these wiretaps by representing that they would be used to investigate "large-scale drug distribution and/or the Gangster Disciples street gang."  (ECF No. 611 at 2.)

## II.  MOTION FOR SPECIFIC DISCOVERY (ECF No. 611)

### A.    Garrison's Requests

Garrison's 60-page Motion for Specific Discovery is extensive and reminiscent of the wide-ranging, often questionably relevant requests for production typically seen in civil litigation.  His requests may be summarized as follows:

- •    essentially all information the Government has developed regarding the Gangster Disciples since January 2012, including information developed for other prosecutions and information about confidential informants (ECF No. 611 at 29–35);

- •    information in the Government's possession about the Aurora Police Department's investigation of a homicide (allegedly linked to Garrison) of a confidential informant (*id.* at 35–38);

2

- all information obtained by the Government regarding "Operation Red Dawn," a local law enforcement investigation that apparently partially overlapped with the Government's investigation of the Gangster Disciples (*id*. at 38–41);

- documents generated with respect to the Government's various confidential informants used in the Gangster Disciples investigation (*id*. at 39–48);

- information regarding whether investigating agencies employed "parallel construction," an alleged tactic by which law enforcement agencies prepare two files for each investigation, one that tells the entire story of the investigation, and another that has been "sanitized" of sensitive information (*id*. at 48–51);

- the results of any analysis performed on raw data (*i.e.*, phone numbers) obtained through pen registers, trap and trace devices, or administrative subpoena of phone records (*id*. at 51–54);

- all information regarding any member of the Gangster Disciples, and regarding any individual named in a wiretap application whose communications would be intercepted, contained in any database on which the Government relied, and all analyses of information gleaned from these databases (*id*. at 54–60).

Garrison seeks this information in hopes of gathering more evidence to support an anticipated "motion to suppress [the] evidence obtained pursuant to the Title III

interceptions."  (ECF No. 611.)

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 governs electronic eavesdropping by law enforcement officials.  *See* 18 U.S.C. §§ 2510–22. Given the extraordinary danger that wiretaps pose to Fourth Amendment rights to be free from unreasonable searches and seizures, wiretaps are not to be routinely employed in criminal investigations.  *United States v. Giordano*, 416 U.S. 505, 515 (1974).  Indeed, to obtain a wiretap warrant, the Government must first satisfy a court that numerous prerequisites have been met, most of which go beyond what would be necessary to establish traditional probable cause for a search warrant.  *See generally* 18 U.S.C. § 2518.

For each category of information that Garrison requests, he argues that it would assist him to establish the Government's alleged failure to satisfy various Title III prerequisites, thus supporting a motion to suppress.  However, although numerous cases discuss a court's obligations when a defendant moves to suppress on these grounds, Garrison does not cite—and this Court could not find—any case regarding whether a defendant is entitled to discovery to assist him or her in developing such a motion.  This is all the more telling given that Garrison's motion contains a 20-page "Law" section describing (in the abstract) various legal grounds for discovery and suppression, yet none of Garrison's cited authorities mention discovery for purposes of preparing a Title III challenge.  Moreover, in the ensuing 31 pages of specific requests and explanations for those requests, the Court counts a total of nine citations to legal authority—and again, none relates to discovery for purposes of preparing a Title III challenge.

4

This does not necessarily mean that a defendant may never obtain such discovery.  Nonetheless, "[t]here is no general constitutional right to discovery in a criminal case."  *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).  The Government's pretrial discovery obligations instead rest largely on four authorities: (1) *Brady v. Maryland*, 373 U.S. 83 (1963), which holds that due process requires prosecutors to disclose to defendants potentially exculpatory evidence; (2) *Giglio v. United States*, 405 U.S. 150 (1972), which holds that exculpatory evidence includes evidence affecting witness credibility if the witness's reliability will likely determine guilt or innocence; (3) Federal Rule of Criminal Procedure 16, which establishes a number of specific discovery obligations; and (4) the Court's inherent authority to order discovery in certain circumstances.  Each will be discussed in turn.

## B.    *Brady* and *Giglio*

To the extent Garrison claims that the information he requests must be disclosed under *Brady* or *Giglio*, the Government affirms that it is aware of its obligations under those cases, that it has already supplied the relevant information in its possession, and that it "will continue to provide the materials required by these cases and subsequent decisions."  (ECF No. 678 at 1–2.)  The Court has no reason to doubt this assertion.

Garrison nonetheless appears to be arguing that much of what he now requests somehow falls under *Brady* or *Giglio* and should be disclosed.  For example, Garrison argues at least three times, without citation to authority, that certain information "must be provided because it is favorable to the defense."  (ECF No. 611 at 31, 40, 44–45.)  Assuming Garrison intends this as a reference to *Brady* or *Giglio*, his argument fails.  In

all three instances, Garrison requests information that, if it exists, might be "favorable" to his planned wiretap challenge, depending on what the information actually reveals. But *Brady* and *Giglio* do not address all forms of information that might be helpful to a wiretap challenge. Rather, those cases focus on information favorable to the accused with respect either to guilt or punishment.

More broadly, Garrison also asks this Court to hold that *Brady* requires disclosure of all information that might simply be helpful to him in any strategy he might pursue. (ECF No. 611 at 9.) Out of respect for the rule of law and the goal of fair adjudication, out of respect for the dignity of the defendant, and recognizing the typical asymmetry of information between the Government and the defendant, the Court strongly encourages the Government to adopt this approach. To a small extent, the United States Attorney's Office for the District of Colorado has already done so. (*See id.* at 27–28 (quoting the USAO-CO's office policies manual regarding criminal discovery).) But this is not the *Brady* standard, which focuses only on "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment." 373 U.S. at 87.

In one instance, Garrison argues that a specific category of information "is *Giglio* material." (ECF No. 611 at 60.) Garrison refers to all information contained in any database on which the Government relied when performing the investigation that led to the current indictment about either the Gangster Disciples or any individual named in a wiretap application whose communications would be intercepted. (*See id.* at 54–60.) Garrison does not explain how any of this would necessarily be *Giglio* material, *i.e.*,

6

material that bears on the credibility of a witness.  Garrison's claim is entirely speculative.  Of course, if the Government has gleaned *Giglio* (or *Brady*) material from these databases, the Government must timely produce that material.  But the Government has no obligation to produce all database-related information based on Garrison's speculation that he might discover what he considers to be *Giglio* material.

Accordingly, the Court finds no basis under *Brady* or *Giglio* to order the Government to disclose any of the material requested in Garrison's Motion for Specific Discovery.

## C.     Rule 16

Federal Rule of Criminal Procedure 16(a) requires the Government to produce various categories of documents and information upon the defendant's request. Garrison, however, does not invoke Rule 16(a).  To the contrary, he states that "[t]he material requested herein [*i.e.*, in his Motion for Specific Discovery] is not specifically addressed by Federal Rule of Criminal Procedure 16," but the Court may nonetheless order its production through the Court's "inherent authority."  (ECF No. 611 at 12.)  The Court will therefore move on to a discussion of its inherent authority.

## D.     Inherent Authority

The Court's inherent authority to order discovery in criminal matters is not a well-developed concept.  The authority certainly exists, at least in some circumstances. *See, e.g.*, *United States v. Nobles*, 422 U.S. 225, 231 (1975) ("Decisions of this Court repeatedly have recognized the federal judiciary's inherent power to require the prosecution to produce the previously recorded statements of its witnesses so that the

defense may get the full benefit of cross-examination and the truth-finding process may be enhanced."); *United States v. Gallo*, 654 F. Supp. 463, 471 (E.D.N.Y. 1987) ("The [Federal] Rules [of Criminal Procedure] have not supplanted the residual powers of the courts to order appropriate discovery.").  But the case law offers little guidance on how to exercise this authority.[2]

Nonetheless, the Court cannot ignore the current context, *i.e.*, Garrison's intent to use whatever he receives from the Government to support an anticipated wiretap challenge.  Most wiretap challenges are "facial" challenges, arguing that the information before the judge that issued the wiretap was, in reality, insufficient to justify the wiretap. *See United States v. Oregon-Cortez*, 244 F. Supp. 2d 1167, 1171 (D. Colo. 2003). "[T]he information before the issuing judge includes the Applications, Affidavits and Orders authorizing the wiretaps and also the testimonial or documentary evidence introduced at the *in camera* proceedings before the issuing judge."  *Id.* at 1172 (internal quotation marks omitted).  In other words, the question is not what the Government may have known beyond what its agents told the issuing judge, but whether the information given to the issuing judge, standing alone, justified the wiretap.  Other than the Government's disclosure of the information presented to the issuing judge, the defendant needs no discovery to bring this sort of challenge.  Thus, nothing would justify the Court's use of its inherent authority to order discovery.

---

[2] Some case law suggests that the Court must ensure that exercise of its inherent authority will not conflict with Rule 16.  *See Carlisle v. United States*, 517 U.S. 416, 428 (1996). The Government does not argue that an order granting any of Garrison's requests would conflict with Rule 16, so the Court will not address this issue further.

A defendant who wishes a reviewing court to consider evidence *outside* what the issuing court considered must bring a *Franks* challenge, named for *Franks v. Delaware*, 438 U.S. 154 (1978).  *Franks* held that a defendant may be entitled to a preliminary evidentiary hearing to challenge the truthfulness of statements in an affidavit sworn out in support of a warrant.  *Id.* at 155–56.  *Franks* applies to wiretap warrants, *United States v. Green*, 175 F.3d 822, 828 (10th Cir. 1999), and can be used to challenge both the constitutional requirement of probable cause and the stricter statutory requirements found in Title III, *United States v. Merton*, 274 F. Supp. 2d 1156, 1166 (D. Colo. 2003).  To obtain a *Franks* hearing, the defendant must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit."  *Franks*, 438 U.S. at 155–56; *see also United States v. Owens*, 882 F.2d 1493, 1499 (10th Cir. 1989) ("It is not enough to show . . . that an affiant's negligence or innocent mistake resulted in false statements in the affidavit.").  *Franks* similarly applies to material omissions.  *Merton*, 274 F. Supp. 2d at 1166.

Garrison several times expresses his intent to bring a *Franks* challenge.  (ECF No. 611 at 33–34, 41, 45–47, 60.)  Garrison also intends to challenge various other Title III requirements, but all of these are subsumed under *Franks*.  For example, he hopes to attack Title III's "necessity" requirement, *i.e.*, that the Government include in its wiretap application "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."  18 U.S.C. § 2518(1)(c).  But if

Garrison means to demonstrate that the Government affirmatively misstated something in this regard, or omitted something material, that is a *Franks* challenge.[3]  *See Merton*, 274 F. Supp. 2d at 1166.

The same is true for any challenge to what Garrison calls the "organizational component."  Title III requires the Government to specify "the identity of the person, if known, committing the offense and whose communications are to be intercepted." 18 U.S.C. § 2518(1)(b)(iv).  However, "the target of a wiretap may be a drug organization as a whole, rather than an individual," *United States v. Crumpton*, 54 F. Supp. 2d 986, 1007 (D. Colo. 1999), and "the law enforcement goal of uncovering the size and scope of the conspiracy may justify the authorization of wiretaps," *United States v. Foy*, 641 F.3d 455, 464–65 (10th Cir. 2011).  Here, Garrison claims that every wiretap affidavit named the Gangster Disciples as the target organization, but "there was, in reality, no Gangster Disciples investigation."  (ECF No. 611 at 29.)  Rather, says Garrison, the entire investigation was an impermissible dragnet aimed solely at him. (*Id.* at 29–31.)  This, of course, is ultimately a *Franks* argument.  According to Garrison, the Government materially misstated the scope, purpose, and target(s) of its investigation, leaving the issuing judge to issue a warrant he would not have otherwise issued.

Finally, Garrison's "subterfuge" arguments are also, at bottom, *Franks* arguments.  A Title III application must specify the particular criminal offenses for which

---

[3] If Garrison is *not* arguing that the Government misstated or omitted material information, but simply wants to point out some investigative technique he thinks the Government should have tried, it is not clear why he would need discovery.

evidence is sought, *see* 18 U.S.C. § 2518(1)(b)(i), and the wiretap must not be a "subterfuge search," actually directed at crimes other than those specified in the application, *United States v. Marion*, 535 F.2d 697, 700 (2d Cir. 1976) (internal quotation marks omitted).  Garrison argues that the wiretaps targeting him were not intended to develop evidence of drug crimes, as claimed, but actually a subterfuge for investigating the murder of "an Aurora confidential informant."  (ECF No. 611 at 2, 4, 35–38.)  If true, this would be a material omission, supporting a *Franks* challenge.

Thus, if Garrison wishes to attack the wiretap applications with evidence outside of what the issuing judge considered, he must show he is entitled to a *Franks* hearing. *See Oregon-Cortez*, 244 F. Supp. 2d at 1170–72 (holding as much); *see also United States v. McDowell*, 520 F. App'x 755, 758 (10th Cir. 2013) ("We have held that evidentiary hearings in the context of wiretap applications are subject to the requirements of *Franks* . . . ."), *cert. denied*, 134 S. Ct. 463 (2013).  As already noted, a defendant may not obtain a *Franks* hearing absent "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit."  *Franks*, 438 U.S. at 155–56.

Here, the question is not whether Garrison has made that substantial preliminary showing, but whether this Court may use its inherent authority to order discovery that *might* assist Garrison to make that showing.  That question must be viewed in the context of what defendants normally offer when attempting to make a substantial preliminary showing.  *Franks* held that "the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine."  438

U.S. at 171.  Instead, "[t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. . . .  Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained."  *Id.*

Given this, *Franks* challenges generally include affidavits from the defendant and from other persons whom the defendant knows could supply relevant information.  *See, e.g.*, *Searing v. Hayes*, 684 F.2d 694, 697 (10th Cir. 1982) ("[the defendant's] affidavits indicate that the informant could not have seen the contraband"); *United States v. Schauble*, 647 F.2d 113, 117 (10th Cir. 1981) ("In support of his motion, Schauble supplied the trial court with his own affidavit and that of another person who was with him in the house during the 48 hours prior to the search, the time period described by the informant."); *cf. United States v. Williams*, 669 F.3d 903, 905 (8th Cir. 2012) (affirming lack of a substantial preliminary showing because the defendant failed to submit an affidavit addressing the relevant facts); *United States v. Arbolaez*, 450 F.3d 1283, 1294 (11th Cir. 2006) (same).  Defendants' attorneys sometimes submit affidavits as well.  *See, e.g.*, *United States v. Watson*, 61 F. App'x 514, 517 (10th Cir. 2003) ("Ms. Watson's attorney submitted an affidavit to the district court in support of the *Franks* hearing request.  In it, she recited a conversation she had with Detective Rapela in which he further detailed his surveillance of the two residences . . . ."); *cf. United States v. Furrow*, 229 F.3d 805, 815 (9th Cir. 2000) ("counsel's representation that he would present evidence of reckless disregard for truth at the *Franks* hearing" found insufficient to meet the substantial preliminary showing standard), *overruled on other grounds by*

12

*United States v. Johnson*, 256 F.3d 895 (9th Cir. 2001) (en banc).  And defendants sometimes submit documents they or their counsel have gathered.  *See, e.g.*, *Schauble*, 647 F.2d at 117 ("Schauble offered in evidence an affidavit filled out by a [different police officer] to search a different residence.  That affidavit is almost identical in terminology to the . . . affidavit [being challenged] . . . .").

Having reviewed numerous cases regarding the substantial preliminary showing requirement, the Court could locate only one where the district court ordered the Government to produce information that would assist the defendant in making such a showing.  In that case, however, the information was a portion of the search warrant affidavit itself, which had been sealed because it disclosed information about a confidential informant.  *United States v. Napier*, 436 F.3d 1133, 1134–35, 1138 (9th Cir. 2006).  In other words, the defendant was being deprived of materials necessary to make even a facial challenge, much less a *Franks* challenge.  The Ninth Circuit nonetheless specifically rejected the notion "that *Franks* creates an unlimited right to access all information possibly needed to meet the preliminary showing requirement." *Id.* at 1136.

In sum, considering the usual manner that defendants attempt to make a *Franks* showing, and considering the almost total lack of authority permitting discovery to assist a defendant in making such a showing, the appropriate holding might be that such discovery is never proper, except perhaps when the Government withholds information actually presented to the warrant-issuing judge.  But in the law, as in life, "never say never" is a wise maxim.  Accordingly, the Court does not hold that *Franks*-assisting

discovery is never available.  Nonetheless, such discovery should be rare.  Stated differently, if such discovery is *not* rare, it would (a) radically transform what appears to be the long-settled practice and procedure concerning *Franks* challenges, and (b) substantially undermine the Supreme Court's admonition that "[t]here is no general constitutional right to discovery in a criminal case."  *Weatherford*, 429 U.S. at 559.

The question, then, is the standard by which *Franks*-assisting discovery requests should be judged.  To the extent a defendant seeks discovery about a confidential informant, the Tenth Circuit has already adopted a standard, which the Court will discuss below at Part IV, in the context of Garrison's Motion for Discovery Concerning Confidential Sources.  For all other discovery, the Court finds *Gordon v. United States*, 344 U.S. 414 (1953), instructive.

*Gordon* involved the prosecution of two defendants, Gordon and MacLeod, for unlawful possession of stolen goods while in interstate commerce.  *Id.* at 415.  The Government's primary witness was "one Marshall," an alleged co-conspirator who pleaded guilty and testified against Gordon and MacLeod.  *Id.*  "On cross-examination, Marshall admitted that between his [arrest] and his final statement to the Government, which implicated petitioners, he had made three or four statements which did not."  *Id.* at 416.  The trial judge, however, refused Gordon and MacLeod's request that the Government be ordered to turn over those earlier statements.  *Id.*

The Supreme Court reasoned that "if it would have been prejudicial error for the trial judge to exclude these statements, had the defense been able to offer them, it was error not to order their production."  *Id.* at 418.  Evaluating whether the trial judge should

have granted Gordon and MacLeod's request, the Supreme Court noted an "absence of specific legislation" and therefore fell back on "the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." *Id.* This is what the Supreme Court would later characterize as the district courts' inherent authority to order discovery. *See Nobles*, 422 U.S. at 231 (citing *Gordon* for the notion of inherent authority). *Gordon* held that the trial court should have exercised that authority to require disclosure of Marshall's previous statements to law enforcement, given the narrowness of the request and the foundation laid:

> By proper cross-examination, defense counsel laid a foundation for his demand by showing that the documents were in existence, were in possession of the Government, were made by the Government's witness under examination, were contradictory of his present testimony, and that the contradiction was as to relevant, important and material matters which directly bore on the main issue being tried: the participation of the accused in the crime. The demand was for production of these specific documents and did not propose any broad or blind fishing expedition among documents possessed by the Government on the chance that something impeaching might turn up.

*Gordon*, 344 U.S. at 418–19.

Twenty-two years later, the Supreme Court again upheld the district court's use of its inherent authority because the district court "authorized no general 'fishing expedition' into the defense files . . . .  Rather, its considered ruling was quite limited in scope . . . ." *Nobles*, 422 U.S. at 240.

Both *Gordon* and *Nobles* involved production at trial, as opposed to pretrial discovery, and the Supreme Court seemed to find that distinction meaningful. *See Nobles*, 422 U.S. at 234–35; *Gordon*, 344 U.S. at 419 n.9. Nonetheless, given the

15

general lack of guidance in this area, the Court finds their principles helpful in evaluating the appropriate exercise of its inherent authority to order pretrial discovery. Specifically, the Court finds that its inherent authority should not extend to requests that are, in substance, a "blind fishing expedition among documents possessed by the Government on the chance that something [favorable to the defense] might turn up." *Gordon*, 344 U.S. at 419. Rather, in the context of attempting to prepare a *Franks* challenge, the defendant must offer a specific, articulable basis for believing that the Government possesses particular evidence or information, not otherwise available to the defendant, that would support a claim that a warrant affiant intentionally or recklessly misstated or omitted material information in the relevant warrant application(s).

Garrison's discovery requests do not satisfy this standard. Rather, they demand entire categories of information and documents under the suspicion that they might reveal deficiencies helpful to formulating a *Franks* challenge.[4] Moreover, some of

---

[4] Concerning information related to "parallel construction" (*i.e.*, law enforcement agencies preparing two versions of an investigation file, one complete and the other "sanitized"), Garrison affirmatively states that he "does not make this request out of mere suspicion." (ECF No. 611 at 49.) Garrison goes on to claim that "there is absolute evidence that parallel construction techniques were used to sanitize investigative reports" because the reports of a particular traffic stop made "for federal purposes" stated that a certain individual was "stopped as a result of surveillance that was being conducted in regard to this narcotics investigation," whereas reports of that traffic stop made "for state purposes" stated "only that [the individual] had been stopped for a traffic violation." (*Id.* at 49–50.) This accusation, although more detailed, does not meet the standard the Court has set forth in this order. First, Garrison does not explain what relevance this may have to the truth or falsity of something the Government represented (or failed to represent) to the judge who issued the wiretap warrant. Second, it is not clear that both referenced "reports" were prepared by the Government. Presumably the report "for state purposes" was prepared by state or local officials, not federal officials. Third, even if the Government prepared both reports, they do not necessarily contradict—although the individual in question was being investigated for narcotics violations, the immediate justification for the stop was the traffic violation.

Garrison's requests show that the Government is not the only source from which he can obtain the information he seeks.  For example, Garrison's attorneys claim that they already know the identity of an important confidential informant known as "CHS-1." (ECF No. 611 at 44 n.6.)[5]  Moreover, they also seem to know many details about CHS-1 that could arguably support a claim that the Government was not sufficiently forthcoming to the judge that issued the wiretaps.  (*Id.* at 42–45.)  Thus, in these instances at least, there appears to be no justification for ordering the Government to produce even more information.

If Garrison can formulate much more specific, supported, and focused requests for information the Government is likely to have and which would potentially support a *Franks* challenge, Garrison should request such information from the Government and, if the Government refuses to produce it, may file a new, tailored discovery motion on these limited grounds.  But, as the Motion for Specific Discovery currently stands, it must be denied without prejudice.

### III.  MOTION FOR TIMELY DISCLOSURE OF *GIGLIO* MATERIALS (ECF No. 614)

Garrison's Motion for Timely Disclosure of *Giglio* Materials ("*Giglio* Motion") does not claim that the Government has actually withheld any specific, requested information.  Rather, Garrison preemptively moves for "disclosure of all materials and information pertaining to any witness or informant the government intends to present at trial . . . as outlined below."  (ECF No. 614 at 1.)  The "materials and information . . .

---

[5] As previously noted, discovery requests related to confidential informants are evaluated under a different standard, discussed in Part IV, below.  The Court nonetheless finds that Garrison's discovery requests related to confidential informants illustrate his failure to satisfy the general standard.

outlined below" for each witness are as follows:

1.      Name and last known address;

2.      Guilty verdicts, juvenile adjudications, or other bad acts;

3.      Consideration received in exchange for testimony;

4.      Bias, motive, or interest;

5.      Threats made by the Government;

6.      Prior testimony;

7.      Internal law enforcement files for any law enforcement witness;

8.      Competency-related information, such as information regarding capacity
        to observe and remember;

9.      False or inconsistent statements;

10.     Polygraph tests; and

11.     "Other," comprising twenty-nine additional requests regarding essentially
        every bit of information the Government possesses regarding the witness
        or anyone else potentially related to the case.

(*Id.* at 2–12.)

The Government responds that it "is mindful" of its *Giglio* obligations and it "has provided extensive discovery in this matter and will continue to do so as required by constitutional dictates and its continuing duty to disclose pursuant to Rule 16." (ECF No. 671 at 1.) Garrison offers no reason to doubt this assertion.

The Government further objects to providing the name and last known address of its witnesses, arguing that it "is not required to provide such detailed information to defendants prior to trial." (*Id.* at 2.) Garrison justifies this request with reference to

18

decisions from the Seventh and Ninth Circuits arguably suggesting that a defendant, in some circumstances, may have a right to interview the Government's intended witnesses. (ECF No. 614 at 2–3 (citing *United States v. Mapue*, 834 F.2d 1311 (7th Cir. 1987); *United States v. Cadet*, 727 F.2d 1453 (9th Cir. 1984); *United States v. Tucker*, 716 F.2d 576 (9th Cir. 1983); and *United States v. Cook*, 608 F.2d 1175 (9th Cir. 1979)).) Even so, a defendant in a non-capital case has no constitutional right to discover lists of prospective Government witnesses. *See Weatherford*, 429 U.S. at 559. And "[n]o statute or rule, moreover, requires pretrial disclosure of non-expert witnesses." *United States v. Nevels*, 490 F.3d 800, 803 (10th Cir. 2007). The Court accordingly agrees with the Government that it has no obligation to produce the name and last known address of its prospective witnesses at this time.

The Government also objects to Garrison's request for law enforcement witnesses' personnel files. (ECF No. 671 at 3.) The Court agrees with the Government that Garrison has no constitutional right to law enforcement witnesses' personnel files simply to see whether they contain potentially impeaching information. If the Government *knows* of such information, then *Giglio* of course requires its disclosure. But neither *Giglio* nor any other authority gives a defendant a right of access to all categories of information where impeaching material might exist. *Cf. United States v. Davis*, 752 F.2d 963, 976 (5th Cir. 1985) ("the court is simply not required to ensure access to all government material in order that [the defendant] might be able to find something exculpatory for his case"). The Court agrees with the Sixth, Seventh, and Eleventh Circuits, which hold that *Giglio*-based access to a law enforcement officer's

personnel file requires a specific showing that the file is likely to contain material evidence.  *See United States v. Quinn*, 123 F.3d 1415, 1421–22 (11th Cir. 1997); *United States v. Driscoll*, 970 F.2d 1472, 1482 (6th Cir. 1992); *United States v. Andrus*, 775 F.2d 825, 843 (7th Cir. 1985); *cf. United States v. Williams*, 576 F.3d 1149, 1162 (10th Cir. 2009) (finding, in a *Franks* challenge context, that information actually known about an officer's history of internal discipline was not enough to make a substantial preliminary showing because the officer's misconduct "d[id] not pertain directly to this case" and was not "sufficiently pronounced or iniquitous so as allow us to infer that a false statement was deliberately or recklessly included . . . in the warrant affidavit"). Garrison's request—"the defendant is entitled to have access to [the] personnel file to ascertain whether there is information within[,] which could be of an impeaching nature" (ECF No. 614 at 7)—does not satisfy the standard.  Accordingly, the Government has no obligation to disclose law enforcement witnesses' personnel files.

Finally, the Government objects "[t]o the extent [Garrison] requests items not required to be produced pursuant to *Brady*, *Giglio* or the Discovery Order."  (*Id.* at 2.) The Court presumes this argument applies at least to Garrison's "Other" category, which is partially redundant of earlier requests, often overreaching,[6] and, as evidenced by its citation to the Colorado Rules of Evidence, plainly an unexamined cut-and-paste from some other motion or template.  (*See* ECF No. 614 at 11; *see also id.* at 7.)

---

[6] Examples include: "[w]hether the witness has a Naddis number [a record in the Narcotics and Dangerous Drugs Information System database], and, if so, the reason for assigning that number including all documentation and information supporting or leading to the assignment of that number" (ECF No. 614 at 9); "[w]hether any witness/information is no longer living or unavailable [*sic*] to the Government" (*id.* at 11); and "[a]ll investigative or intelligence reports referring to . . . any confidential informant" (*id.*).

Nonetheless, apart from the matters already discussed, the Government does not point out any specific request that it believes is beyond its obligations under *Brady*, *Giglio*, or the Discovery Order.  Accordingly, apart from the matters already discussed, the Court does not find that any particular request exceeds the Government's obligations under those authorities, but neither does the Court find that any request is within the Government's obligations.  The Court expects the Government to continue to comply with its established discovery obligations.  With that understanding, Garrison's *Giglio* Motion is denied without prejudice.

## IV.  GARRISON'S MOTION FOR DISCOVERY CONCERNING CONFIDENTIAL SOURCES (ECF No. 615)

Garrison's Motion for Discovery Concerning Confidential Sources ("Garrison's Confidential Sources Motion") begins with a nine-page exposition of what Garrison believes to be the Government's obligations under *Brady*.  (ECF No. 615 at 2–10.)  He particularly points out that *Brady*'s "materiality" requirement—*i.e.*, that "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different," *Smith v. Cain*, 132 S. Ct. 627, 630 (2012) (internal quotation marks omitted)—is a standard developed for purposes of appellate review, and should not apply to the Government's pretrial *Brady* obligations.  (ECF No. 615 at 9.)  Garrison cites a number of cases adopting his view, and even notes instances in this District when the Government has stipulated to it, but he does not actually ask this Court to hold that he has properly interpreted *Brady*.  Moreover, after offering this exposition, he leaves *Brady* behind and focuses entirely on case law directly relevant to requests for information about the Government's confidential

21

sources.  (*Id.* at 11–15.)  Accordingly, the Court will not address whether Garrison has properly stated the requirements that *Brady* places on the Government in pretrial proceedings.

Garrison seeks information about confidential sources to assist him in bringing a *Franks* challenge.  (*See* ECF No. 611 at 34, 41–48; ECF No. 615 at 12–13, 15.) However, the Tenth Circuit has held that he must *first* satisfy *Franks*'s substantial preliminary showing standard (obviously with information other than what he might glean from confidential sources) before this Court can consider whether the Government should be required to reveal information about such sources for purposes of a *Franks* challenge.  *United States v. Long*, 774 F.3d 653, 661 (10th Cir. 2014) ("disclosure is not required if the defendant does not make the 'substantial preliminary showing' required by *Franks*"), *cert. denied*, 135 S. Ct. 2068 (2015).

Garrison does not appear to be aware that it is his burden at this stage to satisfy the substantial preliminary showing standard, and he does not otherwise satisfy that standard.  In particular, he does not provide any affidavits or any offer of proof.  *Cf. Williams*, 669 F.3d at 905 (substantial preliminary showing standard not met when defendant failed to submit supporting affidavits); *Arbolaez*, 450 F.3d at 1294 (same). Rather, as to CHS-1 (whose identity Garrison's counsel claims to know already,[7] *see* ECF No. 615 at 12 n.2), Garrison simply points out, in one paragraph, how important

_____

[7] If Garrison indeed knows CHS-1's identity, then there appears to be no basis for the Government to continue asserting its non-disclosure privilege as against Garrison.  *See Roviaro v. United States*, 353 U.S. 53, 60 (1957) ("once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable").  But Garrison has not moved on these grounds, so the Court will not address the issue further.

that informant appears to have been to the Government, and declares that "disclosure of all information possessed by the government at the time of [the wiretap] applications concerning CHS-1" is therefore "essential to a fair determination of any wiretap challenges under *Franks*."  (*Id.* at 12 (internal quotation marks omitted).)  Garrison is even more perfunctory as to the other confidential sources about whom he requests information (CHS-4, CHS-5, and AP-1), briefly pointing out that the Government relied on information from those sources in some of its wiretap applications.  That is not a substantial preliminary showing, and so this Court may not order disclosure for purposes of a *Franks* challenge.  *Cf. United States v. Lopez*, 2011 WL 124441, at *1 (D. Colo. Jan. 14, 2011) (denying request for confidential informant information in preparation for a *Franks* challenge).

To the extent Garrison has any other reason for requesting information about the Government's confidential sources, he has not explained it.  Absent such an explanation, the Court cannot evaluate whether Garrison's alleged need outweighs the Government's interest in maintaining the confidentiality of its sources.  *See Roviaro*, 353 U.S. at 62 (requiring courts to "balanc[e] the public interest in protecting the flow of information against the individual's right to prepare his defense").[8]

If the Government intends to offer a confidential informant as a witness, it will

---

[8] It makes no difference that some of Garrison's requests do not go directly to the identity of the confidential informant, but simply request information about the informant.  (*See, e.g.*, ECF No. 611 at 44 (requesting "[a]ll information in the possession of any law enforcement agency involved in this investigation including the DEA that bears on the reliability of CHS-1").)  "The privilege identified in *Roviaro* protects more than just the name of the informant and extends to information that would tend to reveal the identity of the informant."  *Napier*, 436 F.3d at 1136.

then need to identify that witness, and the Government's various discovery duties as to that witness (such as under *Brady* and *Giglio*) will apply.  Moreover, to the extent a confidential source has provided the Government with *Brady* or *Giglio* information relevant to other witnesses or to the case generally, the Government must timely disclose that information regardless of whether it plans to call the confidential source as a witness.  Garrison, however, has not demonstrated that identifying confidential informants or discovering more information about them is appropriate at this stage. Garrison's Confidential Sources Motion is denied without prejudice.

## V.  SIMEON RAMIREZ'S MOTION TO DISCLOSE AND PRODUCE CONFIDENTIAL INFORMANTS/CONFIDENTIAL SOURCES/CONFIDENTIAL HUMAN SOURCES/UNDERCOVER EMPLOYEES (ECF No. 621)

Defendant Simeon Ramirez, on behalf of himself only, has filed a Motion to Disclose and Produce Confidential Informants/Confidential Sources/Confidential Human Sources/Undercover Employees ("Ramirez's Confidential Sources Motion"). Ramirez offers a list of topics about which he seeks information for each confidential informant, most of which appears to be *Brady* or *Giglio* material.  (ECF No. 621 at 16–19 (requesting, *e.g.*, each confidential informant's criminal record, any consideration for the informant's cooperation, whether an immunity agreement exists, etc.).)

"A defendant seeking to force disclosure of an informant's identity has the burden to show the informant's testimony is relevant or essential to the fair determination of defendant's case.  In determining whether to require disclosure, a court must balance the public interest in protecting the flow of information against the individual's right to prepare his defense."  *United States v. Gordon*, 173 F.3d 761, 767

(10th Cir. 1999) (citing *Roviaro*, 353 U.S. at 62).  In balancing these interests, the Court must consider the crime charged, the possible defenses, and the significance of the informant's testimony.  *Id.*  "Where it is clear that the informant cannot aid the defense, the government's interest in keeping secret [the informant's] identity must prevail over the defendant's asserted right of disclosure."  *United States v. Sinclair*, 109 F.3d 1527, 1538 (10th Cir. 1997).

Under this standard, Ramirez's Motion is premature.  Generally, whether to order disclosure of a confidential source is not a ripe question until the Government elects to go to trial based on information learned from a confidential source whom the Government will not call as a witness.  *See, e.g.*, *Roviaro*, 353 U.S. 53, 55–59, 63–65; *United States v. Cruz*, 680 F.3d 1261, 1262–63 (10th Cir. 2012); *United States v. Vincent*, 611 F.3d 1246, 1249, 1251–52 (10th Cir. 2010); *United States v. Moralez*, 908 F.2d 565, 567–68 (10th Cir. 1990).  Hence, the Tenth Circuit requires "[a] defendant seeking to force disclosure of an informant's identity . . . to show [that] the informant's *testimony* is relevant or essential to the fair determination of defendant's case."  *Gordon*, 173 F.3d at 767 (emphasis added).  A simple desire to know more about confidential sources is not enough.  The defendant must explain, beyond "mere speculation[,] about the possible usefulness of an informant's testimony [at trial]."  *Moralez*, 908 F.2d at 567.

Circumstances may exist where due process requires the Government to disclose a confidential source even before deciding whether to call him or her at trial. As noted above in Part IV, for example, disclosure of confidential sources may be

required as part of a *Franks* challenge.  Ramirez, however, has not asked for disclosure as part of an anticipated *Franks* challenge.  Instead, he wishes to "properly confront" and "impeach" the "witnesses against him at trial," including "the confidential sources who may testify against him."  (ECF No. 621 at 13–15.)

As the Court already discussed in the context of Garrison's Confidential Sources Motion, the Government's discovery duties as to any confidential informant witness are triggered when the Government resolves to call that informant as a trial witness.  Until that point, the Court cannot discern which confidential informants the Government intends to continue concealing, and so cannot evaluate the propriety of ordering the Government to reveal those sources' identities.  Ramirez's Confidential Sources Motion is therefore denied without prejudice.

## VI.  MOTIONS ATTACKING THE INDICTMENT

Garrison has filed a Motion Objecting to Misjoinder of Counts or in the Alternative to Sever Counts ("Misjoinder Motion").  (ECF No. 617.)  Garrison principally argues that the charges against him relating to interstate prostitution (Mann Act) are not "of the same or similar character, or . . . based on the same act or transaction, or . . . connected with or constitute parts of a common scheme or plan," Fed. R. Crim. P. 8(a), when compared to the controlled substance and felon-in-possession charges.  The Government responds that "[j]oinder of multiple counts in a single trial where a defendant is charged with being a felon in possession of a firearm in addition to substantive crimes has been consistently upheld by the Tenth Circuit," and that it anticipates presenting "recordings from Title III intercepts where the Defendant discusses guns, prostitution and/or narcotics in the same calls," thus allegedly establishing that these illegal activities "were parts of a common

26

scheme."  (ECF No. 673 at 1, 2.)

The Court need not resolve this dispute at this time.  As Garrison notes (ECF No. 617 ¶ 5), the usual relief for misjoinder is to order separate trials of the various counts or to sever the various defendants' trials.  *See* Fed. R. Crim. P. 14(a).  The Court's Order on Procedures specifically states that "the Court will not typically rule on motions seeking severance until the time of the Final Trial Preparation Conference, at which point the contours of the case to be tried [will] have become clearer."  (ECF No. 99 ¶ 8(a).)  Accordingly, the Court reserves ruling on Garrison's Misjoinder Motion.

The Court likewise reserves ruling on Defendant Robert Painter's Motion to Dismiss Count One ("Motion to Dismiss").  (ECF No. 619.)  The thrust of this Motion is that the indictment actually reveals many smaller conspiracies rather than the large conspiracy alleged in Count One.  (*Id.* ¶¶ 6–11.)  The Government correctly notes (*see* ECF No. 677 at 5) that whether the evidence shows a single conspiracy or multiple smaller conspiracies is generally a jury question.  *See, e.g.*, *United States v. Roberts*, 14 F.3d 502, 511 (10th Cir. 1993) ("Ultimately, whether the government met its burden of establishing a single rather than multiple conspiracies was a question of fact that the jury decided."); *United States v. Powell*, 982 F.2d 1422, 1431 (10th Cir. 1992) ("Whether the evidence established a single conspiracy is a fact question for the jury.").[9]  But the Court need not hold as much in this case because the Court views

---

[9] One situation in which a pretrial determination of the scope of a conspiracy may be required, at least preliminarily, is in a *James* hearing, *i.e.*, a determination whether co-conspirator statements are admissible under Federal Rule of Evidence 801(d)(2)(E).  Garrison's and Painter's motions attacking the indictment do not request a *James* hearing, and in any event, the undersigned has specific requirements for *James* disputes, as set forth in the Order on Procedures.  (*See* ECF No. 99 ¶ 8(b).)

Painter's Motion to Dismiss essentially like Garrison's Misjoinder Motion.  It raises an

issue that will very likely "have become clearer" by the time of the Final Trial

Preparation Conference.  (ECF No. 99 ¶ 8(a).)  Accordingly, the Court to defers ruling

on the Motion to Dismiss until that time.

## VII.  UNCONTESTED MOTIONS

A status report filed by Garrison on behalf of himself, Painter, and the

Government states that three discovery motions "are not in dispute":

1.      Motion for Discovery Concerning Potential Experts (ECF No. 613);

2.      Motion for Discovery of Information Concerning Garrison's Alleged

Statements to Government Agents (ECF No. 616); and

3.      Motion for Notice of Federal Rule of Evidence 404(b), 405, 406, 608 and

*Res Gestae* Evidence (ECF No. 618).

(*See* ECF No. 689 ¶ 3.)  For each of these motions, the Government has agreed to

work with Defendants in a manner that is satisfactory to them.  These motions will

therefore be denied as moot.

## VIII.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.      Garrison's Motion for Specific Discovery (ECF No. 611) is DENIED without

prejudice;

2.      Garrison's Motion for Discovery Concerning Potential Experts (ECF No. 613) is

DENIED as moot;

3.      Garrison's Motion for Timely Discovery of *Giglio* Materials (ECF No. 614) is

DENIED without prejudice;

4.      Garrison's Motion for Discovery Concerning Confidential Sources (ECF No. 615) is DENIED without prejudice;

5.      Garrison's Motion for Discovery of Information Concerning His Alleged Statements to Government Agents (ECF No. 616) is DENIED as moot;

6.      The Court RESERVES RULING on Garrison's Motion Objecting to Misjoinder of Counts or in the Alternative to Sever Counts (ECF No. 617);

7.      Garrison's Motion for Notice of Federal Rule of Evidence 404(b), 405, 406, 608 and *Res Gestae* Evidence (ECF No. 618) is DENIED as moot;

8.      The Court RESERVES RULING on Painter's Motion to Dismiss Count One (ECF No. 619); and

9.      Simeon Ramirez's Motion to Disclose and Produce Confidential Informants/ Confidential Sources/Confidential Human Sources/Undercover Employees (ECF No. 621) is DENIED without prejudice.

Dated this 3rd day of December, 2015.

BY THE COURT:

William J. Martinez
United States District Judge