IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 14-cr-00231-WJM-02

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

1.   RICKY GARRISON,
2.   **JAMES TILLMON,**
3.   CHRISTOPHER MARTINEZ,
4.   FRANCISCO AGUILAR,,
5.   SIMEON RAMIREZ,,
6.   CHRISTOPHER VIGIL,
7.   TRAVIS EDWARDS,
8.   DONDRAI FISHER,
9.   ARCHIE POOLE,
10.  LUIS RAMIREZ,
11.  MELVIN TURNER,
12.  SHAWN BEARDSLEY,
13.  SIDNEY TAYLOR,
14.  GREGORY WILLIAMS,
15.  ROBERT PAINTER, and
16.  LATOYA WIMBUSH,

        Defendants.

---

## DEFENDANT TILLMON'S
## MOTION FOR VARIANT SENTENCE

---

THE DEFENDANT, JAMES TILLMON, by and through his attorney, Clifford J. Barnard, and pursuant to D.C.COLO.L.Cr.R. 32.1, hereby requests that the Court impose a below-guidelines sentence of 36 months plus 4 years of supervised release. As the following information will show, this requested below-guidelines sentence would be sufficient to fulfill all sentencing goals and requirements set forth in 18 U.S.C. § 3553(a).

**I.**    **Introduction**

### A.   Sentencing Guidelines Calculations

Probation, the government and Mr. Tillmon have all calculated Mr. Tillmon's initial advisory sentencing guidelines range to be 51 to 63 months. Probation, however, believes that Mr. Tillmon is subject to a mandatory minimum sentence of 60 months and that, therefore, his sentencing guidelines range is 60 to 63 months. Mr. Tillmon and the government maintain that the 60 month mandatory minimum does not apply to Mr. Tillmon and that his advisory sentencing guidelines range remains 51 to 63 months.

18 U.S.C. § 3583(b) states that the statutory term of supervised release for Count 1, a Class B felony, is at least 4 years while U.S.S.G. § 5D1.2(a)(1) states that the guidelines range is at least 4 years but not more than 5 years.

### B.   Probation's Recommended Sentence

Probation recommends a top-of-the-guidelines sentence of 63 months and 5 years of supervised release. (Doc. 686 at R-1.)

### C.   Mr. Tillmon's Requested Sentence

Mr. Tillmon requests that the Court impose a below-guidelines sentence of 36 months and 4 years of supervised release.

### III.   18 U.S.C. § 3553(a) Supports a Below Advisory Guidelines Sentence and a Sentence Below Probation's Recommended 63 Month Sentence.

"The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). In so doing, the Court should consider, *inter alia*, "the history and the circumstances of the defendant," "the nature and circumstances of the offense," and "the need for the sentence imposed." 18 U.S.C. § 3553(a)(1) and (2). With these factors in

-2-

mind, a below-guidelines sentence is appropriate.

### A. The History and Characteristics of the Mr. Tillmon

"In fashioning a 'sentence sufficient, but not greater than necessary,' 18 U.S.C. § 3553(a), 'district courts are not only permitted, but required, to consider 'the history and characteristics of the defendant.' " [*United States v.*] *White*, 506 F.3d [635] at 644 [(8th Cir .2007)] (*quoting* 18 U.S.C. § 3553(a)(1))." *United States v. Chase*, 560 F.3d 828, 830 (8th Cir. 2009).

#### 1. Mr. Tillmon Has Strong Family Support.

Mr. Tillmon has the strong support of his family and this should assist significantly in his rehabilitation and the prevention of recidivism. His mother (Stella Tillmon), brothers (David Howell, Yvaes Nelson, Amelio Nelson, Tardaryl Nelson, Omar Dover and Ray Howell), sister (Patrice Nelson) and mother of his child (Christine Henderson) have all given him strong support throughout the court process and some of them have attended court appearances to support him. They have reasserted their continuing support and it is anticipated that they will be submitting letters and/or statements at sentencing. It is generally accepted that family support aids rehabilitation: "[t]he relationship between family ties and lower recidivism has been consistent across study populations, different periods, and different methodological procedures." Shirley R. Klein *et al., Inmate Family Functioning*, 46 Int'l J. Offender Therapy & Comp. Criminology 95, 99-100 (2002). "[T]he better family ties are maintained[,] the lower the recidivism rate." Phyllis J. Newton, Jill Glazer, & Kevin Blackwell, *Gender, Individuality and the Federal Sentencing Guidelines*, 8 Fed. Sent'g Rep. 148 (1995). *See also*, *United States v. Sayad*, 589 F.3d 1110 (10th Cir.

2009) (where the defendant was convicted of interstate delivery of 11 kilograms of cocaine and the guidelines range was 57 to 60 months, a sentence of probation was reasonable in part because, unlike in most cases, here there was strong family support which would aid rehabilitation).

### 2. Mr. Tillmon Was Addicted to Cocaine and Ecstacy When He Committed the Offense.

Mr. Tillmon is an addict who delivered small quantities of cocaine and ecstacy to several of his co-defendants. Mr. Tillmon was a heavy drug user by the time he was 20. He began using cocaine in his early 20's and ecstacy at about 24 or 25. He began using both on a daily basis by the time he was 28 or 29, shortly after the vehicular homicide car accident and was addicted to them at the time he committed the present offense. Mr. Tillmon has never had any treatment for his drug addiction, desires treatment and would greatly benefit from it. The Court may consider this in determining Mr. Tillmon's appropriate sentence. *See United States v. Garcia*, 497 F.3d 964 (9th Cir. 2007) (where a defendant was convicted of drug conspiracy and was sentenced to over 100 years, the sentence was vacated in part because the district court erred in holding that it had no power to consider the defendant's drug addiction and resulting mental impairment as a mitigating factor under 18 U.S.C. § 3553(a); the fact that the guidelines preclude a downward departure because of voluntary use of drugs under U.S.S.G. §§ 5K2.13 and 5H1.4 did not preclude the court from using this as a mitigating factor under § 3553(a)).

### 3. Too Long of a Sentence Could Impair Mr. Tillmon's Rehabilitation and/or Treatment.

A lengthy sentence could impair Mr. Tillmon's rehabilitation and/or his treatment.

The Court can also consider this as a factor in sentencing Mr. Tillmon. *See United States v. Jones*, 158 F.3d 492 (10th Cir. 1998) (where the defendant pled guilty to possession of a firearm by a prohibited person, the district court did not abuse its discretion in departing downward by three levels when, as one of eleven factors, it considered that imprisonment would sever the defendant's access to rehabilitative counseling – one of the purposes of sentencing is "to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D)) and *United States v. Cherry*, 487 F.3d 366 (6th Cir. 2007) (where the defendant was convicted of possessing child pornography and the guidelines range was 210-262 months, a sentence of 120 months (43% variance from guidelines) was proper in part because the defendant wanted to continue counseling and treatment but nothing was available in prison).

### 4. The Need for Medical Care

An extended sentence of imprisonment could pose an unnecessary risk to Mr. Tillmon's needs for medical treatment. As Probation stated in the *Presentence Investigation Report*, Mr. Tillmon "suffers from anxiety and panic attacks three to four times a week. Since his incarceration at Douglas County Jail, he has asked to speak with mental health counselors on three or four occasions, but has not yet met with a mental health professional." Doc. 686 at ¶ 85. After the vehicular homicide accident, Mr. Tillmon began having nightmares and continues to have a hard time as a result of this accident. When he was in custody at Denver County, Mr. Tillmon was seen a few times by a mental health counselor. While previously incarcerated at the GEO immigration facility and in the

Colorado Department of Corrections Mr. Tillmon was provided with prescription medication trazadone to treat these problems. While incarcerated and treated with trazadone at the Colorado DOC and at GEO, Mr. Tillman did not have any write-ups. However, while at the Douglas County Dentention Center where he was denied his medication (and racially discriminated against – see next section below), Mr. Tillmon has received a number of write-ups. Mr. Tillmon needs proper medical care and needs his medication. Furthermore, Mr. Tillmon believes he would benefit from mental health treatment. The Court can consider Mr. Tillmon's medical conditions and needs in sentencing him. *See United States v. Edwards*, 595 F.3d 1004 (9th Cir. 2010) (where the defendant was convicted of bankruptcy fraud and was on probation for a prior state conviction for fraud and where the guidelines range was 27-33 months, and where the defendant had diabetes and other illnesses, a sentence of probation, seven months of which was to be served under house arrest, and $5,000 fine, and restitution of $100,000 was not abuse of discretion in part because "while the district court agreed with the Government that the Bureau of Prisons was capable of providing for Edwards's medical care, it found that a sentence of probation would satisfy the requirement of providing needed care in the most effective manner." 18 U.S.C. § 3553(a)(2)(D)). A 36 month sentence would be sufficient to provide Mr. Tillmon with the medical treatment that he will need in the future.

### 5.     Pretrial Confinement

This Court may consider the harshness of Mr. Tillmon's pretrial and presentence confinement at the Douglas County Detention Center. While incarcerated there, Mr. Tillmon has been both denied necessary medication as described above and been the target of racial discrimination from both inmates and staff. He has been regularly placed

in pods in which he is the only African American out of 22 or 23 prisoners. He has been repeatedly taunted by both staff and inmates with racial slurs, including being called a "nigger." He has been attacked by other inmates and the guards have then either ignored the attacks or been slow to intervene. When Mr. Tillmon has defended himself, he has then been the individual written up with institutional violations (thus part of the reason for his institutional record at Douglas County[1]) while the other, non-African American individuals have not been written up. Furthermore, many of his write-ups have been for minor, petty matters. An example of this is that Mr. Tillmon was recently placed in a cell with an elderly gentleman who was having seizures on a regular basis. Early Wednesday morning before Thanksgiving, this gentleman had multiple seizures. Mr. Tillmon called Central Control reporting this. Eventually the gentleman was hospitalized. Mr. Tillmon then went back to bed. Later that morning, he was given a write-up and locked down for not doing a linen change an hour after he had finally gotten back to bed that morning. Other examples of petty write-ups included being written up for giving another inmate a piece of bread and for putting a small piece of tissue in his vent to disperse a fragrant smell into his cell after he had cleaned it. This Court can consider the harshness of Mr. Tillmon's pretrial confinement in determining the appropriate sentence for him. *See United States v. Carty*, 264 F.3d 191, 196 (2nd Cir.2001) ("we hold today that pre-sentence confinement conditions may in appropriate cases be a permissible basis for downward departures"); *United States v. Francis*, 129 F.Supp.2d 612, 616 (S.D.N.Y. 2001) (in an illegal reentry case, the court

---

[1] It should be noted that, during the 3 1/2 months that he was incarcerated at the GEO immigration detention facility prior to being transferred to Douglas County and for the time that he was incarcerated in the Colorado Department of Corrections before he was writted into federal custody for this case, Mr. Tillmon did not receive any write-ups.

departed downward one level because the defendant's 13 month pretrial confinement in a county facility where the defendant was subjected to extraordinary stress and fear, parts of the facility were virtually controlled by gangs and inmates, the defendant was the victim of an attempted attack and threats, suffered significant weight loss, stress, insomnia, depression, and fear as a result, and the facility was operating at 150% capacity were qualitatively different conditions than those of pre-sentence detainees in federal facilities operated by the Bureau of Prisons.); and *United States v. Bakeas*, 987 F.Supp. 44, 50 (D. Mass. 1997) ("a downward departure is called for when, as here, an unusual factor makes the conditions of confinement contemplated by the guidelines either impossible to impose or inappropriate").

### 6. Mr. Tillmon Was 30 Years Old When Offense Was Committed.

Mr. Tillmon was 30 years old when he committed this offense (he is now 32 years old). U.S.S.G. § 5H1.1 states that age "may be relevant" as to whether a downward departure should be granted. *See also*, *Gall v. United States*, 552 U.S. 38, 58 (2007) ("youth is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damage") and *United States v. Collington*, 461 F.3d 805 (6th Cir.2006) (in a drugs and gun case where the guidelines range was 188-235 months, a sentence of 120 months was affirmed in part because "a 120 month sentence is sufficient enough to reflect the crimes committed while allowing for the possibility that [the defendant] may reform and after his release from prison, when he is in his mid-thirties, may go on to a productive life in society")*.*

### 7. Charitable and Community Services

Mr. Tillmon deserves credit for his civic, charitable and public services which has included his volunteering as a bell-ringer for the salvation army for several Christmases and as a volunteer youth coach for 10-12 year olds for a few years in his mid-20's. Based on *Booker*, *Kimbrough* and *Gall*, civic, charitable, or public service and similar prior good works are now relevant in determining whether a variance is warranted. *See also*, *United States v. Carter*, 530 F.3d 565, 578 (7th Cir.2008) ("[t]he Guidelines are but one factor among those listed in 18 U.S.C. § 3553(a), and regardless of whether courts have previously recognized public service as a ground for departure from the Guidelines, sentencing courts are charged with considering as part of the § 3553(a) factors 'the history and characteristics of the defendant,' which would include a defendant's public service") and *United States v. Greene*, 249 F.Supp.2d 262, 264 (S.D. N.Y. 2003) (the defendant was entitled to seven-level downward departure in sentencing based on a combination of his charitable work/community service and extraordinary family circumstances).

### 8.     Loss of Sister and Father

When Mr. Tillmon was 13 years old, he suffered a childhood trauma when his sister, Tamara Nelson, suddenly died from an asthma attack when she was 18 years old. (PSIR at ¶ 72.) Mr. Tillmon is effected by this to this day. Furthermore, his father died approximately three years ago. Mr. Tillmon was extremely close to his father and this loss has also psychologically effected him. *See United States v. Collington*, 461 F.3d 805 (6th Cir. 2006) (in a drugs and gun case where the guidelines were 188 -235 months, a sentence of 120 months was affirmed in part because of "the early deaths of [defendant's] parents" where the defendant's father was murdered when he was 9 and his mother died

soon after).

### 9. Mr. Tillmon's Criminal History Is Overstated

All parties calculated Mr. Tillmon to be a Criminal History Category VI based on a score of 17 points. This criminal history determination overrrepresents the seriousness of his past criminal conduct and overstates his propensity to commit crimes. Mr. Tillmon received criminal history points for the following convictions:

| Date of Offense | Offense | Felony Level | Actual Days of Incarceration | Crim. Hist. Points |
|---|---|---|---|---|
| 02/19/2003 | Possession of Cocaine | F6 | ~ 52 days | 2 points |
| 05/11/2005 | Attempted Assault | | ~ 18 days | 1 point |
| 08/03/2007 | Interference Trespass | | ~ 18 days | 1 point |
| 08/11/2005 | Possession of oxycodone | F6 | ~ 72 days | 2 points |
| 11/20/2005 | Battery | | ~ 18 days | 1 point |
| 02/19/2008 | Disorderly Conduct | | ~ 18 days | 1 point |
| 03/07/2009 | Possession of a Weapon by Previous Offender | F6 | ~ 1 year | 3 points |
| 04/15/2010 | Possession of a Weapon by Previous Offender | F6 | ~ 1 year (concurrent) | 3 points |
| 12/06/2012 | Vehicular Homicide | F4 | 8 years (serving) | 3 points |
| 12/06/2012 | Attempted Escape | F6 | 180 days (concurrent) | 0 points |
| | | | | 17 points |

### a. Types of Prior Offenses

Of Mr. Tillmon's prior convictions, 5 of his 6 felony convictions amount to 10 of his 17 criminal history points but are for Class 6 felonies, the lowest felony level in Colorado and which now has a presumptive sentencing range of 12 to 18 months. 2 of these Class 6 convictions gave him 6 points, the same number of points other defendants receive for higher lever, major felony convictions. This has caused an overstatement of his criminal history. These convictions certainly differ significantly and meaningfully from the active violent behavior often associated with defendants in Criminal History Category VI. Mr. Tillmon's criminal history is not a history of violent behavior. This Court may consider this as a factor in assessing Mr. Tillmon's criminal history. *See United States v. McGhee*, 512 F.3d 1050 (8th Cir. 2008) (where the defendant was convicted of distribution of crack cocaine with a guidelines range of 235-293 months, it was not an abuse of discretion for the district court to sentence the defendant to 132 months in part because the defendant's criminal history "differed meaningfully from the active violent behavior often associated with defendants in criminal history category VI") and *United States v. Gregor*, 339 F.3d 666, 668-70 (8th Cir.2003) (in departing downward because the career offender designation overrepresents criminal history because burglary did not involve breaking and entering, a district court may shift left on the criminal history category and move downward on the offense level).

### b. Types of Present Offenses

Mr. Tillmon's offenses in this case involved the sales of relatively small amounts of drugs (2 transactions of cocaine totaling 31.5 grams, 2 transactions of MDMA totaling 5.5

grams and a methamphetamine transaction of 27.56 grams). These were drug transactions committed by a drug addict. They did not involve a gun and were non-violent offenses. They certainly were serious offenses but were not of a great scale.

### c. Prison Time Is More Significant for Mr. Tillmon Since He Has Not Previously Been Incarcerated for a Lengthy Period of Time.

Mr. Tillmon is presently serving an 8 year Colorado sentence for vehicular homicide. He has already served approximately 2 years and 2 months of that sentence and is likely to see the Colorado Parole Board in late 2016 or early 2017. This is the first time Mr. Tillmon has been incarcerated for a lengthy period of time; the longest period Mr. Tillmon previously served was a 2-year Colorado Department of Corrections sentence for which he served only approximately 12 months. The prison time that he is presently serving in the Colorado case and which he will be serving in this case will be more significant to him than it would have been had he been previously incarcerated for a more significant period of time. This may be considered by this Court and, based on this, a below-guidelines sentence is more just than a longer sentence. *See United States v. Collington*, 461 F.3d 805 (6th Cir. 2006) (in a drug and gun case where the guidelines range was 188-235 months, a sentence of 120 months was affirmed in part because "the district court found that, despite [the defendant's] criminal history being at a IV, '[the defendant] has never been in custody for any substantial period of time,' having only been imprisoned for seven months before this crime") and *United States v. Santoya*, 493 F.Supp.2d 1075 (E.D. Wis. 2007) (in a distribution of cocaine case where the defendant was a career offender, a below-guidelines sentence was appropriate because a lesser period of imprisonment was

-12-

necessary to deter a defendant who had not previously been subject to lengthy incarceration and where the "imposition of guideline sentence ... would have resulted in a defendant who had not previously spent more than about a year in prison receiving a sentence more than fifteen times that long ... an increase of such a magnitude was greater than necessary").

### d.     Conclusion

Considering the above-listed factors regarding his prior offenses, Mr. Tillmon should be given a downward variance from a sentence based on a Criminal History VI.

## B.     The Nature and Circumstances of Mr. Tillmon's Offenses

### 1.     Role in the Conspiracy

Mr. Tillmon was a member of this conspiracy for only a short time from October, 2013 until January, 2014. The Court can also consider this as a factor in sentencing Mr. Tillmon. *See United States v. Adelson*, 441 F.Supp.2d 506 (S.D.N.Y. 2006) (in a securities fraud case, a below guidelines sentence was imposed in part because the defendant "did not participate in the fraudulent conspiracy until its final months").

### 2.     Mr. Tillmon's Colorado State Sentence

The delays that have incurred in this case due to its complexity and due to Mr. Tillomon not being writted from state custody for 6 months deprived him of the chance for a fully concurrent sentence. Mr. Tillmon requests that he be given a sentence concurrent to his Colorado state sentence and that his federal sentence be fashioned in a manner so as to give him credit for all of the time he has served since he has been writted into federal custody on December 5, 2014. *See United States v. Sanchez-Rodriguez*, 161 F.3d 556

(9th Cir. 1998) (*en banc*) (the district court acted within its discretion when it departed downward in an illegal reentry case by nine levels and imposed a 30-month term in part because the delay in bringing the federal charge prejudiced the defendant's opportunity to obtain a sentence concurrent to the state sentence he was already serving and in part because the defendant stipulated to deportation); *Ruggiano v. Reish*, 307 F.3d 121 (3rd Cir. 2002) (a district court has the authority under U.S.S.G. § 5G1.3 to adjust a federal sentence for time served (14 months) on a state sentence, in a way that is binding on the Bureau of Prisons – whether called a "departure" a "credit" or an "adjustment;" while the BOP has the sole authority to grant sentencing credits for time served in detention for the offense for which the defendant is ultimately sentenced, under § 5G1.3(c), an adjustment or departure for time served on a preexisting, unrelated state sentence is within the exclusive power of the sentencing court); and *United States v. Blackwell*, 49 F.3d 1232, 1241-42 (7th Cir.1995) (authorizing a downward departure to achieve the effect of concurrency with a fully discharged sentence).

### C. The Need for the Sentence Imposed: to Reflect the Seriousness of the Offense, to Promote Respect for the Law and to Provide Just Punishment, Afford Adequate Deterrence and Protect the Public

#### 1. To Reflect the Seriousness of the Offense and to Promote Respect for the Law

A 36 month sentence would adequately reflect the seriousness of the offense and promote respect for the law. This Court should consider a lesser prison sentence that accounts for Mr. Tillmon's offense conduct here and for Mr. Tillmon as an individual. As Attorney General Eric Holder stated in his April 5, 2013 speech delivered at the 15th Annual National Action Network Convention,

> Too many people go to too many prisons for far too long for no good law enforcement reason. It is time to ask ourselves some fundamental questions about our criminal justice system. Statutes passed by legislatures that mandate sentences, irrespective of the unique facts of an individual case, too often bear no relation to the conduct at issue, breed disrespect for the system, and are ultimately counterproductive. It is time to examine our systems and determine what truly works. We need to ensure that incarceration is used to punish, to rehabilitate, and to deter – and not simply to warehouse and forget.

Additionally, after his release, Mr. Tillmon will then serve a number of years on supervised release. A sentence of supervised release does not minimize the seriousness of the offense. As the Supreme Court noted in *Gall*, "[o]ffenders on probation [supervised release in Mr. Tillmon's case] are nonetheless subject to several standard conditions that substantially restrict their liberty," *Gall*, 128. S.Ct. at 595, *citing*, *United States v. Knights*, 534 U.S.112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497. Supervised release, like probation, is not a free ride:

> Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. U.S.S.G. § 5B1.3. Most probationers are also subject to individual "special conditions" imposed by the court. Gall, for instance, may not patronize any establishment that derives more than 50% of its revenue from the sale of alcohol, and must submit to random drug tests as directed by his probation officer.

*Gall*, 552 U.S. at 48, 128 S.Ct. at 595-596. If the Court believes that additional conditions are appropriate and or necessary, they can be addressed through the imposition of additional special conditions of supervised release. The seriousness of this offense, when viewed in the full context of the history and characteristics of Mr. Tillmon, is sufficiently addressed with a 36 month sentence and a lengthy supervised release. Such a sentence

does not minimize the seriousness of the offense.

### 2. To Provide Adequate Punishment

A 36 month sentence plus 4 years of supervised release is equal or greater than necessary to achieve just punishment in this case.

### 3. To Afford Adequate Deterrence

As required by 18 U.S.C. § 3553(a)(2)(B), a 36 month sentence for Mr. Tillmon will be sufficient to deter him and others from committing similar crimes. Mr. Tillmon is 32 years old and realizes that any sentence he receives from the Court in this case may place him in custody or on supervised release until he is approximately 40 years of age. The time he has already served (longer than any previous period of time served) plus the time he still has yet to serve is sufficient to act as a deterrence to Mr. Tillmon. The Supreme Court has upheld a district court's decision to reduce a guidelines sentence to the mandatory minimum term of 120 months based on § 3553(a)'s "overarching instruction to impose a sentence sufficient, but not greater than necessary to accomplish the sentencing goals advanced in § 3553(a)(2)." *Kimbrough v. United States*, 552 U.S. 85, 111, 128 S.Ct. 558, 575, 169 L.Ed.2d 481 (2007).

With regard to general deterrence, the proposed sentence would be sufficient to deter the public from committing a similar crime. The proposed sentence is proportionally in line with the sentences in similar cases. When considering the length of the proposed sentence, it is sufficient to deter those similarly situated.

### 4. To Protect the Public

A 36 month sentence is sufficient to protect the public as required by 18 U.S.C. §

3553(a)(2)(C).

### D. The Cost of Lengthy Incarceration to Taxpayers

Because a sentence of greater than a 36 month sentence in not necessary in Mr. Tillmon's case, the Court should consider the cost of incarceration of Mr. Tillmon in determining his appropriate sentence. Probation has estimated that it will cost taxpayers approximately $30,621 per year to incarcerate Mr. Tillmon. (Doc. 686 at 21.) Any sentence beyond what is called for by the § 3553(a) factors will be a waste of taxpayers' money. This is a legitimate consideration in sentencing. *See United States v. Angelos*, 345 F.Supp.2d 1227 (D. Utah 2004) ("[g]iven that holding a person in federal prison costs about $23,000 per year, the 61-year-sentence the court is being asked to impose in this case will cost the taxpayers (even assuming [the defendant] receives good time credit and serves 'only' 55 years) about $1,265,000. Spending more than a million dollars to incarcerate [the defendant] will prevent future crimes by him and may well deter some others from being involved with drugs and guns. But that money could also be spent on other law enforcement or social programs that in all likelihood would produce greater reductions in crime and victimization"); and *United States v. Chavez*, 230 F.3d 1089, 1092 (8th Cir. 2000) (Bright, J., concurring) ("[the defendant] has a life expectancy of seventy-eight years. That means that [the defendant] will probably spend thirty-five years in federal prison. It costs the United States government and its taxpayers approximately $22,000 per year to keep a federal offender in prison. Therefore, it will cost the taxpayers $836,000 for his incarceration. This sentence is a waste of time, money, and more importantly, a man's life. These unwise Sentencing Guidelines put nonviolent offenders in prison for years, they ruin the lives of the prisoners, their families, and they also hurt our economy and our

communities by draining billions of dollars from the taxpayers and keeping potentially productive members of society locked up. The opportunity costs imposed by the Sentencing Guidelines are staggering")[2]

### IV.     Mr. Tillmon's Requested Sentence

The Court should determine Mr. Tillmon's sentence based on the totality of his circumstances. *See United States v. Nava-Sotelo*, 232 F.Supp.2d 1269 (D. N.M. 2002) (the defendant, convicted of assault and kidnapping, obtained a six-level downward departure based on a "combination of exceptional mitigating factors, including family circumstances, incomplete duress, lesser harms, community support, and civic, charitable and public support"). In considering the totality of the circumstances of Mr. Tillmon's history, his characteristics and the circumstances presented in his case, a sentence of 36 months plus 4 years supervised release is sufficient to promote respect for the law, punish Mr. Tillmon, deter Mr. Tillmon from re-offending, deter the public and equally sufficient to protect the public. The seriousness of this offense, when viewed in the full context of the history and characteristics of the Mr. Tillmon, is sufficiently addressed with a 36 month sentence plus 4 years of supervised release.

DATED this 3rd day of December, 2015.

Respectfully submitted,

*s/Clifford J. Barnard*

Clifford J. Barnard

---

[2] *But see, United States v. Tapia-Romero*, 523 F.3d 1125 (9th Cir. 2008) ("§ 3553(a) neither requires, nor allows, a court to consider the cost of imprisonment in determining the appropriate length of a defendant's term of imprisonment") and *United States v. Pepper*, 570 F.3d 958, 965-966 (8th Cir. 2009) (same).

Attorney for Defendant Tillmon
4450 Arapahoe Avenue, Suite 100
Boulder, Colorado 80303
Telephone: (303) 546-7947
Facsimile: (303) 444-6349
Email:  cliffbarnard@earthlink.net

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of December, 2015, I electronically filed the foregoing *Defendant Tillmon's Motion for Variant Sentence* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

| | |
|---|---|
| A.U.S.A. Zachary Phillips | *zachary.phillips@usdoj.gov* |
| A.U.S.A. Wayne Campbell | *wayne.campbell@usdoj.gov* |
| Mitchell Baker | *mitchbaker@estreet.com* |
| James Castle | *Jcastlelaw@aol.com* |
| Leslee Barnicle | *barniclelaw@aol.com* |
| Philip W. Ogden | *phil@coloradospringslaw.net* |
| Andres Guevara | *andres@guevaracoloradolaw.com* |
| Forrest W. Lewis | *flewispc@aol.com* |
| Lynn Anne Pierce | *lpierce.blp@comcast.net* |
| David L. Owern, Jr. | *davidowen@lodopc.com* |
| Adam Michael Tucker | *adamtuckerlaw@gmail.com* |
| Robert Berger | *robberger@qwestoffice.net* |
| Elisa Julie Moran | *Elisaatty@aol.com* |
| John Mosby | *john_mosby@msn.com* |
| Peter Menges | *pmenges@mengeslaw.com* |
| Patrick J. Burke | *Patrick-J-Burke@msn.com* |
| Thomas Ward | *tward@wardlawdenver.com* |

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

| | |
|---|---|
| James Tillmon | *Via U.S. mail* |

s/Clifford J. Barnard

                                                              _____
Clifford J. Barnard
Attorney for Defendant Tillmon