IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

District Court No. 14-cr-00231-WJM-4

UNITED STATES OF AMERICA,

       Plaintiff,

v.

1. RICKY GARRISON,
4. **FRANCISCO AGUILAR**,
9. ARCHIE POOLE. and
15. ROBERT PAINTER,

       Defendants.

---

### FRANCISCO AGUILAR'S MOTION TO SUPRESS INTERCEPTED WIRE COMMUNICATIONS

---

NOW COMES, the defendant, Francisco Aguilar, by and through counsel, Scott Poland of Poland & Wheeler, P.C., and moves this Honorable Court for an Order suppressing intercepted wire communications and as grounds for this Motion, states as follows:[1]

### INTRODUCTION

Mr. Aguilar is one of sixteen (16) defendants in a 71 count indictment. Mr. Aguilar is charged in Count One with conspiracy to distribute and possess with the intent to distribute, one or more of the following controlled substances: (1) more than 500 grams but less than 5 kilograms of a mixture or substance containing a detectable amount of cocaine, a

---

[1] The wiretap documents were submitted to the Court on December 3, 2015 (Doc. No. 701). This motion cites to those documents in the abbreviated form of "WT" followed by the Bates number.

1

Schedule II Controlled Substance; (2) more than 28 grams but less than 280 grams of a mixture or substance which contains cocaine base; (3) less than 100 grams of a mixture or substance containing a detectable amount of heroin, a Schedule I Controlled Substance; (4) less than 50 grams of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II Controlled Substance. All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B)(ii)(II), 841(b)(1)(B)(iii), 841(b)(1)(C), and 846. Mr. Aguilar is also charged in Counts 20 and 36, with Possession with Intent to Distribute and with two telephone Counts, 37 and 38. Finally, he was charged in the Forfeiture Count. The government's case against Mr. Aguilar is based largely on audio recordings of telephone conversations intercepted by government wiretaps. Thirteen wiretap orders were obtained by the prosecution in this case. The first, Target Telephone 1, (TT1), was directed at a phone used by Francisco Ramirez. Information obtained from TT1 largely served as a basis for obtaining subsequent wiretap orders, TT2, TT3, etc. These wiretaps were authorized by court orders. This motion focuses on the legality of TT1 since all subsequent orders derived from it were thus tainted by it. Acting pursuant to these court orders, the government intercepted some telephone conversations involving Mr. Aguilar. For the reasons discussed below, the contents of all telephone conversations involving Mr. Aguilar and the evidence derived therefrom should be suppressed.

## ARGUMENT

**A. Standing**

  1.  Under the wiretap statute, any 'aggrieved person" has standing to move to suppress evidence derived from electronic surveillance. *See* 18 U.S.C. § 2518(10)(a). Section 2510(11) defines an "aggrieved person" as "a person who was a party to any intercepted wire or

2

oral communication or a person against whom the interception was directed.  *See* 18 U.S.C. § 2510(11).  Since Mr. Aguilar was alleged to be a party to certain communications intercepted by wiretap, he qualifies as an "aggrieved person" who has standing to challenge the October 23, 2013, order and any other orders which authorized his telephone being tapped or his conversations being intercepted.

## LEGAL STANDARDS

4.     Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 - 2522 (1994 Cumm. Supp.) establishes a three step process for obtaining authorization to intercept telephone communications.  Strict compliance with these procedural steps is a prerequisite to the issuance of a valid wiretap order.  *United States v. Giordano*, 416 U.S. 505 (1974).  First, an authorized law enforcement official must obtain approval from the United States Attorney General or a specifically designated assistant to apply for a wiretap from a Federal District Court Judge.  *See* 18 U.S.C. § 2516(1).  Second, once executive approval is obtained, the officer must present to the judge a written application for the wiretap.  *See* 18 U.S.C. § 2518(1).  Third, the judge must make certain findings and may issue an ex parte order containing specified provisions.  *See* 18 U.S.C. § 2518(3).

5.     The wiretap statute provides for the suppression of all evidence derived from a wiretap if "the communication was unlawfully intercepted" or "the order of authorization or approval under which it was intercepted is insufficient on its face," or "the interception was not made in conformity with the order of authorization or approval."  *See* 18 U.S.C. § 2518(10)(a).  The federal wiretap statute requires the government's application include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."  *See* 18 U.S.C.

§ 2518(1)(c).  Further, any judge issuing the wiretap order must make a finding that "[n]ormal investigative procedures have been tried and have failed or reasonably appear to be either unlikely to succeed if tried or are too dangerous."  *See* 18 U.S.C. § 2518(3)(c).

6. Accordingly, before a wiretap is authorized, the government must demonstrate, and the issuing judge must conclude, that normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or appear to be too dangerous.

7. The purpose of these two requirements is to ensure the intrusive device of wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime.  *United States v. Castillo-Garcia*, 117 F.3d 1179, 1185 (10th Cir. 1997).

[2] 8. Traditional investigative techniques are defined as "(1) standard visual and aural surveillance; (2) questioning and interrogation of witnesses or participants (including the use of grand juries and the grant of immunity, if necessary); (3) the use of search warrants; and (4) infiltration of conspiratorial groups by undercover agents or informants."  *United States v. Ramirez-Encarnacion*, 291 F.3d 1219, 1222, n.2 (10th Cir. 2002).  Pen registers and tape-and-trace devices are also traditional investigative techniques recognized in this circuit.  *Id*.  The government is required to demonstrate necessity as to the primary targets of wiretaps.  *United States v. Mitchell*, 274 F.3d 1307, 1312 (10th Cir. 2001).  In addition, the 10th Circuit has held " [t]hat the so-called 'necessity requirement', as set forth in 18 U.S.C. §§ 2518(1)(c), (3)(c) is separate and distinct from the 'probable cause' requirement set forth in 18 U.S.C. §§ (3)(a), (b) . . .".  *Mitchell*, 274 F.3d at 1309.

## LACK OF PROBABLE CAUSE

9. A wiretap order may only be issued if there is probable cause to believe that an individual is committing, or is about to commit, an offense enumerated in 18 U.S.C. § 2516, and there is probable cause to believe that the interception requested will obtain particular communications regarding such offense, and there is probable cause to believe that the particular telephone is being used in connection with the offense. 18 U.S.C. § 2518(3). These standards have not been met in the present case for the following reasons:

   a. The applications and supporting affidavits falsely assert that the target of the wiretaps was the Gangster Disciples street gang. In reality, the target was a lone member or former member of the aforementioned gang, believed to have been involved in the murder of a cooperating witness in an unrelated state case. There is no information contained within the four corners of any documents submitted to the issuing Judge to suggest any of the other named interceptees were Gangster Disciple gang members. This information did not constitute probable cause but was in fact a fraud upon the Court. There is no evidence whatsoever that Francisco Aguilar had been or was currently a member of this gang

   b. For these and other reasons, the affidavit failed to make the statutory showing of probable cause. Whether this evidence is sufficient to warrant a "Franks" hearing will be for the Court to decide. It should be noted that "Franks" applies not only to false statements made knowingly, intentionally or with a reckless disregard for the truth, but to material omissions as well. Merton, 274 F. Supp. 2d at 1166.

## LACK OF NECESSITY

10. In addition, a wiretap may be authorized only if normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed or be too

dangerous. 18 U.S.C. § 2518(3)(c). The government must explain its attempts to use other procedures and the likelihood of success with particularity; "generalities, or statements in the conclusory language of the statute, are insufficient to support a wiretap application. The statements must be factual in nature and must specifically relate to the individuals targeted by the wiretap." *United States v. Castillo-Garcia*, 117 F.3d 1179, 1188 (10th Cir. 1997). Moreover, where, as here, previous wiretap orders have been obtained, the government must pause to consider whether, in light of information obtained from previous wiretaps, other investigative techniques may offer success. *Id*. at 1196. This necessity requirement was not met here for the following reasons:

      a.    As stated in Defendant's Motion for Specific Discovery, (Doc. No. 611 at 6 and 7.)," [O]n October 23, 2013 the first wiretap was approved on a phone belonging to Francisco Ramirez. Prior to October 23, 2013 law enforcement had a confidential source, CHS-1, living with the target of the tap, seemingly keeping officers abreast of Mr. Ramirez's dealings; they had an undercover officer introduced by CHS-1 buying directly from Mr. Ramirez's source; and, importantly, they had strong evidence from their own investigation and from Operation Red Dawn that Mr. Ramirez was a low level dealer. They also had a confidential source directly in contact with Garrison. They had no information that Mr. Ramirez was connected with the Gangster Disciples, in fact they believed he was a member of Duke Surenos. They know with certainty that neither Mr. Ramirez nor Mr. Garrison was in any position to be a significant source of supply to any street gang. In short, the government's use of traditional or normal investigative techniques was going extremely well with respect to their investigation of Mr. Ramirez's low level drug dealing, his source of supply's drug dealing and Garrison's low level drug dealing.

Strong cases had been developed without the use of Title III". These facts are undisputable and clearly demonstrate this investigation was proceeding quite well without the use of Title III…

    b.  In other respects, the affidavit fails to state particularized reasons for the projected failure of other investigative techniques. The fact of the matter is that the methods used by law enforcement were quite effective in accomplishing the stated goals of this investigation. Whether they effective in accomplishing the hidden goals remains to be seen.

  WHEREFORE, defendant requests that all fruits of the wiretap order be suppressed. Respectfully submitted this 13th day of May, 2016.

                s/ Scott Poland
                Scott Poland
                Poland and Wheeler, P.C
                215 South Wadsworth Blvd., #500
                Lakewood, Colorado 80226
                Telephone: (303) 969-8300
                Fax: (303) 986-4857
                E-Mail: scottpoland@qwestoffice.net

                ATTORNEY FOR DEFENDANT
                FRANCISCO AGUILAR

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 13, 2016, I electronically filed the foregoing Motion to Suppress Intercepted Wire Communications with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case.

      _s/Scott Poland_____
      Scott Poland