IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 14-cr-00231-WJM

UNITED STATES OF AMERICA,

       Plaintiff,

v.

1. RICKY GARRISON,

       Defendant.
_____

**GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION FOR RULE 17(C)
SUBPOENAS IN FORMA PAUPERIS (ECF No. 1087)**
_____

THE UNITED STATES OF AMERICA, by Acting United States Attorney Robert

C. Troyer, through Assistant United States Attorney Bryan David Fields, respectfully

requests that the Court deny the defendant's Motion for Rule 17(c) Subpoenas in Forma

Pauperis, ECF No. 1087, for the reasons set forth below.

### INTRODUCTION

The defendant's proposed subpoenas would circumvent the normal discovery

rules and, on that ground alone, should not be issued.   The proposed subpoenas also

fail to meet the minimum requirements imposed by the judiciary to protect against the

improper use of subpoenas.   The defendant has not explained (though he does

speculate) how the materials sought — essentially everything related to a separate

sexual harassment civil action — might help the Court or a jury determine whether or

not he is guilty of serious crimes arising out of a drug conspiracy.   More broadly, the

1

defendant should not be allowed to interfere with a pending civil matter and then use the materials gathered in that case to turn what should be a relatively simple criminal trial into a procedural nesting doll comprising complicated mini-trials against the government's witnesses.

### BACKGROUND

On August 24, 2016 the government filed a Notice to Court and Defendants describing a civil suit filed in the United States District Court for the District of Colorado. Govt.'s Notice to Ct. and Defs., ECF No. 1066 (referencing *Marks v. Comey*, 16-cv-02106-WYD-MEH (the "Civil Suit")).   The complaint in that case alleges that members of the Metro Gang Task Force ("MGTF") sexually harassed and retaliated against the plaintiff in violation of Title VII of the Civil Rights Act of 1964.   The notice explained that the government is mindful of its obligations under *Brady* and *Giglio* and that it would actively work with the defendant to provide any relevant material through the normal discovery channels.   *Id.* at 3.

The defendant does not want to use the normal discovery channels.   On September 7, 2016, he filed a motion asking the Court to issue subpoenas to (1) the Aurora Police Department ("APD"), (2) the Federal Bureau of Investigation ("FBI"), (3) the Equal Employment Opportunity Commission ("EEOC"), (4) the lawyers for the plaintiff in the Civil Suit, and (5) the plaintiff in the civil suit.   The first two subpoenas (collectively the "MGTF Subpoenas") seek the personnel records of active and former members of the MGTF.   They also seek any investigative files by the FBI or the APD

2

created as a result of the plaintiff's complaint.[1]   The third subpoena — the "EEOC

Subpoena" — essentially seeks a copy of the EEOC's investigative file.[2]   The fourth

and fifth subpoenas (collectively, the "Plaintiff Subpoenas") ask for the same documents

covered by all of the other subpoenas — records related to the plaintiff's complaint.[3]

The only difference is that these subpoenas seek records directly from the plaintiff's

files, rather than indirectly from the files of other agencies to whom she had previously

corresponded.

---

[1] Each subpoena seeks the following, as they relate to a list of law enforcement officers (emphasis added):

> Personnel records, including, *without limitation*, *any and all* records of work history and training, complaints against the individual officer, disciplinary actions, both pending and already adjudicated, notes, records, and reports, and commendations.

The MGTF subpoenas also seek, respectively from FBI and APD, "a copy of the report, conclusions, records, statements, and *any other investigative material*, related to the October 2014 complaint made by former FBI Agent Danielle Marks."

[2] The EEOC subpoena asks for the following (emphasis added):

> A copy of the complaint, report, records, statements, and *any other investigative material* related to the October 2014 complaint made by former FBI Agent Danielle Marks to the Denver Office of the Equal Employment Opportunity Commission.

[3] The Plaintiff Subpoenas ask for "*all* non-privileged documents" in the plaintiff's legal file as well as the following (emphasis added):

> A copy of the report, conclusions, records, statements and *any other investigative material* related to the October 2014 complaint made by former FBI agent Marks to the FBI's Office of Professional Relations and the Aurora Police Department, and a copy of the complaint, report, records, statements, and any other investigative material, related to the October 2014 complaint made by former FB Agent Marks to the Denver Office of the Equal Employment Opportunity Commission.

3

At a conference on September 9, 2016 the Court granted a motion to continue the trial, made findings of fact showing the necessity of an exclusion of time under the Speedy Trial Act, and ordered the government to respond to the defendant's motion for subpoenas on or before September 16, 2016.   ECF Nos. 1094, 1095.   This is that response.

## ARGUMENT

The defendant's motion should be denied for two reasons.   First, the motion improperly circumvents the orderly discovery process outlined by Rule 16, the Jencks Act,[4] and cases in the *Brady* and *Giglio* line of precedent.   Second, the defendant has not cleared the "three hurdles" of relevancy, admissibility, and specificity that must be navigated before the Court can grant his motion.   *See United States v. Nixon*, 418 U.S. 683, 700 (1974).

A decision to deny the defendant's motion would be given deference and overturned on appeal only for an abuse of discretion.   *United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002).

---

[4] The plaint text of the Jencks Act bars the MGTF and EEOC subpoenas:

> In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective witness (other than the defendant) shall be the subject of *subpena*, [sic] discovery, or inspection until said witness has testified on direct examination in the trial of the case.

18 U.S.C. § 3500(a) (emphasis added).

4

I.      **The Defendant's Motion Improperly Circumvents the Rules Governing Criminal Discovery**

The defendant correctly acknowledges that the government "has begun the task of attempting to determine whether or not any of the documents related to [the Civil Case] contain information that falls under either [*Brady*] or [*Giglio*]."   Mot. For Rule 17(c) Subpoena in Forma Pauperis 3, ECF No. 1087.   To his credit, the defendant also candidly acknowledges that the purpose of the subpoenas is to "speed the process and flow of information sought."   *Id.*   Unfortunately, this stated purpose — an effort to hijack the discovery process through the use of Rule 17 — is precisely the sort of purpose that the Supreme Court has found to be illegitimate.

"Rule 16 deals with the documents and other materials that are in the possession of the Government and provides how they may be made available to the defendant for his information."   *Bowman Dairy Co. v. United States*, 341 U.S. 214, 219 (1951); *see also United States v. Cherry*, 876 F. Supp. 547, 549 (S.D.N.Y. 1995) (describing Rule 16 as one of the checks and balances that govern discovery in criminal cases).   By contrast, the purpose of Rule 17(c) is to allow a party to obtain trial exhibits prior to trial. *See Bowman*, 341 U.S. at 219, 221 (the item must be admissible as evidence to be obtained by a Rule 17(c) subpoena); *see also United States v. Murray*, 297 F.2d 812, 821 (2d Cir. 1961) ("Rule 17(c) is a device solely for the obtaining of evidence for the use of the moving party, permitting him to examine the material obtained before trial only where . . . it is necessary that he do so in order to make use of the material as evidence.").

"Rule 17(c) was not intended to provide an additional means of discovery."

5

*United States v. Abdush*-Shakur, 465 F.3d 458, 467 (10th Cir. 2006) (citing *Bowman*,

341 U.S. at 220 (noting that it was not intended that Rule 16 give a limited right of

discovery only to have Rule 17 give a right to discovery in the broadest terms)); *see*

*also Nixon*, 418 U.S. at 698 (reiterating that *Bowman* recognized that a Rule 17(c)

subpoena was not intended to provide a means of discovery in criminal cases); *United*

*States v. Medley*, 130 F. App'x 248, *1 (10th Cir. 2005) (unpublished) (affirming order

quashing Rule 17(c) subpoena in part because it was an improper attempt to

circumvent the rules of discovery under Rule 16).

The defendant's motion is a clear attempt to circumvent Rule 16 and the normal

discovery process.   The best evidence of this is the fact that the first request in the

MGTF Subpoenas is a request for "personnel records":   the same request that the

Court denied almost a year ago.   *See* Order on Pending Mots. 19-21, ECF. No. 706

(concluding that there is no constitutional right to law enforcement personnel files and

noting the Court's expectation that the government will continue to comply with its

established discovery obligations).

Nothing legally relevant has changed since the Court denied the defendant's first

request for personnel files.   The government, fully aware of its responsibilities,

continues to diligently evaluate, assess, and comply with its *Brady* and *Giglio*

obligations.   The filing of the Civil Suit does not mean the defendant gets to jettison an

orderly discovery process in favor of a free-wheeling and ad-hoc system of subpoenas

to government entities (or to those providing information to government entities).   *See*

*United States v. Hughes*, No. 90-2114, 1991 WL 59383, at *1 (10th Cir. 1991)

6

(unpublished) (citing *Muse* and concluding that defendant's request for subpoena duces tecum to obtain evidence allegedly impeaching officer was a "fishing expedition" in light of government's assurance that he would receive relevant information within the scope of his request for *Brady* material); *United States v.* Newby, 251 F.R.D.188, 190 (E.D.N.C. 2008) (denying defendant's motion for Rule 17 subpoenas to police department because "the government already has an obligation to turn over impeachment evidence which would include records of any disciplinary action for its witnesses"); *United States v. Joyce*, No. 07-31 Erie, 2008 WL 2512657, *5 (W.D. Pa. 2008) (using the word "troubling" to describe the defendant's use of Rule 17 subpoenas to circumvent Rule 16 and the Jencks act to obtain witness statements.); *cf. United States v. Muse*, 708 F.2d 513 (10th Cir. 1983) (describing defendant's discovery request for access to personnel files as "overly broad" and "superfluous" in light of district court's underlying order that government turn over any material favorable or useful to defense).

## II.  The Requested Subpoenas Do Not Meet Rule 17(c)'s Requirements for the Pre-Trial Production of Documents

Before the Court can issue a subpoena under Rule 17(c), the defendant must first overcome the burden of showing that the subpoenas seek material that is (1) relevant, (2) admissible, and (3) specific.   *Morris*, 287 F.3d at 991 (citing *Nixon*, 418 U.S. at 700).[5]   The motion does not satisfy any of these requirements.

---

[5] The defendant says that the Court should use the standard articulated in *United States v. Nachamie*, 91 F. Supp. 2d, 552, 563 (S.D.N.Y. 2000), but he doesn't explain why.   The Court should use the *Nixon* standard for several reasons.   First, as far as the government can determine, no federal Court of Appeals has even cited, let

### A.  The Requested Materials Are Not Relevant

The defendant uses words like "credibility" and refers to cases such as *Giglio*, but he does not articulate how information about a separate sexual harassment case bears on credibility or how it might be covered by *Giglio*.   Allegations of sexual harassment do not make the wiretap intercepts set forth in the government's *James* log, ECF No. 1038, any more or less likely to be true, nor do they make GPS surveillance, static surveillance, or the testimony of any cooperating defendants more or less true. Perhaps most pertinent to the motion, the defendant has not explained how allegations of sexual harassment make the officers' testimony more or less true.   Indeed, as the Court noted at the September 9th hearing, if the documents ultimately did support the allegation that the agents weren't performing their duties, that would have inured to defendant's benefit—*i.e.*, they may not have uncovered additional information that could be used as evidence against him.

The defendant has cited no case for the proposition that it is proper to ask witnesses questions about potentially inflammatory allegations — and at this point, they

---

alone analyzed or applied, the *Nachamie* court's standard.   *See United States v. Al-Amin*, 1:12-cr-50, 2013 WL 3865079, at *8 (E.D. Tenn. July 25, 2013) (pointing out that only a "few" district courts have applied a lower standard and further remarking that the lower standard's "application has very limited support and is a distinct minority view"). Second, on the few recent occasions where the Tenth Circuit has considered issues arising from the issuance of Rule 17 subpoenas, it has used the *Nixon* standard.   *See, e.g., Abdush-Shakur*, 465 F.3d at 467; *Morris*, 287 F.3d at 991.   Finally, even if the *Nachamie* premise is sound — the premise that the *Nixon* standard does not apply to third-party subpoenas — the requested subpoenas should not properly be construed as subpoenas to third parties:   With one exception — the request to the Civil Suit plaintiff's attorneys for their legal file— all of the subpoenas seek records from the government or that were allegedly provided to the government by others.

are nothing more than allegations — of sexual harassment under the guise of "impeachment."[6]   To the contrary, the defendant's implicit desire to question the government's witnesses about the allegations

> opens a veritable Pandora's box of irresponsible gossip, innuendo, and smear. In the frontier phase of our law's development . . . calling the rivals and enemies of a witness to impeach him by testifying that his reputation for veracity was so bad that he was unworthy of belief of his oath . . . were favorite and frequent ways of converting an individual litigation into a community contest and a trial into a spectacle.

*Michelson v. United States*, 335 U.S. 469, 480 (1948).

The upcoming trial does not need to devolve into a workplace drama.   The Court has wide discretion to impose "reasonable limits on cross-examination based on concerns about . . . harassment, prejudice, confusion of the issues . . . or interrogation that is repetitive or only marginally relevant."   *Delaware v. Arsdall*, 475 U.S. 673, 679 (1986).   This is especially true when the questions are accusatory.   "To authorize such cross examination the general rule is that the questioner must be in possession of some facts which support a genuine belief that the witness committed the offense or the degrading act to which the questioning relates."   *United States v. Fowler*, 465 F.2d 664,

---

[6] *Denver Policemen's Protective Ass'n v. Lichtenstein*, 660 F.2d 432, 436 (10th Cir. 1991), is off point.   In that case, the state trial judge, reviewing personnel files *in camera*, found *Brady* material.   *Id.* at 434.   The issue was that, despite the existence of *Brady* material, the police union did not want to turn over the file.   *Id.*   The union asserted various purported privileges protecting the file. The Tenth Circuit rejected each of them.   This is not a similar case.   No *Brady* or *Giglio* information has yet been found in the requested materials (though the government is diligently looking).   *Denver Policemen's* is a case about privileges.   It says very little about the standard for issuing subpoenas and even less about whether a defendant can subpoena entire personnel files by speculating about the *Brady* or *Giglio* material he thinks *might* be there.

667 (D.D.C. 1972); *see United States v. Ruiz-Castro*, 92 F.3d 1519, 1529 (10th Cir. 1996) ("[T]he basis for impeachment cannot be speculation and innuendo with no evidentiary foundation.").[7]

### 2. The Requested Materials Are Not Admissible

The relevance concerns described above are amplified by the otherwise inadmissible nature of the requested materials. "Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." *Nixon*, 418 U.S. at 701-02. As explained above, to the extent the "impeachment" evidence sought by the defendant is related to accusations of sexual harassment untethered to the possibility that government witness will testify untruthfully about matters seen during surveillance, listened to on a wiretap, or otherwise observed during the investigation, the evidence is irrelevant and therefore inadmissible. Fed. R. Evid. 402.

Separate and apart from nebulous and entirely speculative impeachment information that might be gathered from the subpoenaed materials, the defendant has not explained how they might be admissible. Indeed, he has not identified what he

---

[7] The defendant does not argue that the materials he seeks are relevant to impeach for some kind of bias on the basis of sex. But even if he did, the defendant has not shown how such a bias would be relevant in any upcoming trial. Consider the case of *United States v. Watson*, 409 F.3d 458 (D.C. Cir. 2005). In that case, the defendant sough to impeach an arresting officer based on allegations of racial bias in prior traffic stops. The district court precluded the defendant's proposed cross examination after the defendant was unable to show the officer knew of each driver's race prior to the arrest or disparate treatment by the officer. The D.C. Circuit agreed that this was proper because its "probative value was substantially outweighed by the threat of undue delay or confusion of issues." *Id.* at 464. The same would be true here: cross-examination focused on an allegation of discrimination or harassment on the basis of sex would confuse the issues relevant to determining the defendant's guilt and require a protracted inquiry into the allegations that would cause undue delay.

expects to be gathered at all (this is a separate problem of specificity, explained in more detail below).   Without that information, the defendant cannot make a valid offer of proof.   *See* Fed. R. Evid. 103(a)(2); *United States v. Adams*, 271 F.3d 1236, 1241 (10th Cir. 2001) ("In order to qualify as an adequate offer of proof, the proponent must first, describe the evidence and what it tends to show and, second, identify the grounds for admitting the evidence.").

Even if he could make an offer of proof, it is difficult to see how personnel files and materials relating to a sexual harassment investigation could actually be admitted into evidence.   Evidence of character is generally inadmissible, Fed. R. Evid. 404(a); when it is admissible, it is narrowly limited to evidence bearing on a character for truthfulness or untruthfulness, Fed. R. Evid. 608(a).   As set forth above, the defendant has not offered a coherent theory as to why the alleged harassment would impact truthfulness.   Should he do so, he would simply face another hurdle:   the *mode* by which that evidence can be presented is also tightly limited.   The rules of evidence prohibit the defendant from offering evidence of specific instances of conduct.   Fed. R. Evid. 608(b).

As if those obstacles were not enough, it is undeniable that any materials acquired as a result of the subpoena would be documents containing out-of-court statements.   As such, they will almost certainly be inadmissible hearsay.   *See Reed*, 726 F.2d at 577 (affirming district court decision quashing subpoena in part because the documents requested did not fall within exception to hearsay rule and were therefore inadmissible); *Cuthbertson*, 651 F.2d at 195 (explaining that Rule 17(c) subpoena

11

should have been quashed because it sought items of hearsay that would not be admissible at trial).

Finally, it is a fundamental rule of cross examination is that "[i]f the witness denies making a statement on a matter classified as collateral, his examiner must take his answer — that is, he may not prove the making of the statement by extrinsic evidence." *United States v. Walker*, 930 F.2d 789, 792 (10th Cir. 1991) (quotations and references omitted), *superseded on other grounds by guideline as recognized in Stinson v. United States*, 508 U.S. 36, 39 n.1 (1993).   So, for example, if the defendant intends to cross-examine witnesses about allegations arising from the Civil Suit, and the witnesses deny the allegations or some alleged inconsistency in statements arising out of the suit, the defendant would be prohibited under the rules of evidence from introducing the documents he seeks to gather through the subpoena.

Any other result would turn the trial on the indictment in this case into a frame story for an entirely separate trial, arising out of the complicated jurisprudence governing Title VII, under an entirely different burden of proof.   "Such a line of questioning not only puts hearsay statements before the jury, it injects the views of a third person into the case to contradict the witness.   This injection of extrinsic evidence . . . sets the stage for a mini-trial regarding a tangential issue of dubious probative value that is laden with potential undue prejudice."   *United States v. Davis,* 197 F.3d 662, 663 n.1 (3d Cir. 1999) (amending opinion limiting government cross-examination of defense witness).   Given this likely consequence, the court can and should make a determination that the materials requested by the subpoenas are unlikely to be

12

admissible as exhibits at trial and deny the defendant's motion.[8]

Simply put, the defendant's motion for Rule 17(c) subpoenas should be denied because the materials sought by the subpoenas are not admissible at the upcoming trial. *See United States v. Hargrove*, No. 11-cr-00326-WYD, 2013 WL 3465791, at *2 (D. Colo. July 9, 2013) (denying defendant defendant's request for subpoena of photograph, the primary purpose of which was impeachment); *United States v. Castro-Motta*, No. 11-cr-00033-REB, 2012 WL 3400828, at *3 (D. Colo. Aug. 15, 2012) (affirming and applying principles that (1) impeachment evidence is not subject to production under Rule 17(c) and (2) Rule 17(c) is only available for the production of materials that are *admissible* as evidence)

### 3. The Requested Materials Are Not Specific

Assuming for the sake of argument that the documents sought by the proposed subpoenas were relevant or admissible, the defendant's motion should still be denied for failure to clear the third *Nixon* hurdle:   specificity.   The unfortunate length of the preceding section of this memorandum is a symptom of this defect.   Without specificity, it is impossible to effectively evaluate whether the subpoena is proper or what might actually be gathered.   This is precisely why courts often refer to the wide nets cast by unspecific subpoenas as part of a "fishing expedition."   *Swingle v. United States*, 389 F.2d 220, 223 (10th Cir. 1968) (citing *Bowman*'s admonition against fishing expeditions

---

[8] The likely scenario where the witnesses simply deny the allegations in the Civil Suit makes the defendant's "impeachment" rationale all the more troubling.   After a denial, the only thing left is for the question itself to "waft an unwarranted innuendo into the jury box."   *United States v. Polsinelli*, 649 F.2d 793, 798 n.6 (10th Cir. 1981).

and affirming district court denial of a Rule 17 motion seeking bank records).

Here, we don't even know the types of fish the defendant thinks he will catch. The defendant has asked for the entire personnel records of MGTF personnel, *any* investigative material in the EEOC's files related to the Civil Suit, and *any* investigative material that the plaintiff or her attorneys might have related to the Civil Suit.   In other words, the subpoenas speak in the improperly broad language of categories and types (*i.e.*, all fish that might be swimming in the Pacific).   In order to be valid, they would need to be translated into the focused language of document titles and descriptions (*i.e.*, a shark of a particular type, length, weight, and color).

The Tenth Circuit has specifically approved the denial of similarly broad requests for personnel files.   In *United States v. Morris*, the defendant asked for a subpoena seeking "all records, documents, reports, etc." relating to an FBI investigation and the "agent's entire personnel file."   287 F.3d at 991.   The Tenth Circuit found no error in the district court's decision to quash the subpoena.   Noting that the defendant could not even verify that the things he wanted were actually in the materials, the Tenth Circuit suggested that efforts by defendant counsel to get things that he "suspected" would be in the files to "see if there are prior instances" of misconduct raised the appearance "that defense counsel attempted to use the Rule 17(c) subpoena for impermissible discovery purposes."   *Id.*   This case is no different.   *see also Reed*, 726 F.2d at 577 (concluding that subpoena was properly quashed where defendants "did not request specific documents, but sought entire [ ] investigation files.   Rule 17(c) was not intended as a discovery device or to allow a 'blind fishing expedition seeking unknown evidence.'").

## Conclusion

The government does not seek to downplay or diminish the serious nature of the allegations in the Civil Suit.   Sexual harassment is a scourge that every workplace should seek to eradicate.   But this is not the proper forum to resolve issues raised by the Civil Suit that have nothing to do with whether the defendant committed the crimes alleged in the indictment.   The allegations and claims in the civil complaint will be evaluated by Judge Daniel during the course of a separate litigation and, ultimately perhaps, by a jury.   In the meantime, the statements provided in the earlier notice remain true.   The government "is taking affirmative action in trying to determine if any *Brady* or *Giglio* material exists" and "if the government becomes aware of any such material," it will fulfill its obligations.   Govt.'s Notice to Ct. and Defs. 2, ECF No. 1066.

For all of the reasons set forth above, the defendant's motion should be denied.

Respectfully submitted this 16th day of September, 2016,

ROBERT C. TROYER
Acting United States Attorney

*s/ Bryan David Fields*
BRYAN DAVID FIELDS
Assistant United States Attorney
1225 Seventeenth St., Suite 700
Denver, Colorado 80202
Telephone: (303) 454-0100
E-mail: bryan.fields3@usdoj.gov

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify on this 16th day of September, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/ Bryan David Fields*
BRYAN DAVID FIELDS
Assistant United States Attorney
1225 Seventeenth St., Suite 700
Denver, Colorado 80202
Telephone: (303) 454-0100
E-mail: bryan.fields3@usdoj.gov