IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Criminal Case No. 14-cr-231-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    RICKY GARRISON,

    Defendant.

**ORDER DENYING MOTION FOR RULE 17(c) SUBPOENAS BUT GRANTING LIMITED ALTERNATIVE RELIEF PURSUANT TO RULE 16**

Before the Court is Defendant Ricky Garrison's Motion for Rule 17(c) Subpoenas *In Forma Pauperis* ("Rule 17 Motion" or "Motion"). (ECF No. 1087.) Although Garrison filed the motion *ex parte*, he served a copy on the Government. The motion was also discussed in open court at a September 9, 2016 hearing and status conference ("Status Conference"). At that hearing, the Court granted the Government leave to file a response no later than September 16, 2016, which the Government did. (ECF No. 1102.) The Court also set a September 21, 2016 deadline for Garrison's reply (*see* ECF No. 1094 at 2), but Garrison filed no reply on or before that date. The Court therefore deems the Rule 17 Motion ripe for resolution.

For the reasons explained below, the Court denies the Motion as such but construes it, in part, to be a request for disclosure of Government documents under Federal Rule of Criminal Procedure 16. To that limited extent, the Court will order the Government to search for a narrow category of documents, and to produce such

documents if any are found.

## I. BACKGROUND

Garrison is charged with controlled substance, firearms, and interstate prostitution offenses. Much of the evidence against him was developed through an investigation by the Metro Gang Task Force ("Metro Gang"), a collaboration between federal and Metro Denver law enforcement agencies. This investigation largely took place in 2013 and the first half of 2014, and was focused on a street gang known as the Gangster Disciples.

About a month before trial was set to begin, the Government notified the Court and Garrison of a new civil lawsuit filed in this District, *Danielle Marks v. James Comey*, No. 16-cv-2106 (D. Colo., filed Aug. 18, 2016) ("*Marks* Lawsuit"). (*See* ECF No. 1066.) In the *Marks* Lawsuit, former FBI Special Agent Danielle Marks ("Agent Marks") alleges that she was subjected to a sexually discriminatory and hostile work environment while assigned to Metro Gang, in violation of Title VII of the Civil Rights Act of 1964. (*See generally* ECF No. 1078-1 (copy of the complaint filed in the *Marks* Lawsuit).) Most of Agent Marks's allegations of misconduct fall within the time period that Metro Gang was investigating the Gangster Disciples.

Agent Marks alleges many forms of mistreatment by male coworkers, including the allegation that, "[b]eginning in September 2013," male coworkers would not show up to work on Marks's cases, "particularly on the weekends," and would not "assist [Agent Marks] with surveillance on her case, even though it was the only open case in the office." (*Id.* ¶ 22.) At some point, a senior official used key card logs to confirm that

some of the male agents "were not coming to the office when they were scheduled to, particularly on the weekends." (*Id.* ¶ 58.)

Agent Marks further alleges that male coworkers frequently "failed to attend their scheduled surveillance shifts for Ms. Marks's wiretap case." (*Id.* ¶ 23.)  Wiretaps were an important part of the investigation against the Gangster Disciples, and particularly against Garrison—although it is not clear from these allegations if Agent Marks was referring specifically to the Gangster Disciples wiretaps.  Agent Marks also reports an instance of needing to hastily rewrite a more-senior male agent's 15-day wiretap report because it was "so poor." (*Id.* ¶ 24.)

The context of Agent Marks's allegations is that male coworkers treated her poorly, and behaved unprofessionally, but were nonetheless protected and favored by other male officers, and faced no discipline.  Her complaint also contains numerous allegations of sexually-charged office rumors and pranks, as well as pervasive misogyny.  Agent Marks resigned from the FBI in October 2014, claiming constructive discharge based on the allegedly hostile work environment. (*Id.* ¶¶ 40, 62–63, 86.)

Although the *Marks* Lawsuit is indisputably concerned with sex discrimination, and is in no sense a whistleblower complaint regarding FBI or Metro Gang investigative practices, Garrison's Rule 17 Motion seeks to subpoena numerous records potentially connected to the *Marks* Lawsuit.  Specifically, he requests that the FBI and Aurora Police Department (some of whose officers are assigned to Metro Gang) turn over personnel files for fifteen FBI and Aurora Police employees allegedly involved in the events leading to the *Marks* Lawsuit.  Garrison also requests that the FBI, Aurora Police

Department, and the U.S. Equal Employment Opportunity Commission ("EEOC") (with whom Agent Marks filed a discrimination charge) turn over the results of any investigation into Marks's complaints of discrimination.  Garrison additionally requests that attorneys representing Agent Marks in her civil suit turn over all non-privileged documents in their legal file concerning Agent Marks.  And Garrison requests that Agent Marks herself turnover non-privileged documents in her possession regarding her lawsuit.

## II.  SCOPE OF ORDER

Rule 17 does not generally require the Government or a defendant to seek court approval before issuing a subpoena.  However, a defendant without ability to pay the fees normally associated with the subpoena may move *ex parte* for a court order that a subpoena may issue without payment of those fees.  Fed. R. Crim. P. 17(b).

Judging by the Rule 17 Motion's full title and its *ex parte* filing, one might expect the Motion simply to address the need for waiver of fees.  But the Motion contains no discussion of the *in forma pauperis* standard.  Rather, its entire argument focuses on the substantive propriety of the subpoenas.  (ECF No. 1087 ¶¶ 14–21.)  It is, in essence, a preemptive motion *not* to quash.  The Government's response likewise addresses the substantive propriety of the subpoenas, and reads like a motion to quash.  (*See generally* ECF No. 1102.)  Given that the parties have framed the issue as they have, and considering that the parties' briefs raise serious questions regarding the scope of criminal discovery, the Court will proceed to address the issue as framed, *i.e.*, whether Garrison's requested subpoenas are substantively appropriate.

4

### III.  STANDING

Normally the Government does not have standing to object to subpoenas issued to a third party.  *See United States v. Gonzales*, 2010 WL 4683880, at *2 (D. Colo. Nov. 10, 2010).  Here, however, the FBI is not a third party, nor are its agents or former agents (to the extent those former agents were involved in the Gangster Disciples investigation).  The FBI, like the United State Attorney's Office that is prosecuting this case, is a subdivision of the Department of Justice and was an integral part of the investigation leading to the charges filed against Garrison.

Under these particular circumstances, the Court also finds that the Aurora Police Department cannot be considered a third party.  As far as the record reveals, the Aurora Police Department was involved in this matter solely through its officers assigned to the Metro Gang.  Those officers, along with their counterparts at the FBI, were the primary investigators in this matter.  Thus, to the extent of its involvement in the Metro Gang, the Aurora Police Department was "the Government" in a similar manner as the FBI.

The EEOC is a closer call.  Although part of the United States Government, it is an independent administrative agency, not a subdivision of the Department of Justice.  It was not in any way connected to the investigation of Garrison.  There are instances when non-law-enforcement agencies have been deemed a part of "the Government" for subpoena standing purposes.  *See United States v. Medley*, 130 F. App'x 248, 249–50 (10th Cir. 2005) (affirming district court's decision to quash subpoenas directed at the Federal Emergency Management Agency and the Small Business Administration);

*Gonzales*, 2010 WL 4683880, at *2 (citing additional similar cases).  The Court finds in this instance, however, that the EEOC is not properly considered "the Government" for Rule 17 purposes, given its purely after-the-fact, charge-investigation role it played in connection to the case.  Therefore, the Court considers the EEOC a third party.

Finally, no party disputes that the attorneys representing Agent Marks are third parties.

Given these rulings, in normal circumstances the Court would be permitted to address the Rule 17 Motion only as to the subpoenas directed at the FBI, the Aurora Police Department, and Agent Marks herself.  However, Garrison nowhere argues that the Government lacks standing to challenge the propriety of the subpoenas directed at third parties.  This is a particularly glaring omission given that the Government's response brief plainly seeks to prevent all subpoenas from being issued, and Garrison chose not to file a reply, where he could have argued lack of standing.

Whether a party may assert a third party's rights is a matter of prudential standing, not Article III standing.  *See The Wilderness Society v. Kane Cnty., Utah*, 632 F.3d 1162, 1168 (10th Cir. 2011).  "[P]rudential standing is not a jurisdictional limitation and may be waived."  *Id.* n.1.  Garrison has waived the third-party standing issue.  The Court will therefore address all of the subpoenas.

## IV.  ANALYSIS

The Court has wide discretion to determine whether a Rule 17(c) subpoena is appropriate.  *United States v. Gonzales-Acosta*, 989 F.2d 384, 388–89 (10th Cir. 1993).  However, there is some question whether Rule 17 is appropriate in these

circumstances, at least with respect to subpoenas directed at Government agencies or officials. The Government argues that Rule 16 alone governs whether it must disclose documents in its possession. (ECF No. 1102 at 5–7.) Moreover, the Supreme Court has made clear that Rule 17(c) "was not intended to provide a means of discovery for criminal cases," but instead "to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *United States v. Nixon*, 418 U.S. 683, 698–99 (1974).

The Court need not specifically resolve this question because all of the potentially relevant standards under Rules 16 and 17 require at least a showing of materiality, if not more. For example, as relevant here, a defendant's request for documentary evidence in the Government's possession must be directed at documents that are "material to preparing the defense," Fed. R. Crim. P. 16(a)(1)(E)(i), meaning that the item will be helpful to the defense in preparing its case, either through its ability to lead to other admissible evidence or through its relevance to a defense, to rebuttal, or to impeachment, *see United States v. King*, 928 F. Supp. 1059, 1062 (D. Kan. 1996). Concerning Rule 17(c) subpoenas directed at third parties, Garrison asks the Court to adopt the arguably low standard set forth in *United States v. Nachamie*, 91 F. Supp. 2d 552, 563 (S.D.N.Y. 2000): "the subpoena [must be]: (1) reasonable, construed using the general discovery notion of 'material to the defense'; and (2) not unduly oppressive for the producing party to respond." Finally, as for Rule 17(c) subpoenas directed at the Government, Garrison must meet the Supreme Court's *Nixon* test: "(1) relevancy; (2) admissibility; (3) specificity." 418 U.S. at 700. Relevancy in this context appears to be somewhat stricter than simple materiality. Whereas evidence is relevant if it has

7

"any tendency to make a fact [that is of consequence to the determination of the action] more or less probable than it would be without the evidence," Fed. R. Evid. 401(a), materiality also appears to permit discovery that might lead to relevant evidence, *King*, 928 F. Supp. at 1062. Regardless, if proposed discovery fails the materiality test, it certainly fails the relevance test.

Garrison's subpoenas fail the materiality test. To begin, Garrison has not explained how allegations of pervasive sexual harassment and misogyny have any true connection to this case beyond happening at about the same time as the investigation into the Gangster Disciples. Thus, complaints about sexual harassment, reports of workplace investigations, and so forth, are neither relevant nor likely to lead to discovery of admissible evidence.

Moreover, a law enforcement officer's personnel file may be replete with complaints of distasteful interpersonal behavior, but Garrison has failed to explain how it could have any bearing on the investigation against him, or even the officer's credibility as a testifying witness. *See also United States v. Garrison*, 147 F. Supp. 3d 1173, 1185 (D. Colo. 2015) ("*Giglio*-based access to a law enforcement officer's personnel file requires a specific showing that the file is likely to contain material evidence").[1]

---

[1] One two occasions, the undersigned has permitted limited discovery into law enforcement personnel files. On both occasions, the parties were preparing for a suppression hearing where the result would likely turn entirely on the Court's evaluation of certain police officers' credibility. Thus, the Court required *in camera* production of portions of those officers' personnel files, which the Court searched for *Giglio*-type information. *See United States v. Newsom*, 2015 WL 6735397 (D. Colo. Nov. 4, 2015); *United States v. Neal*, 2011 WL 3648381 (D. Colo. Aug. 18, 2011). This case is not remotely like *Newsom* or *Neal*. As Garrison acknowledges, numerous co-defendants are prepared to testify against him. (ECF No. 1087 at 8 n.2.) Moreover, the Government has a substantial amount of wiretap evidence to introduce

When confronted with these problems at the Status Conference, counsel for Garrison narrowed his focus somewhat, claiming that

> Ms. Marks' complaints about whether or not sexual harassment comments were made to her . . . is not what I'm looking at. What I'm looking at are the allegations that these agents did not show up to work as assigned; failed to show up on the weekend; failed to assist Agent Marks with her duties and her investigation; that they indicated that they were on duty but the log sheets of the key cards show otherwise.

Such evidence, counsel said, at least undermines these agents' credibility.

The Court is frankly skeptical. First, the Court's reading of the *Marks* complaint does not disclose any allegation that agents were misrepresenting their on-duty status, only later to be confronted with log sheets to the contrary. Rather, they were simply confronted with the log sheets. (*See* ECF No. 1078-1 ¶¶ 57–58.) More generally, the allegations in the *Marks* Lawsuit regarding agents' failure to show up for work, to complete their surveillance shifts, etc., point only to the possibility that some evidence against Garrison perhaps was *not* gathered. But if the evidence was not gathered, it would not be introduced against Garrison.

In this vein, Garrison's counsel claimed that the agents "may have missed exculpatory evidence. They may have missed my client withdrawing from the alleged conspiracy." Even so, Garrison's proposed subpoenas cannot turn up evidence that agents "missed."

The Court accordingly finds that all of Garrison subpoenas, as framed, fail the various materiality and relevance tests that Rules 16 and 17 impose. However, in light

---

against Garrison.

of counsel's argument at the Status Conference, the Court finds it in the interest of justice to construe Garrison's Rule 17 Motion as a Rule 16(a)(1)(E) request to the Government to produce documents tending to show whether Metro Gang agents were or were not on duty during the Gangster Disciples investigation, and if on duty, their location and tasks accomplished.  Viewed very generously, the Court finds that such data would be minimally "material to preparing the defense," Fed. R. Crim. P. 16(a)(1)(E)(i), because it may at least assist in impeachment to the extent an officer testifies to certain surveillance but work records show that the officer was not on duty at that time.  There may be other uses for such information, such as implying that exculpatory evidence was missed—the Court makes no ruling at this time whether such an implication would be entirely speculative.

## V.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Garrison's Rule 17 Motion (ECF No. 1087) is DENIED as filed;

2. Construing Garrison's Rule 17 Motion as a limited request for information from the Government under Federal Rule of Criminal Procedure 16(a)(1)(E), the Court ORDERS the Government:

    a. to search for work logs, time sheets, and similar records disclosing when Metro Gang officers were or were not on duty from September 2013 through May 2014, and, if on duty, the agents' location(s), assignment(s), and task(s) performed on the day in question; and to the extent such records exist,

    b.    to disclose such records to counsel for Garrison no later than **November 15, 2016**;

3. The Government is hereby granted permission to withhold or redact, as appropriate, responsive records relating solely to investigations with no connection to the Gangster Disciples investigation that led to the charges against Garrison; and

4. To the extent the Government believes a protective order is necessary as to responsive records, the Government shall not move for such a protective order without first attempting to develop a stipulated protective order with counsel for Garrison, in which process both parties shall participate in good faith.

Dated this 22nd day of September, 2016.

BY THE COURT:

William J. Martinez
United States District Judge