**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 14-cr-231-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

**1.    RICKY GARRISON,**

    Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART
GARRISON'S *JAMES* MOTION**

---

The 71-count indictment in this case names sixteen Defendants and variously accuses them of narcotics, firearms, and related crimes.  (*See* ECF No. 10.)  Count One of the indictment, however, accuses all sixteen Defendants of participating in a conspiracy to distribute cocaine, cocaine base, heroin, and/or methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii)(II), 841(b)(1)(B)(iii), 841(b)(1)(C), and 846.  (*Id.* at 2–3.)

All Defendants save for Ricky Garrison ("Garrison") have pleaded guilty. Garrison's case is set for trial beginning February 21, 2017.  Currently before the Court is Garrison's Motion Pursuant to F.R.E. 801(d)(2)(E) ("Motion") (ECF No. 981), in which he seeks a pretrial "*James* determination," *i.e.*, a ruling on whether alleged co-conspirator statements satisfy Federal Rule of Evidence 801(d)(2)(E) and may therefore

be introduced against him at trial for the truth of the matters asserted.[1]

Per the undersigned's usual practice, the Government was ordered to respond to Garrison's Motion with a detailed written proffer of co-conspirator statements it intends to introduce for the truth of the matters asserted.  (*See* ECF No. 99 at 4; ECF No. 985.) The Government submitted such a proffer containing 83 "statements," all of which are actually summaries of telephone or text message conversations that the Government intercepted through the wiretaps employed during the investigation of this case.  (ECF No. 1038-1.)

For the reasons explained below, Garrison's request to exclude these statements is granted in part and denied in part.

## I. NO HEARING NECESSARY

A district court can "only admit co-conspirator statements if it holds a *James* hearing or conditions admission on forthcoming proof of a predicate conspiracy through trial testimony or other evidence."  *United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007) (internal quotation marks omitted).  Therefore, although a hearing is not required, the Tenth Circuit has expressed a "strong preference" for pre-trial *James* proceedings.  *Id*.  The reason for this preference is that if a court provisionally admits a statement with the caveat that the Government "connect up" the statement to sufficient

---

[1] The practice surrounding Rule 801(d)(2)(E) embodies what is commonly referred to as a *James* determination, which gets its name from *United States v. James*, where the Fifth Circuit held that a declaration by one defendant is admissible against other defendants only when there is a "sufficient showing, by independent evidence, of a conspiracy among one or more other defendants and the declarant and if the declarations at issue were in furtherance of that conspiracy."  590 F.2d 575, 581 (5th Cir. 1979).  The Court at times continues to employ the *James* terminology in this Order, in accordance with common practice.  But, ultimately, admissibility of the co-conspirator statements is governed by Rule 801(d)(2)(E).

evidence of a predicate conspiracy at trial, the risk of prejudice to the defendants is high should the Government later fail to meet its burden. *United States v. Urena*, 27 F.3d 1487, 1491 (10th Cir. 1994). Nevertheless, whether to hold a *James* hearing rests within the Court's discretion. *Id*.

The Court has reviewed the briefing on this issue and determined that a hearing is not necessary to resolve the admissibility of the Government's proposed co-conspirator statements. The Court will, as discussed below, require the Government to introduce additional supporting evidence at trial before the Court will admit certain of the Government's proffered statements, and careful compliance with this Order should negate any risk of prejudice to Garrison. Similarly, to the extent the Court permits the Government to introduce hearsay statements for purposes other than the truth of the matter asserted, the Court expects the parties to proffer an appropriate limiting instruction to be read to the jury, which will further reduce the possibility of prejudice. The Court therefore decides this Motion on the briefing submitted by the parties.

## II.  LEGAL STANDARD

Rule 801(d)(2)(E) provides that a statement is "not hearsay" if it "is offered against an opposing party" and it "was made by the party's coconspirator during and in furtherance of the conspiracy." This Court may not admit such a statement under this Rule without being satisfied by a preponderance of the evidence that (1) "there was a conspiracy"; (2) the conspiracy "involv[ed] the declarant and the nonoffering party"; and (3) "the statement was made during the course and in furtherance of the conspiracy." *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987) (internal quotation marks omitted).

Whether this standard is satisfied is a "preliminary question about whether . . . evidence is admissible," meaning the Court "is not bound by evidence rules, except those on privilege," when resolving the question.  Fed. R. Evid. 104(a); *Bourjaily*, 483 U.S. at 178–79.  Thus, the challenged statements themselves may be a part of the preponderance of evidence supporting admissibility under Rule 801(d)(2)(E).  *See id*. at 180 ("there is little doubt that a co-conspirator's statements could themselves be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy"); *see also United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1242 (10th Cir. 1996) ("In making its preliminary factual determination as to whether a conspiracy exists, the court may consider the hearsay statement sought to be admitted . . . .").

However, the Tenth Circuit requires "some independent evidence linking the defendant to the conspiracy," meaning "evidence other than the proffered [co-conspirator] statements themselves."  *Id*. (internal quotation marks omitted; alteration in original); *see also United States v. Rascon*, 8 F.3d 1537, 1541 (10th Cir. 1993) ("most courts require some reliable corroborating evidence apart from the coconspirator's statements before those statements may be used").  The required quantum of independent evidence may exist "even when it is not 'substantial.'"  *Lopez-Gutierrez*, 83 F.3d at 1242 (quoting *Rascon*, 8 F.3d at 1541).

### III.  ANALYSIS

By nature, a *James* challenge usually involves statements made *by* an alleged co-conspirator *regarding* the defendant.  *See, e.g.*, *Bourjaily*, 483 U.S. at 174 ("The

Government introduced, over [the defendant's] objection, [alleged co-conspirator] Angelo Lonardo's telephone statements regarding the participation of the [defendant] in the transaction."); *United States v. Owens*, 70 F.3d 1118, 1125 (10th Cir. 1995) (evaluating testimony by certain co-conspirators that other co-conspirators had identified the defendant as a drug supplier); *United States v. Perez*, 989 F.2d 1574, 1580 (10th Cir. 1993) (en banc) (evaluating testimony by one co-conspirator that two other individuals had stated that they did drug business with the defendant). Most unusually, none of the Government's proffered statements in this case fits that model. Even more unusually, a large majority of the Government's proffered statements comprise conversations in which Garrison himself was a participant. The remainder of the proffered statements, comprising conversations in which Garrison was not a participant, say nothing regarding Garrison.

To address this atypical situation, the Court will discuss in turn, first, proffered conversations in which Garrison was a participant, and second, proffered conversations in which Garrison was not a participant. The following analysis makes two assumptions that have not been addressed in the parties' briefing: (1) that proper foundation and authentication evidence will be introduced for the wiretap recordings containing the various statements discussed; and (2) that the Government will introduce evidence supporting its interpretation of the pervasive jargon found in these recordings, which the Government claims to be slang for guns, drugs, drug money, and other matters related to drug-dealing.

5

**A.    Garrison's Conversations**

    1.    Garrison's Admissions & Need for Context

The Government's proffered statements 1–39, 41, 43, 49, and 61–83 are all intercepted telephone or text message conversations between Garrison and one other individual, usually a co-defendant and alleged co-conspirator in this case ("Garrison's Conversations").  No *James* analysis is required for Garrison's portion of these conversations because they are non-hearsay party admissions.  See Fed. R. Evid. 801(d)(2)(A); *see also United States v. McDowell*, 918 F.2d 1004, 1007 (1st Cir. 1990) ("[The defendant's] own statements could, of course, be used against him; his part of the conversations was plainly not hearsay."); *United States v. Fort*, 2011 WL 3839659, at *3 (N.D. Ill. Aug. 26, 2011) ("Defendant's own statements recorded pursuant to court-authorized wiretaps are not hearsay . . . .").

Moreover, the other side of each conversation may be admitted, if not for its truth, then at least to provide context for Garrison's admissions.  *See, e.g.*, *United States v. Tangeman*, 30 F.3d 950, 952 (8th Cir. 1994) (other half of defendant's conversations "offered to provide context for [the defendant's] admissions and not to prove the truth of the matters asserted therein"); *McDowell*, 918 F.2d at 1007 ("the other parts of the conversations were properly admitted as reciprocal and integrated utterance(s), to put [the defendant's] statements into perspective and make them intelligible to the jury and recognizable as admissions" (citation and internal quotation marks omitted)).

### 2. Others' Statements

The question remains whether the Government may admit the Garrison Conversations for the truth of the matters asserted by the individuals on the other end of the telephone line. Some of these individuals' statements may qualify as adoptive admissions as to Garrison, *see* Fed. R. Evid. 801(d)(2)(B), although the Court will not make a definite ruling on that issue absent argument from the parties (which they have not made). To the extent the Government wishes to introduce these statements specifically as co-conspirator statements under Rule 801(d)(2)(E), the Government must satisfy the elements as stated above, by a preponderance of the evidence: (1) "there was a conspiracy"; (2) the conspiracy "involv[ed] the declarant and the nonoffering party"; and (3) "the statement was made during the course and in furtherance of the conspiracy." *Bourjaily*, 483 U.S. at 175–76. In addition, at least "some" of the evidence must not be the alleged co-conspirators' statements themselves. *Lopez-Gutierrez*, 83 F.3d at 1242.

This analysis requires the Court to further categorize Garrison's Conversations. Proffered statements 1–2, 4–14, 16–39, 41, 43, 49, 61–75, and 77–81 comprise intercepted conversations with named co-defendants ("Garrison's Co-Defendant Conversations"). Proffered statements 3 and 15 ("unknown female"), 76 ("Bhatia Fox"), and 82 and 83 ("unknown male") do not involve named co-defendants ("Garrison's Other Conversations").

#### a. *Garrison's Co-Defendant Conversations*

The Court finds the Rule 801(d)(2)(E) prerequisites easily satisfied as to Garrison's Co-Defendant Conversations. This is so because Garrison's own non-

hearsay portions of these conversations are "independent evidence" (statements other than the co-conspirator statements themselves) and overwhelmingly demonstrate an agreement to distribute illegal narcotics between at least Garrison and the person on other end of the line.  These statements also show activities aimed at furthering the conspiracy because it is more likely than not that all of Garrison's Co-Defendant Conversations discuss the planning and execution of drug deals.

        b.    *Garrison's Other Conversations*

The Court must individually address Garrison's Other Conversations (statements 3, 15, 76, 82, and 83).

Statement 3 is a conversation between Garrison and "unknown female." Garrison asks "if 'V.C.' was there," and the unknown female "said V.C. was ready and invited Garrison to come by if you wanted."  It is not clear what value it would be to the Government to have the unknown female's statement admitted for the truth of the matter asserted.  Nonetheless, this conversation is one of fifteen intercepted on November 29, 2013 (specifically, the Government's proffered statements 1–15), and in that context it appears to be connected to a drug transaction with Defendant Christopher Vigil, who might have had the nickname "V.C." (the first letters of his first and last names, in reverse order).  Assuming the Government properly places the surrounding statements into evidence, the Court finds that the Rule 801(d)(2)(E) requirements are satisfied as to statement 3 because a preponderance of evidence exists that statement 3 is an integral part of a then-unfolding drug transaction.  Thus, if the surrounding statements are admitted, statement 3 can come in for the truth of the

matter asserted by the unknown female.[2]  The Government must move the Court for such a ruling as to statement 3, or risk potential reversal on appeal.  *See Perez*, 989 F.2d at 1580 ("The party seeking to introduce hearsay testimony under [Rule 801(d)(2)(E)] bears the burden of proving the relevant preliminary facts. . . . Consequently, a defendant who makes a hearsay objection has done all he need do to preserve for appeal the failure of the district court to make the required coconspirator findings.").

Statement 15 is the last of the conversations recorded on November 29, 2013, and again involves an "unknown female," although the Government does not specify whether this is the same unknown female who participated in statement 3.  In any event, as represented in the Government's proffer, this conversation was entirely one-sided: "Ricky Garrison called an unknown female and said that he was at the front [door?]."  If this truly is the extent of the phone call, then there is no need for a Rule 801(d)(2)(E) analysis because Garrison's statement may be used against him under Rule 801(d)(2)(A).

Statement 76 is a relatively lengthy conversation between Garrison and a man named Bhatia Fox, whom the Government does not otherwise identify (or even accuse of being an uncharged co-conspirator).  At least one purpose of seeking to have this conversation admitted into evidence is obvious: Garrison is fairly loquacious about his

---

[2] The Court does not hold that the Government must get statements 1–2 and 4–15 into evidence before statement 3 can come in.  Statement 3 may be "connected up" through the course of presenting statements 1–15.  Nor does the Court hold that statements 1–2 and 4–15 must, collectively, come into evidence to validate statement 3.  A subset of these statements would likely suffice to support statement 3.  Finally, statement 3 may be admissible in light of evidence other than intercepted conversations.

9

drug-dealing philosophy and methods, and he explains that he carries a gun to protect himself and to deter competitors from attacking him.  All of that is admissible as a party admission under Rule 801(d)(2)(A), and could be useful to the Government in proving various counts asserted against Garrison.  However, the Government has given the Court no reason to believe that Fox was involved in the conspiracy charged in Count One of the indictment.  Accordingly, although Fox's portion of the conversation may be played to the jury for the context it gives to Garrison's admissions, Fox's statements may not be offered for the truth of the matters asserted by Fox absent (1) evidence from the Government, apart from statement 76 itself, that Fox was at that time involved in the conspiracy charged in Count One, and (2) a motion from the Government that the Court make a Rule 801(d)(2)(E) finding as to Fox's statements.

Statement 82 is a conversation between Garrison and an unknown male. Although full of jargon, the Government represents that Garrison is describing the four guns that he had in his possession at the time.  The unknown male's part of this conversation entirely comprises questions about Garrison's guns, and therefore the Court can see no statements by the unknown male that the Government would offer for their truth.  The unknown male's portion of the conversation may come in to provide context for Garrison's admissions, but the Court sees no need for a *James* analysis as to statement 82.

Statement 83 is another conversation between Garrison and an unknown male. It is not clear whether this is the same unknown male who participated in statement 82 (the two conversations were four days apart).  According to the Government, Garrison and the unknown male discuss the location of a gun in Garrison's residence.  The

unknown male states that the gun is "under the dresser" and "right where Garrison put it." The Court finds the analysis as to this statement identical to the analysis regarding statement 76. The Government offers no evidence that this unknown male was involved in the conspiracy charged in Count One. His statements may come in for the context they provide to Garrison's admissions, but they may not be offered for the truth of the matter asserted absent (1) evidence from the Government, apart from statement 83 itself, that this unknown male was at that time involved in the conspiracy charged in Count One, and (2) a motion from the Government that the Court make a Rule 801(d)(2)(E) finding as to this unknown male's statements.

**B.     Tillmon's Conversations**

The remaining proffered statements comprise conversations between Defendants Tillmon and Fisher (statements 40, 42, and 44–48), between Defendant Tillmon and an unknown male (statements 50–56), and between Tillmon and "Greg LNU [last name unknown]" (statements 57–60) (collectively, "Tillmon's Conversations"). Tillmon, obviously, is the common thread in all of these conversations, and they all involve Tillmon selling methamphetamine and/or ecstasy to the party on the other end of the line. If a preponderance of evidence exists that Tillmon distributed these drugs as a part of a conspiracy with Garrison, Tillmon's statements may be introduced against Garrison under Rule 801(d)(2)(E). *See United States v. Williamson*, 53 F.3d 1500, 1519 (10th Cir. 1995) ("in deciding whether statements are admissible under Rule 801(d)(2)(E), the appropriate focus is on whether the statements were 'made by' a member of the conspiracy, and not on whether the statements were 'made to' a member of the conspiracy").

The Court finds that such a preponderance of evidence exists.  First, all of these conversations took place between January 14 and 28, 2014, suggesting a discrete period of connected drug-dealing activity.  Second, interspersed with these conversations are other conversations between Garrison and Tillmon (statements 41, 43, and 49) in which they discuss their sources of supply, as well as money obtained from drug sales to Tillmon's customers.  Garrison's own words in these conversations, given that they are party admissions, qualify as evidence independent of the Tillmon co-conspirator statements the Government seeks to introduce.  Thus, it is more likely than not that the conversations evidence drug distribution by Tillmon as part of a plan to do so with Garrison, and all of Tillmon's alleged statements are certainly in furtherance of that conspiracy.  Thus, Tillmon's statements may come in for the truth of the matters asserted.

The other side of the Tillmon Conversations may come in for context, but not for the truth of the matters asserted.  Although Defendant Fisher is the other party to some of the Tillmon Conversations (statements 40, 42, and 44–48), Tillmon later speaks with Garrison to report the money he had earned by selling drugs to Fisher (statement 49).  Thus, as presented by the Government, the evidence suggests that Fisher was a customer of Tillmon, not a co-conspirator with Tillmon and Garrison.  Thus, the Government has not carried its burden to show that Fisher's statements in the Tillmon Conversations were in furtherance of a conspiracy in which he and Garrison participated.  These statements from Fisher may not come in for the truth of the matters asserted.

The Government offers nothing to suggest that the unknown male or Greg LNU

12

was part of a conspiracy with Garrison or Tillmon (or both).[3]  Likewise, then, the Government has not carried its burden to introduce the unknown male's or Greg LNU's statements against Garrison as co-conspirator admissions, and so they may not come in for the truth of the matters asserted.

## IV.  SUMMARY OF RULINGS

To summarize, the Court rules as follows with respect to each of the Government's proffered statements:

| Proffered Statement(s) | Ruling |
| --- | --- |
| 1–2 | - Garrison's portion of the conversation admissible under Rule 801(d)(2)(A).<br>- Other party's portion of the conversation admissible for context.<br>- Other party's portion of the conversation admissible under Rule 801(d)(2)(E). |
| 3 | - Garrison's portion of the conversation admissible under Rule 801(d)(2)(A).<br>- Other party's portion of the conversation admissible for context.<br>- Other party's portion of the conversation admissible under Rule 801(d)(2)(E) *if* the Government: (1) introduces sufficient context through statements 1–2 and/or 4–15, or from other sources of evidence, and (2) moves for a Rule 801(d)(2)(E) finding. |
| 4–14 | - Garrison's portion of the conversation admissible under Rule 801(d)(2)(A).<br>- Other party's portion of the conversation admissible for context.<br>- Other party's portion of the conversation admissible under Rule 801(d)(2)(E). |

---

[3] The Government claims that the unknown male was seeking to buy drugs from Tillmon for purposes of re-distribution, but the Government provides no independent evidence to support this assertion.

| Proffered Statement(s) | Ruling |
|---|---|
| 15 | - Garrison's portion of the conversation admissible under Rule 801(d)(2)(A). |
| 16–39 | - Garrison's portion of the conversation admissible under Rule 801(d)(2)(A).<br>- Other party's portion of the conversation admissible for context.<br>- Other party's portion of the conversation admissible under Rule 801(d)(2)(E). |
| 40 | - Tillmon's portion of the conversation admissible under Rule 801(d)(2)(E).<br>- Other party's portion of the conversation admissible for context only. |
| 41 | - Garrison's portion of the conversation admissible under Rule 801(d)(2)(A).<br>- Other party's portion of the conversation admissible for context.<br>- Other party's portion of the conversation admissible under Rule 801(d)(2)(E). |
| 42 | - Tillmon's portion of the conversation admissible under Rule 801(d)(2)(E).<br>- Other party's portion of the conversation admissible for context only. |
| 43 | - Garrison's portion of the conversation admissible under Rule 801(d)(2)(A).<br>- Other party's portion of the conversation admissible for context.<br>- Other party's portion of the conversation admissible under Rule 801(d)(2)(E). |
| 44–48 | - Tillmon's portion of the conversation admissible under Rule 801(d)(2)(E).<br>- Other party's portion of the conversation admissible for context only. |
| 49 | - Garrison's portion of the conversation admissible under Rule 801(d)(2)(A).<br>- Other party's portion of the conversation admissible for context.<br>- Other party's portion of the conversation admissible under Rule 801(d)(2)(E). |

| Proffered Statement(s) | Ruling |
|---|---|
| 50–60 | - Tillmon's portion of the conversation admissible under Rule 801(d)(2)(E).<br>- Other party's portion of the conversation admissible for context only. |
| 61–75 | - Garrison's portion of the conversation admissible under Rule 801(d)(2)(A).<br>- Other party's portion of the conversation admissible for context.<br>- Other party's portion of the conversation admissible under Rule 801(d)(2)(E). |
| 76 | - Garrison's portion of the conversation admissible under Rule 801(d)(2)(A).<br>- Other party's portion of the conversation admissible for context.<br>- Other party's portion of the conversation *not* admissible under Rule 801(d)(2)(E) *unless* Government: (1) presents evidence apart from the statement itself that the other party was involved in the conspiracy alleged in Count One, and (2) moves for a Rule 801(d)(2)(E) finding. |
| 77–81 | - Garrison's portion of the conversation admissible under Rule 801(d)(2)(A).<br>- Other party's portion of the conversation admissible for context.<br>- Other party's portion of the conversation admissible under Rule 801(d)(2)(E). |
| 82 | - Garrison's portion of the conversation admissible under Rule 801(d)(2)(A). |
| 83 | - Garrison's portion of the conversation admissible under Rule 801(d)(2)(A).<br>- Other party's portion of the conversation admissible for context.<br>- Other party's portion of the conversation *not* admissible under Rule 801(d)(2)(E) *unless* Government: (1) presents evidence apart from the statement itself that the other party was involved in the conspiracy alleged in Count One, and (2) moves for a Rule 801(d)(2)(E) finding. |

## V.  CONCLUSION

For the reasons set forth above, Garrison's Motion Pursuant to F.R.E. 801(d)(2)(E) (ECF No. 981) is GRANTED IN PART and DENIED IN PART as described in detail above.

Dated this 11th day of January, 2017.

BY THE COURT:

_____
William J. Martínez
United States District Judge
