IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 14-cr-00231-WJM-1

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    RICKY GARRISON,

    Defendant.

---

**RESPONSE TO DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO RULE 29 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE, OR IN THE ALTERNATIVE, MOTION FOR NEW TRIAL PURSUANT TO RULE 33 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE**
**(ECF #1307)**

---

The United States, through its representatives Zachary Phillips and Celeste Rangel, Assistant United States Attorneys for the District of Colorado, hereby responds to the defendant's motion for judgment of acquittal or a new trial. For the following reasons, the government respectfully requests that the defendant's motion be denied.

## PROCEDURAL BACKGROUND

On February 21, 2017, trial began on the Superseding Indictment [ECF #1182], Counts 1-34, 35-46, and 48. On February 24, 2017, the government moved to dismiss Count 48, as insufficient evidence had developed at trial to support that charge. Later on February 24, 2017, the government rested its case-in-chief. After the government rested its case, the defendant, both orally and in writing, moved for a judgment of

acquittal on the charges pursuant to Fed. R. Crim. P. 29(a).  After hearing oral argument from the parties, the Court denied the motion for judgment of acquittal.

On March 2, 2017, the jury found the defendant guilty of Count 1, conspiracy to possess and possession with intent to distribute cocaine, cocaine base and methamphetamine.  See ECF #1283.  Additionally, the jury found the defendant guilty of 19 counts[1] of using a communication device during the commission of a felony drug offense.  Id.

The defendant now moves for a judgment of acquittal pursuant to Fed. R. Crim. P. 29(c).  He alternatively argues for a new trial, pursuant to Fed. R. Crim. P. 33(b)(2).  The defendant argues that the government failed to prove the conspiracy alleged in Count 1, which resulted in a variance.  The defendant asserts that this variance prejudiced him because he had no notice as to the evidence that would be offered against him at trial and he was prejudiced because the jury was confused by the variance.  Finally, he argues that the Superseding Indictment was filed shortly before the trial, which compounded the variance.

There was no variance from the Superseding Indictment and therefore the defendant's motion should be denied.

## LEGAL AUTHORITY AND ARGUMENT

Where "an indictment charges a single conspiracy, but the evidence at trial proves only the existence of multiple conspiracies," a variance occurs.  *United States v. Carnagie*, 533 F.3d 1231, 1237 (10th Cir. 2008).  When determining whether a variance occurred, a court must "view all of the evidence, both direct and circumstantial, in the

---

[1] The 19 phone counts were Counts 4, 5, 7, 8, 11, 13, 15, 16, 22-26, 30, 31, and 39-44.

light most favorable to the government, and all reasonable inferences and credibility choices must be made in support of the jury's verdict." *United States v. Pilling*, 721 F.2d 286, 288-89 (10th Cir. 1983). Thus, a claim that there was a variance as to a conspiracy conviction and each defendant's membership in the conspiracy is a challenge to the sufficiency of the evidence supporting the jury's guilty verdict. *Carnagie*, 533 F.3d at 1237.

Courts are deferential to a jury's determination that a single conspiracy existed. *See United States v. Powell*, 982 F.2d 1422, 1431 (10th Cir. 1992). However, the evidence supporting the conspiracy conviction must be "substantial and do more than raise a suspicion of guilt." *United States v. Anderson*, 189 F.3d 1201, 1205 (10th Cir. 1999).

The government must prove a conspiracy by demonstrating "(1) that two or more persons agreed to violate the law, (2) that the defendant knew at least the essential objectives of the conspiracy, (3) that the defendant knowingly and voluntarily became a part of it, and (4) that the alleged coconspirators were interdependent." *United States v. Sells*, 477 F.3d 1226, 1235 (10th Cir. 2007). To conclude that a single conspiracy existed, the jury must find beyond a reasonable doubt that the defendant and his coconspirators possessed a "common, illicit goal." *United States v. Brewer*, 630 F.2d 795, 799 (10th Cir. 1980). "In reviewing a jury's determination that a single conspiracy existed, 'a focal point of the analysis is whether the alleged coconspirators' conduct exhibited interdependence.'" *United States v. Caldwell*, 589 F.3d 1323, 1329 (10th Cir. 2009) (quoting *United States v. Edwards*, 69 F.3d 419, 432 (10th Cir. 1995)).

Evidence to prove a defendant's participation in a conspiracy must show that the defendant shared a "common purpose or design" with his coconspirators. *United States v. Fox*, 902 F.2d 1508, 1514 (10th Cir. 1990). "The conduct of the alleged coconspirators, including the defendant, may be diverse and far-ranging, but it must be interdependent in some way." *United States v. Daily*, 921 F.2d 994, 1007 (10th Cir. 1990). Thus, if the defendant "facilitated the endeavors of the alleged coconspirators or facilitated the venture as a whole, evidence of interdependence is present." *Id*.

The Tenth Circuit has repeatedly emphasized that "most narcotics networks involve loosely knit vertically-integrated combinations." *Brewer*, 630 F.2d at 799. Therefore, a defendant "must have a general awareness of other alleged coconspirators, but is not required to be personally acquainted with all coconspirators or know all of the details of the venture." *United States v. Horn*, 946 F.2d 738, 741 (10th Cir. 1991) (internal citations omitted). The connection to a conspiracy "may be slight, but that slight connection must be proven with evidence to establish knowing participation beyond a reasonable doubt." *Id*. A single conspiracy may still exist where the evidence establishes many separate transactions, so long as those transactions and "activities constituted essential and integral steps toward the realization of a common, illicit goal." *Brewer*, 630 F.2d at 799.

In this case, the evidence established that multiple narcotics transactions occurred between the defendant and his coconspirators. These transactions were all actions toward the common goal of the conspiracy: to distribute or possess with the intent to distribute narcotics for profit. The transactions proven at trial were for the benefit of those involved. The defendant benefited financially from the transactions as

4

did many of his coconspirators, such as Christopher Vigil, Simeon Ramirez, Christopher Martinez, Francisco Aguilar, James Tillmon, Travis Edwards, and Gregory Williams.  Other coconspirators benefited from these transactions by fueling their addictions to narcotics.  The evidence established this as to Sidney Taylor, Robert Painter, Latoya Wimbush, and Gregory Williams.  By continuing to further the drug addictions of his coconspirators, the defendant was assured repeat business, which further benefited him and his suppliers financially.  Because his customers continued to purchase narcotics from him, the defendant continued to purchase narcotics from his sources of supply so that he could redistribute the drugs.  The jury's verdicts as to the phone counts make clear that the evidence established this component of the conspiracy beyond a reasonable doubt.

"Where large quantities of narcotics are being distributed, each major buyer may be presumed to know that he is part of a wide-ranging venture, the success of which depends on performance by others whose identity he may not even know." *Brewer*, 630 F.2d at 800 (internal citations omitted).  The quantities of narcotics purchased by the defendant make clear that he knew he was part of a larger network of narcotics traffickers and the same can be presumed of the defendant's customers.  These were not casual or isolated transactions but rather each transaction demonstrates knowing participation in a drug conspiracy, the common goal of which was to distribute narcotics for mutual benefit and profit.  The success of the overall scheme to distribute narcotics for profit was dependent upon the successful completion of the transactions detailed at trial.  The defendant's participation in this scheme contributed to the successful nature of the conspiracy.  The defendant was unemployed and yet had thousands of dollars in

his bank account, was observed throughout the investigation driving different vehicles, including a Porsche Cayenne, and as detailed in the phone calls and testimony, would obtain and supply, either at his home or by delivery, narcotics.  The defendant determined when and where drug transactions would occur, and he set the price for the narcotics.  By agreeing to buy and sell narcotics, obtaining and retaining customers for these narcotics, and profiting from the sales of the narcotics, the defendant contributed to the success of the conspiracy for which he was convicted.  "Even the remote members of the conspiracy were undeniably dependent on the success of each transaction to ensure the continuing prosperity of the overall scheme.  The success of each transaction was essential to attain the ultimate goal of profitability."  *United States v. Dickey*, 736 F.2d 571, 582 (10th Cir. 1984).  If drug addicts, including Gregory Williams, Sidney Taylor, and Robert Painter, do not continue to be customers of the defendant, the success of the overall scheme fails.  The defendant's retention of customers not only led to his own profit, but the profit of his sources of supply, as the defendant continued to purchase narcotics from them in order to supply his customers.  *See, e.g., Caldwell*, 589 F.3d at 1332 ("[D]irect economic benefit for all individuals involved is not necessarily a prerequisite for a jury to find a single conspiracy … [b]ut in the profit-driven world of illicit drugs, the fact that several individuals are in an economically symbiotic relationship may demonstrate that transactions among them are in pursuit of mutual benefit.") (internal citations omitted).  Because the defendant and his coconspirators' actions were interdependent, no variance occurred.

But even assuming a variance occurred, the defendant should not be acquitted of Count 1, nor granted a new trial as to Count 1.  The defendant has failed to articulate

any prejudice he suffered from the claimed variance.   A variance between the indictment and the evidence presented at trial is "reversible error only if it is prejudicial and affects the defendant's substantial rights."  *United States v. Edwards*, 69 F.3d 419, 433 (10th Cir. 1995).  *See also Caldwell*, 589 F.3d at 1333 (internal citations omitted).  The defendant's substantial rights are not prejudiced if he was convicted on evidence that shows "a narrower scheme than that contained in the indictment, provided that the narrower scheme is fully included within the indictment."  *United States v. Harrison*, 942 F.2d 751, 758 (10th Cir. 1991).  "When an indictment charges a conspiracy among multiple individuals, it generally provides sufficient notice to a defendant that [he] must defendant against the smaller conspiracies."  *Caldwell*, 589 F.3d at 1333 (internal citations omitted).  A variance, however, may be substantially prejudicial "if the evidence adduced against coconspirators involved in separate conspiracies was more likely than not imputed to the defendant by the jury in its determination of the defendant's guilt."  *Id*.  The defendant argues he suffered prejudice both from a lack of notice and from alleged confusion by the jury.

The defendant argues that he lacked notice and "could not fairly anticipate what the evidence would be at trial.  The defense was left to guess at how the named codefendants would or would not be utilized at trial."  ECF #1307, p.7.  The defendant was initially provided with discovery in this case on June 26, 2014.  Further, the defendant was provided with Grand Jury transcripts for the initial indictment on August 19, 2014.  The cooperating co-defendants who testified at trial were known to the defendant by at least January 26, 2017, and on this same date the cooperating defendant's proffer statements were made available to the defendant.  The defendant

7

was provided with an 18-page *James* proffer and a 72-page *James* log on July 6, 2016. *See* ECF #1038 and 1038-01.  The proffer and log outline the government's theory of the conspiracy and the exact calls it believed supported that conspiracy.  Additionally, the defendant received the government's witness and exhibit lists on February 7, 2017, both of which detailed which co-defendants would testify and which exhibits would be offered through those witnesses.  Some of the cooperating co-defendants spoke with defense counsel prior to their testimony at trial.  If the defendant could not fairly anticipate what evidence the government would present at trial and how the co-defendants would be used at trial, it was not due to any claimed variance from the superseding indictment.

      The defendant argues that he was left to guess as to how the ultimately dismissed Count 48 was to be proven at trial.  The defendant was present in his home on May 23, 2014, when law enforcement executed the search warrant which led to the discovery of two firearms in the defendant's bedroom.  As noted earlier, the defendant first received discovery in this case on June 26, 2014.  That discovery documented the search warrant and the discovery of the two firearms in the defendant's bedroom.  There was no mystery as to how the government was going to attempt to prove the use of those firearms in furtherance of a drug trafficking crime.

      And contrary to his argument, there was no variance as to Count 1 by the introduction of evidence pertaining to Count 48.  As argued at trial, the firearms were probative of whether or not the defendant was a drug dealer, which the jury unanimously concluded he was.  The jury was not confused by this evidence and their question during deliberations does not support the contention that there was a variance

8

as to Count 1.  Rather, their question, by the plain language contained therein, makes clear that they initially heard that there was a firearm charge, they heard evidence of firearms, and they questioned if there was still a charge related to firearms.  *See* ECF #1278.  This does not support the defendant's claim of a variance as to the conspiracy charge, nor does it demonstrate any form of prejudice as to this claimed variance.

Nor was the jury confused in convicting the defendant of Count 1 and acquitting him of the substantive distribution counts.[2]  As indicated by their questions during deliberations, the jury did not understand the meaning of the word "detectable," an element of the offense.  *See* ECF #1277 and #1279.  There is nothing to support the contention that the jury's confusion as to the definition of "detectable" indicated that there was a variance as to the conspiracy charged in Count 1.

Finally, the defendant argues that the Superseding Indictment was filed less than 30 days before trial.  The Superseding Indictment, as acknowledged by the defendant, did not change Count 1, or Counts 2-45.  The Superseding Indictment removed co-defendants who had already pled guilty and added two counts: Counts 46 and 47, both of which were dismissed by the government.  The defendant claims a variance as to Count 1, a charge he has faced since June 4, 2014.  Moreover, at the defendant's initial appearance on February 10, 2017, defense counsel raised the timing of the Superseding Indictment and the trial date, but never made a record as to prejudice, nor requested a continuance or demonstrated any further concern regarding the timing.    In his motion, the defendant fails to articulate how the filing of the Superseding Indictment,

---

[2] The substantive distribution counts were counts 2, 6, 10, 12, 14, 17-19, 28, 29, 32-34, 36-38, and 46.

which did not change Count 1, provided him with no notice and therefore prejudiced him by a variance as to Count 1.

For the reasons provided above, there was no variance as to the conspiracy charged in Count 1 and the conspiracy proven at trial. However, even assuming, *arguendo*, that there was a variance, the defendant's substantial rights were not prejudiced. Therefore, no acquittal or new trial is warranted.

Dated this 13th day of April, 2017.

                              Respectfully Submitted,

                              ROBERT C. TROYER
                              ACTING UNITED STATES ATTORNEY
                              DISTRICT OF COLORADO

By:   *s/Zachary Phillips*
       ZACHARY PHILLIPS
       Assistant United States Attorney
       1801 California St., Suite 1600
       Denver, CO 80202
       Telephone:  (303) 454-0118
       Fax:  (303) 454-0401
       e-mail:  zachary.phillips@usdoj.gov
       Attorney for the Government

By:   *s/Celeste Rangel*
       CELESTE RANGEL
       Assistant United States Attorney
       U.S. Attorney's Office
       1801 California St., Suite 1600
       Denver, CO 80202
       Telephone: (303) 454-0215
       Fax: (303) 454–0401
       e-mail: Celeste.rangel@usdoj.gov
       Attorney for the Government

CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of April, 2017, I electronically filed the foregoing **RESPONSE TO DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO RULE 29 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE, OR IN THE ALTERNATIVE, MOTION FOR NEW TRIAL PURSUANT TO RULE 33 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE (ECF #1307)** using the CM/ECF system which will send notification of such filing to all counsel of record in this case.

> *s/Maggie E. Grenvik*
> Maggie E. Grenvik
> Legal Assistant