IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 14-cr-00231-WJM

UNITED STATES OF AMERICA,
    Plaintiff,

v.

#1 RICKY GARRISON,
    Defendant.

_____

DEFENDANT'S SENTENCING STATEMENT
_____

COMES NOW, Ricky Garrison, Defendant, by and through counsel, and hereby submits his sentencing statement pursuant to D.C. Colo. LCrR 32.1 and U.S.S.G. § 6A1.2 of the Sentencing Guidelines. Defendant reserves the right to file objections to the Pre-Sentence Report (PSR) and to file a request for a variant sentence pursuant to 18 U.S.C. § 3553(a).

## STATEMENT OF THE CASE

On March 2, 2017, after a trial, the jury found the defendant guilty of Count One, conspiracy to possess and possession with intent to distribute cocaine, cocaine base and methamphetamine. The jury found the defendant not guilty of the mandatory minimum charge, as plead and submitted to jury in Count One. In finding the defendant not guilty of the mandatory minimum portion of Count One, the jury rejected a crucial

aspect of the government's theory of the case: the amount of drugs transacted. In addition to finding the defendant guilty of Count One, the jury found the defendant guilty of 19 counts of using a communication device during the commission of a felony drug offense.

The jury found the defendant not guilty of all substantive charged distribution counts, as well as finding the defendant not guilty of the alleged Mann Act violation. The government, during the Rule 29 hearing, dismissed one count alleging a violation of 18 U.S.C. § 924(c) that had been added by the filing of the superseding indictment. The government, prior to trial, dismissed the one count alleging a violation of 18 U.S.C. § 922(g).

## STATEMENT OF FACTS

Mr. Garrison was found guilty of the non-mandatory minimum conspiracy charge, Count One. As a result, the court will be required to make a calculation as to the U.S.S.G. § 1B1.3(a)(1)(B) accountability of the defendant.

The defense asserts that none of the testifying codefendants were believable. All testified pursuant to cooperation agreements. Each testifying codefendant received significant incentives to "increase" the amount of alleged drugs transacted, including large sentencing concessions by the government. While the government seeks to have the court undo, in essence, the verdict of the jury by finding the relevant drug quantity attributable to the defendant well above that of the verdict, the defense asserts that to do so undermines the jury verdict and would give undo weight to testimony found meritless by the jury.

As a preliminary matter, the government asserts that Mr. Garrison was the "hub" of a traditional "hub and spoke" conspiracy. Doc. #1311, pg. 2, ¶ 3. This is the opposite of the assertion made by the government in their James Proffer. In the James Proffer, the government stated that "[t]he conspiratorial organization, as is the case with most drug conspiracies, cannot be neatly categorized solely as a vertical organization or as a hub and spokes conspiracy. Instead, this conspiracy may be described as fluid with characteristics of both." Doc. # 1038, pg. 12, ¶ 3.

Simeon Ramirez testified that he was a source of supply of cocaine for the defendant. Mr. Ramirez testified for the government pursuant to a cooperation agreement. During his direct examination, Mr. Ramirez testified that he had been charged for illegally reentering the United States and that the case was pending. He answered each and every question on direct examination and re-direct examination. On cross-examination, Mr. Ramirez invoked his 5th Amendment privilege against self-incrimination. He refused to answer the defense questions regarding his pending charge. He also refused to answer any questions about whether or not he had advised the court of his reentry into the United States as he was ordered to as a condition of his supervised release. It was abundantly clear from Mr. Ramirez that he would only testify if he received an incentive to testify. As a result, the defense rejects the amount of drugs he asserted as having delivered to Mr. Garrison. In rejecting the testimony of Mr. Ramirez concerning drug amounts, the defense concurs with the jury: the testimony of Mr. Ramirez, concerning drug amounts, was not believable.

Christopher Vigil testified that he was a source of supply of cocaine for the

defendant.  Mr. Vigil testified pursuant to a cooperation agreement.  Mr. Vigil, during questioning from the government, indicated the inherent unreliability of witnesses who testify subject to a cooperation agreement.  He indicated that he would do anything to stay out of prison and to remain on supervised release.  In so stating, Mr. Vigil failed to allow the government to complete the entire question as the government was seeking to ask Mr. Vigil if he would lie to stay out of prison or remain on supervised release.

The unreliability of Mr. Vigil's testimony extended beyond his answer to the question posed by the government.  Mr. Vigil also testified that he was a drug addict.  He testified that his addiction was ongoing.  While on pretrial release, Mr. Vigil lied, on multiple occasions, to the United States Probation Officer who was supervising his pretrial release.  Mr. Vigil's lies while on pretrial release included denying use of cocaine, attributing the cocaine he used as being found instead of purchased, and he even told the Pretrial Officer that the test indicating that he was using cocaine must have been tampered or altered.  Mr. Vigil's lies all had one commonality: they were designed to keep Mr. Vigil out of prison or custody.

Francisco Aguilar testified that he was a source of supply of cocaine for the defendant.  Mr. Aguilar's testimony was inconsistent; he was impeached.  Mr. Aquilar testified that the total amount of cocaine transacted was one ounce, four to five ounces, twenty to twenty three ounces, or twenty.  Given Mr. Aguilar's inability to have any consistency in his drug amount testimony, the defense urges the court to wholly reject the testimony of Mr. Aguilar concerning drug amounts.  Mr. Aguilar also testified that his Plea Agreement included untrue drug quantity amounts.  Mr. Aguilar is the textbook

example of how people given deals in exchange for their testimony are unreliable.

Travis Edwards did not testify at trial. The government asserts that Mr. Edwards was responsible for supplying the defendant with one ounce, or 28.35 grams, of cocaine. The defense disputes this contention. Mr. Edwards has not been subjected to cross-examination and, as a result, the defense does not accept the drug amounts asserted as being accurate or reliable.

James Tillmon did not testify at trial. The government asserts that Mr. Tillmon supplied Mr. Garrison with 33.0g grams of methamphetamine and 31.5 grams of cocaine. The government also asserts that Mr. Garrison supplied Mr. Tillmon with 3.5 grams of cocaine base. The defense disputes these contentions. Mr. Tillmon has not been subjected to cross-examination and, as a result, the defense does not accept the drug amounts asserted as being accurate or reliable.

Christopher Martinez did not testify. The government asserts that Mr. Martinez supplied the defendant with 7 grams of methamphetamine. The defense disputes the contention that Mr. Martinez supplied Mr. Garrison 7 grams of methamphetamine. Mr. Martinez has not been subjected to cross-examination and, as a result, the defense does not accept the drug amounts asserted as being accurate or reliable.

Gregory Williams testified at trial. He testified subject to a generous cooperation agreement. He testified that he was an addict who was abusing both alcohol and cocaine. The jury did not find his testimony concerning drug amounts allegedly transacted with Mr. Garrison believable. The defense agrees with the conclusion

5

reached by the jury: Mr. Williams' testimony concerning drug amounts was not believable.

Sidney Taylor testified at trial subject to an agreement with the government for a radical variant sentence. Mr. Taylor made one thing abundantly clear during his testimony: he was getting his deal. The jury saw through Mr. Taylor and disbelieved his testimony concerning drug amounts. The defense agrees with the jury's conclusion. Mr. Taylor's testimony was unbelievable.

Latoya Wimbush did not testify at trial. The government contends that 1.75 grams of cocaine base should be attributed to Mr. Garrison based upon the plea agreement of Ms. Wimbush. The defense disputes this amount. Ms. Wimbush has not been subjected to cross-examination and, as a result, the defense does not accept the drug amounts asserted as being accurate or reliable.

Robert Painter testified at trial. Mr. Painter testified that he was an addict. He testified that his addiction consumed him. It was clear that Mr. Painter did not recall the events he testified about with clarity. This is best seen by his testimony concerning Count 38. The government had charged that Mr. Painter had purchased one ounce (28.5 grams) of cocaine from Mr. Painter. Mr. Painter contradicted the government and indicated it was 28.5 grams of cocaine base. Clearly Mr. Painter was confused. And, what's more, the jury did not believe Mr. Painter concerning either the alleged amount of drugs in Count 38 or any other distribution counts, as they found Mr. Garrison not guilty of all distribution counts. The defense concurs with the jury's findings and asserts that Mr. Painter's testimony is insufficient to establish any drug amounts.

## SUMMARY OF USSB § 1B1.3(a)(1)(B) ACCOUNTABILITY

Mr. Garrison asserts, without admitting, that the maximum total drug quantity for which he can be found accountable pursuant to §1B1.3(a)(1)(B) is the top end of the drug amounts for which he was found guilty in Count 1.  Thus, the defense asserts that pursuant to the findings in *Alleyne v. United States*, 133 S.Ct. 2151 (2013), the highest relevant conduct base level offense is 22, due to the jury not finding any drug amounts higher than level 22.

Mr. Garrison asserts that he does not qualify for a 2-point increase pursuant to 2D1.1(b)(1).

Mr. Garrison asserts that he does not qualify for the 2-point increase pursuant to 2D1.1(b)(12).

Mr. Garrison asserts that he should receive a 2-point decrease pursuant to U.S.S.G. §3E1.1(b).

Mr. Garrison asserts that his criminal history is overrepresented, but is likely Criminal History Category III.

## DEFENDANT'S SENTENCING RECOMMENDATION

Mr. Garrison reserves his right to make a sentencing recommendation until after the preparation and review of the PSR.  Based on the sentences of his more culpable co-defendants, as well as co-defendants with significant violent crimes, Mr. Garrison is likely to request a sentence of time served with supervised release in order to avoid significant sentencing disparities between Mr. Garrison and his co-defendants.  Further,

a sentence of time served with supervised release would satisfy the statutory requirements as outlined in 18 U.S.C. § 3553(a).

DATED at Denver, Colorado this, 14th day of April 2017.

Respectfully submitted,

*/s/ Miller Leonard*
Miller Leonard, Esq., #41029
14143 Denver West Parkway, Suite 100
Golden, CO 80403
Ph:    (720) 613-8783
Cell:   (303) 907-9516
Fax:   (720) 613-8782
Email:  Miller@themillerleonardlawfirm.com
ON BEHALF OF DEFENDANT GARRISON

/s/ Sean McDermott
McDermott Stuart & Ward LLP
One Sherman Place
140 East 19th Avenue, Suite 300
Denver, CO 80203
303-832-8888
303-863-8888 (fax)
smcdermott@mswdenver.com

## CERTIFICATE OF SERVICE

I hereby certify that I filed a copy of this motion on April 14, 2017, electronically using the CM/ECF system which will send notification of such filing to all counsel of record in this case.

Miller Leonard