# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Action No. 14-cr-00231-WJM

UNITED STATES OF AMERICA,

                Plaintiff,

v.

#1 RICKY GARRISON,

                Defendant.

_____

## RICKY GARRISON'S SENTENCING STATEMENT AND MOTION FOR VARIANT SENTENCE
_____

        COMES NOW, Ricky Garrison, Defendant, by and through counsel, and hereby submits his sentencing statement and Motion For Non Guideline Sentence pursuant to 18 U.S.C. § 3553(a).

## INTRODUCTION

        As a preliminary matter, a large volume of material has been generated during this case and pleadings continue to be generated. Responses to Objections to the Pre-Sentence Report are due on June 19, 2017. Mr. Garrison by reference incorporates Doc. No. 1317, which was a response to the Government's post trial sentencing statement, Doc. No. 1352 (*Defendant's Objections to the Pre-Sentence Report*), and Mr. Garrison's yet to be filed, Response to the United States

1

Objections to the Presentence Report. Mr. Garrison's counsel apologizes in advance for any redundancy. However, Mr. Garrison does want to incorporate all relevant material into one cogent pleading.

## STATEMENT OF THE CASE

### A. Synopsis of Trial Verdict and Dismissed Counts

On March 2, 2017, after a trial, the jury found the defendant guilty of Count One, conspiracy to possess and possession with intent to distribute cocaine, cocaine base and methamphetamine. The jury found the defendant not guilty of the mandatory minimum charge, as pleaded and submitted to the jury in Count One. In finding the defendant not guilty of the mandatory minimum portion of Count One, the jury rejected a crucial aspect of the government's theory of the case; the amounts of drugs transacted. In addition to finding the defendant guilty of Count One, the jury found the defendant guilty of 19 counts of using a communication device during the commission of a felony drug offense.

The jury found the defendant not guilty of all substantive charged distribution counts, as well as finding the defendant not guilty of the alleged Mann Act violation. The government, during the Rule 29 hearing, dismissed one count alleging a violation of 18 U.S.C. § 924(c) that had been added by the filing of the superseding indictment. The government, prior to trial, dismissed the count alleging a violation of 18 U.S.C. § 922(g).

### B.    The Guidelines and Summary of USSG § 1B1.3(a)(1)(B) Accountability

To summarize, Mr. Garrison's position regarding his starting guideline

2

calculation, is stated in Mr. Garrison's, (*Defendant's Presentence Report Objections*, Doc. No. 1352). Mr. Garrison asserts that the maximum total drug quantity for which he can be found accountable pursuant to §1B1.3(a)(1)(B) is the top end of the drug amounts for which he was found guilty in Count 1. Thus, the defense asserts that pursuant to the findings in *Alleyne v. United States*, 133 S.Ct. 2151 (2013), the highest relevant conduct base level offense is 22. The reason for this is that the jury did not find Mr. Garrison guilty of anything that would result in drug amounts that result in a base level offense of anything higher than level 22.

Mr. Garrison asserts that he should receive a 2-point decrease pursuant to U.S.S.G. §3E1.1(b). The reason for this is that Mr. Garrison was not, uncooperative. He was charged very heavily, and he exercised his constitutional right to go to trial. (Doc. No. 1352 ¶ 19). Mr. Garrison asserts that his criminal history is overrepresented. He should be treated as a Criminal History Category III. Doc. No. 1352 (*Defendant's Objections to the Pre-Sentence Report*, ¶¶To 23-31). To effectuate this, Mr. Garrison should receive a downward departure pursuant to USSG § 4A1.3 as his criminal history overstates or over-represents his future risk. Id., at ¶ 19 which cites U.S.S.G. §3E1.1., App. Note 2.

The starting point for the guideline range of Mr. Garrison should be a Base Level Offense of 20 and a Criminal History Category of III. This results in Guideline Range of 41 to 51 months, (See p.7 ¶ 31 to *Defendant's Presentence Report Objections*).

## 18 U.S.C. § 8553(a) FACTORS AS APPLIED TO MR. GARRISON

As this Court knows, 18 U.S.C. §_3553(a) states that a Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Court presided over the Jury trial and has heard arguments from counsel. The Court is in a good position to know the nature and circumstances of the offense. At the risk of redundancy, the defense does set forth a summary like the one that it presented in response to the Government's initial Summary Statement (Defendant's Sentencing Statement Doc. No. 1317). This is relevant when the Court considers the nature and circumstances of the offense under 18 U.S.C. §_3553(a)(1). Following this discussion, the Defense discusses Mr. Garrison's life history which is also relevant to 18 U.S.C. 35533(a)(1) and to the overall sentence imposed. All the factors will be mentioned, but Mr. Garrison's ability for rehabilitation, and the mandate of 18 U.S.C. 3553(a)(6) to avoid unwarranted sentencing disparities among similarly situated Defendant's with similar criminal records, will be emphasized.

## SUMMARY OF FACTS FROM THE TRIAL

Mr. Garrison was found guilty of the non-mandatory minimum conspiracy charge, Count One. The court will be required to make a calculation as to the appropriate guideline. See U.S.S.G. § 1B1.3(a)(1)(B) accountability of the defendant.

As stated in Doc. No. 1317, The defense asserts that none of the testifying codefendants can be trusted enough to base Mr. Garrison's relevant conduct on

their testimony. All testified pursuant to cooperation agreements. Each testifying codefendant received significant incentives to "increase" the amounts of alleged drugs transacted, including large sentencing concessions by the government. While the government, asks the court to essentially undo, the verdict of the jury by finding the relevant drug quantity attributable to the defendant well above that of the verdict, the defense asserts that to do so undermines the jury verdict and would give undo weight to testimony found meritless by the jury.

The government asserts that Mr. Garrison was the "hub" of a traditional "hub and spoke" conspiracy. Doc. #1311, pg. 2, ¶ 3. This is the opposite of the assertion made by the government in their James Proffer. In the James Proffer, the government stated that "[t]he conspiratorial organization, as is the case with most drug conspiracies, cannot be neatly categorized solely as a vertical organization or as a hub and spokes conspiracy. Instead, this conspiracy may be described as fluid with characteristics of both." Doc. # 1038, pg. 12, ¶ 3.

Simeon Ramirez testified that he was a source of supply of cocaine for the Mr. Garrison. Mr. Ramirez testified for the government pursuant to a cooperation agreement. During his direct examination, Mr. Ramirez testified that he had been charged for illegally reentering the United States and that the case was pending. He answered all questions on direct examination and re-direct examination. On cross-examination, Mr. Ramirez invoked his 5th Amendment privilege against self-incrimination. He refused to answer the defense questions regarding his pending charge. He also refused to answer any questions about whether he had advised the court of his reentry into the United States as he was ordered to as a condition

of his supervised release.  (Day Three of Trial, Trial Transcript, p. 487- 489). It was abundantly clear from Mr. Ramirez that he had an incentive to protect his interest and that interest was paramount to him.  As a result, the defense rejects the amounts of drugs he asserted as having delivered to Mr. Garrison. In rejecting the testimony of Mr. Ramirez concerning drug amounts, the defense concurs with the jury: the testimony of Mr. Ramirez, concerning drug amounts, was not believable.

Christopher Vigil testified  that  he was a source of supply of cocaine for Mr. Garrison (Day 3 of Trial p. 659 of Trial Transcript). Mr. Vigil testified pursuant to a cooperation agreement. Mr. Vigil, during questioning from the government, indicated the inherent unreliability of witnesses who testify subject to a cooperation agreement. He indicated that while on pre-trial release, he had lied to his probation officer about urinalysis results and "trying to weasel my way out of it (trouble)" (Trial transcript p. 655). Mr. Vigil also testified that he was a drug addict. He testified that his addiction was ongoing. While on pretrial release, Mr. Vigil lied, on multiple occasions, to the United States Probation Officer who was supervising his pretrial release. (Day 3 of Trial p. 654-657, of Trial Transcript, Direct Examination). In sum, Mr. Vigil had credibility issues. Additionally, Mr. Vigil admitted that his wife assisted with his cocaine selling operation, by receiving drug orders from customers. Mr. Vigil also admitted that a gun was in the house and that his wife owned the gun, and that he had access to the firearm. (Trial transcript p. 675-676).

Francisco Aguilar testified that he was a source of supply of cocaine to Mr. Garrison. Mr. Aguilar's testimony was inconsistent. It is uncontroverted that Mr. Aguilar lied about the alleged amounts of drugs that he was responsible for. He

testified that when he was debriefed, he told agents that he was responsible for grams. He then said that he was actually responsible for ounces. Mr. Aguilar also testified that his Plea Agreement included untrue drug quantity amounts. He admitted that even though he had testified under oath to the amounts of drugs he was responsible for, that statement to the Court was incorrect. (Trial transcript, p. 503 through 507). Mr. Aguilar is the textbook example of how people given deals in exchange for their testimony can be unreliable.

Travis Edwards did not testify at trial. The government asserts that Mr. Edwards was responsible for supplying the defendant with one ounce, or 28.35 grams, of cocaine. The defense disputes this contention. Mr. Edwards has not been subjected to cross- examination. The Court should not accept the drug amounts asserted as being accurate or reliable.

James Tillmon did not testify at trial. The government asserts that Mr. Tillmon supplied Mr. Garrison with 33.0g grams of methamphetamine and 31.5 grams of cocaine. The government also asserts that Mr. Garrison supplied Mr. Tillmon with 3.5 grams of cocaine base. The defense disputes these contentions. Mr. Tillmon has not been subjected to cross-examination and, as a result, the defense urges the Court to not accept these drug amounts asserted as being accurate or reliable.

Christopher Martinez did not testify. The government asserts that Mr. Martinez supplied the defendant with 7 grams of methamphetamine. The defense disputes the contention that Mr. Martinez supplied Mr. Garrison 7 grams of methamphetamine. Mr. Martinez has not been subjected to cross-examination

and, as a result, the defense does not accept the drug amounts asserted as being accurate or reliable and request that the Court not accept the alleged amount.

Gregory Williams testified at trial. Mr. Williams testified that he was an addict who was abusing both alcohol and cocaine during the period of the events of which he testified. As evidenced by their verdict, Mr. Williams testimony did not contribute to the higher quantity of drugs, that the United States wants to attribute to Mr. Garrison. Mr. Williams testified that he received time served with three years of supervised release. The time that he served was about five weeks. (Day Two of Trial, Transcript p. 296).

Sidney Taylor testified at trial subject to an agreement with the government for a significant downward departure. Mr. Taylor admitted that he had previously served a 14-year prison sentence and that he guidlelined at 37 to 46 months and was going to request a 40 percent downward departure. (Day 2 of trial, p. 371-372 of the transcript). The jury saw through Mr. Taylor and disbelieved his testimony concerning drug amounts. The defense agrees with the jury's conclusion. Mr. Taylor's testimony was unbelievable.

Latoya Wimbush did not testify at trial. The government contends that 1.75 grams of cocaine base should be attributed to Mr. Garrison based upon the plea agreement of Ms. Wimbush. The defense disputes this amount. Ms. Wimbush has not been subjected to cross-examination and, thus, the defense does not accept the drug amounts asserted as being accurate or reliable.

Robert Painter testified at trial. Mr. Painter testified that he was an addict who would start using when he woke up in the morning. He testified that his

addiction consumed him. It was clear that Mr. Painter did not recall the events he testified about with clarity. This is best seen by his testimony concerning Count 38. The government had charged that Mr. Painter had purchased one ounce (28.5 grams) of cocaine from Mr. Painter. Mr. Painter contradicted the government and indicated it was 28.5 grams of cocaine base. At best, Mr. Painter was confused. The jury apparently did not believe Mr. Painter concerning either the alleged amount of drugs in Count 38 or any other distribution counts, as they found Mr. Garrison not guilty of all distribution counts. (Mr. Painter's testimony is found on the second day of trial transcripts, p. 376-426). The defense concurs with the jury's assessment of the facts, and asserts that Mr. Painter's testimony is insufficient to establish any drug amounts.

### Mr. Garrison's Life History

Ricky Garrison was born on November 4, 1983 in Flint Michigan to Ronald Rhodes and Vanessa Garrison. Mr. Garrison's mother was the primary caretaker along with Mr. Garrison's Grandparents. Mr. Garrison's mother's name is Vanessa and his father is Ronald Rhodes. Mr. Garrison's mother is 62 years old and she suffers from lupus. The defense has received and is supplying the Court via the probation department with medical documentation of this disability. Mr. Garrison was raised in a working-class neighborhood in Flint Michigan. (See Presentence Investigation Report). This Court will receive numerous letters via the updated Presentence Report, that talk about what Mr. Garrison was like growing up. The description of Mr. Garrison being a generous person is a common and unsolicited theme to these attestations of Mr. Garrison's character.

What is articulated in one of the letters that is not included in the pre-sentence investigation report is the fact that Mr. Garrison furthered his education by planning to be a medical assistant. Mr. Garrison trained in this position and was looking forward to having this be a career path for him to follow. Unfortunately, from Mr. Garrison's perspective he was being put into a job, so that someone who had done a similar job, could be let go and substituted by Mr. Garrison for a lower wage. This struck Mr. Garrison as unfair, and this career path never materialized. As this Court, will see, from the letters of support that will be submitted with the updated pre-sentence report, people are assisting Mr. Garrison to find him a trade opportunity, so that he can find meaningful and legal employment upon his release.

### Mr. Garrison Has the Ability and Support to Lead a Law-Abiding Life

Mr. Garrison has had numerous people reach out to lend support to him. His friends and family speak of a man who is generous and loyal. They also speak to his abilities and what they believe that he can accomplish. Mr. Garrison has grown, during the three years that he has been in custody. He considers himself very lucky to have a support system in place. Mr. Garrison has two transition plans in mind. He has one, that he will pursue if he remains in Colorado and another, should he return to his home of Michigan. On the one hand, Colorado has more job opportunities than Michigan. On the other hand, Mr. Garrison has family that he wants to see and assist, back home in Michigan. Michigan is away from the people that Mr. Garrison involved himself with in this case.

Regardless of which path he takes, Mr. Garrison is committed to working with the probation department, so that he can come up with a solid re-entry plan,

and stand by the people who have stood by him.

### The Court Is Required to Avoid Unwarranted Disparities in Sentencing 18 U.S.C. 3553 (a) (6)

A view of the dispositions entered and the sentences imposed on the codefendants in this case militates in favor of a variant sentence for Mr. Garrison. These dispositions are to be taken in turn:

Defendant No. 2, James Tillmon pled guilty to Count One of the indictment. Mr. Tillmon had a criminal history of VI, Mr. Tillmon was sentenced to 40 months of prison and a term of 4 years supervised release. (Judgment of James Tillmon, Doc. No. 824). This was consecutive to Denver Case No. 12CR10298. *Id.*

Defendant No. 3, Chris Martinez also pled guilty to count One of the first Indictment. In the plea agreement, his base level offense began at 26, and was reduced to 23 after receiving a total of a three-point reduction for acceptance of responsibility. He was estimated at a criminal history of 2 in his plea agreement. Mr. Martinez, was getting prepared to be sentenced in Arapahoe County Case 15CR907 in addition to this case. Mr. Martinez received the longest sentence of anyone in this case, when he received a 60-month sentence, (See Judgment of Chris Martinez, Doc. No. 885).

The United States believed defendant No. 4 Francisco Aguilar to be a supplier to Mr. Garrison. (See Doc. 1040, plea agreement of Francisco Aguilar). Mr. Aguilar's base level offense was based on being involved with the distribution of more than 500 grams but less than two kilograms of cocaine. Even with a criminal history category of I and after receiving three a three-point reduction related to accepting responsibility, the guideline range for Mr. Aguilar under his

11

plea agreement would be 37-46 months. Mr. Aguilar received a 30-month sentence with three years of supervised release. (Judgment, Doc. No. 1155). Parenthetically, had Mr. Aguilar had a criminal history of IV, he would have guidelined at 57-71 months. (See USSG Sentencing Table).

Simeon Ramirez, Defendant No. 5 was given a sentence of time served. This was done on October 13, 2016. (Court's Order, Doc. No. 1115). This order makes no mention of a period of supervised release. In his plea agreement, Mr. Ramirez stated that he provided Mr. Garrison with 28 grams of cocaine on November 22 ,2013. (Plea Agreement of Mr. Ramirez, Doc. No. 798, page 8). Mr. Ramirez's had an initial base level offense of 12. This was increased by one level, because he admitted to illegal conduct close to a protected location. However, after receiving an adjustment for acceptance of responsibility his base level offense was 11. The parties reportedly believed that his criminal history category was II. *Id., at page 9.*

As part of his plea agreement, Defendant No. 6 Christopher Vigil was placed at a base level offense of 24. Following his acceptance of responsibility related adjustments, he was placed at 21; and he had a criminal history category of I. Before his downward departure motion, he was believed to guideline at 37-43 months. (Plea Agreement of Mr. Vigil, Doc. No. 681, p. 10-11), Mr. Vigil did not receive any adjustment related to a firearm being at his home. Mr. Vigil's precise sentence is unavailable to the public. However, Mr. Vigil was already on supervised release by the time that he testified at trial.

Travis Edwards, who is listed as Defendant No. 7 on the original indictment,

had his plea agreement crafted in a manner that brought him to base level offense of 12 (Doc. 465, Plea Agreement of Travis Edwards). This helped give Mr. Edwards a palatable guideline range, as his criminal history category is a VI. Mr. Edwards was sentenced to 30 months incarceration, with supervised release for one year (Judgment of Travis Edwards, Doc. No. 569 p. 2-3).

Dondrai Fisher, listed as Defendant No. 8. Dondrai Fisher pled guilty to count 41 for possessing with the intent to distribute methamphetamine. According to the plea agreement, he committed this crime with James Tillmon. As part of the factual basis, Dondrai Fisher agreed that he had numerous phone calls where it was discussed that Tillmon would provide Fisher with methamphetamine. As a result, Tillmon supplied methamphetamine to Fisher on January 18, 2014. (Plea Agreement of Mr. Fisher, Doc. No.393, p. 9 – 10. Additionally, in case 14 -CR- 230 WJM Fisher received cocaine and cocaine base from Francisco Ramirez, and Fisher supplied Ramirez with cocaine base. Relevant conduct included 27.56 grams of methamphetamine, 19 grams of cocaine, 1.75 grams of cocaine base. Fisher's base level offense was calculated at 20. Following a reduction for acceptance of responsibility, the base level offense was 17; and this was combined with criminal history category of II. (Plea Agreement of Dondrai Fisher, Doc. No. 393, p. 10-11). Fisher was also to be the recipient of a Motion for a Downward Departure. *Id.* Dondrai Fisher was sentenced to time served plus three years of supervised release. (Judgment of Dondrai Fisher, Doc. No. 518).

The record regarding Archie Poole, Defendant No. 9, is somewhat limited. Mr. Poole did not testify at trial. Mr. Garrison does not have access to Mr. Poole's

calculated base level offense, nor his criminal history. These are not reflected in the order of Judgment that is a part of this case's record. However, Mr. Poole was sentenced to 27 months imprisonment, with three months of supervised release. (Order of Judgment, Doc. No. 1239).

Luis Ramirez, Defendant No. 10 pled guilty to count 67, when he admitted that he and Chris Martinez, agreed to possess with the intention to distribute 500 grams or less of a mixture of cocaine. By pleading to a count outside of the conspiracy, he could limit his exposure and his base level offense. This was very advantageous to him, since he was believed to have a criminal history category of V. (Luis Ramirez, Plea Agreement Doc. 547, page 10). By starting with a base level offense of 12 and having that reduced by two for acceptance of responsibility, Mr. Ramirez started with a guideline range of 21-27 months. *Id.* Mr. Ramirez was also the recipient of a downward departure. When he was sentenced, Mr. Ramirez received a sentence of time served and three-years of supervised release. (Judgment of Luis Ramirez, Doc. No. 1126).

Similarly, Melvin Turner, Defendant 11, had criminal history category of VI. Mr. Turner pled to Count 62 and bargained for a downward departure as well. Because Mr. Turner had an adjusted base level offense of 10, Mr. Turner got an opportunity at a chance to put life together, instead of spending it in prison, despite his serious criminal history categorization. Mr. Turner received a sentence to three years of probation. (Doc. 1335).

The twelfth listed defendant, Shawn Beardsley, had an estimated criminal history between Category IV and VI. (Shawn Beardsley plea agreement, page 10

14

through 11). Mr. Beardsley also had an adjusted base level offense of 10, after pleading guilty to count 62, possession with intent to distribute heroin. Despite being originally charged in Count One – Conspiracy, Mr. Beardsley limited his exposure to 6.45 grams of heroin. Mr. Beardsley filed a Motion for Non-Guideline Sentence. This motion did not draw an objection, and Mr. Beardsley was sentenced to 18 months with three years of supervised release. His low-end of his guideline range after plea negotiations was 21 months. (Judgment of Shawn Beardsley, Doc. 584).

Sidney Taylor, No. 13, was apparently eligible for a sentencing enhancement pursuant to 21 U.S.C. § 851 and his guideline range was apparently estimated at 37 to 46 months (See Sidney Taylor's Motion for Non-Guideline Sentence, Doc. No. 1256, ¶¶ 5 – 7) and Plea Agreement of Sidney Taylor, Doc. No. 282, p.2). Doc. No 1256 gives a sketch of Mr. Taylor's sentencing expectation. The parties estimated him to have base level offense of 19 and Criminal History category of II. (Sidney Taylor plea agreement, Doc. No. 282, 9 p – 1). By looking at Doc, No. 1256, is can be deduced that the probation department disagreed with this estimate.

Gregory Williams, No. 14, pled guilty to count 2, His Judgment, (Doc. No. 1133), indicates that Gregory Williams was sentenced to time served with three years of supervised release.

Robert Painter, No. 15, testified at trial, that he was currently employed as a plumber and that he had been for seven months, and that he was currently living on East Florida Street. (Trial transcript p. 376 – 377). He also testified that he was

in custody on this case from June 6, 2014 until June 17, 2016. (Trial transcript p. 378).

Finally, Latoya Wimbush pled guilty to count 45. She also was sentenced to time served with three years of supervised release. (Judgment of Latoya Wimbush, Doc. No. 1018). The Judgment on file with the Court does not state the calculation of her base level offense or Criminal History Categorization.

## Imposing the Sentence

As this Court knows, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. *Gall v. United States,* 552 U.S. 38, 49 (2007); 18 U.S.C. § 3553(a) (4). The Guidelines are not the only consideration. After giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the 18 USC § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, the District Court may not presume that the Guidelines range is reasonable. *Gall v. United States,* 552 U.S. 38 at 49-50. The District court is given due deference that the § 3553(a) factors on a whole, justify the extent of a variant sentence if a variance is given. *Id., at 51.*

"Practical considerations underlie this legal principle. The sentencing Judge is in a superior position to find facts (and) judge their import under § 3553(a) in the individual case. The Judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed in the record. The sentencing judge has access to, and greater familiarity with, the

individual case and the individual defendant before him than the (sentencing) commission or the appeals court." *Id.,* at 51-52 (internal citations omitted).

"It has been uniform and constant in the federal tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes, magnify, the crime and the punishment to ensue." *Id.,* at 52, quoting *Koon v. United States,* 518 U.S. 81, 98 (1996). For these reasons, due deference is given to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance. This is the case, even if a reviewing court, might have reasonably concluded that a different sentence was appropriate. *United States v. Munoz-Nava,* 524 F.3d 1137, 1146 (10th Cir. 2008); See *United States v. Sells,* 541 F.3d 1227, 1237 (10th Cir. 2008). So long as the sentence, is procedurally and substantively reasonable, the decision will not be disturbed on review. See *United States v. Alapizco-Valenzuela,* 546 F.3d 1208, 1214 (10th. Cir. 1208, 1214).

In Mr. Garrison's case the longest sentence given to a codefendant was 60 months. Other sentences ranged from 40 months to time served; and a probationary sentence for a defendant with a higher criminal history category than Mr. Garrison. Other defendants involved in this case, have alleged that they supplied Mr. Garrison with illicit substances, and some defendants have criminal history categorizations that are higher than Mr. Garrison's. Another codefendant apparently had a spouse involved in illegal activity, and she avoided criminal prosecution, and they were not penalized for having a firearm at their residence.

Their residence was apparently being used to sell illegal substances. Regardless, the most severe sentence given, in this case has been 60 months.

Defendants who had bad criminal histories were apparently given plea agreements, where their base level offense would be calculated in such a way, that their sentence would be proportional to codefendants who had less serious criminal history categorizations. Mr. Garrison, is not being critical, but he is asking his sentence be proportionate to these other people.

18 U.S.C. § 3553(a)(6) requires Court's to avoid disparate sentences. A sentence proportionate to the sentence of the other codefendants in this case is required. Mr. Garrison has already spent over three years in prison. Unfortunately, there is a limited amount of programming available to a pre-trial detainee. However, Mr. Garrison has had more than three years to think, and to attempt to better himself. He knows what he needs to do, to live a law-abiding life, and he is committed to doing this. Mr. Garrison respectfully requests that this Court impose a sentence that is sufficient but not greater than necessary to -- (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Furthermore, a non-guideline sentence under these circumstances is close to, if not within that reported national norm. In 2016, there were 67, cases reported to the United States Sentencing Commission for the 2016 fiscal year. Of these

18

cases, 19,222 involved drug trafficking. Most of these people were sentenced to imprisonment. Three-quarters of drug traffickers were sentenced either within the guideline range (36.7%) or below the range at the government's request (38.9%). An additional 23.1% of drug traffickers received a non-government sponsored below range sentence, with the remaining 1.4% of offenders sentenced above the guideline range. The average sentence for drug trafficking offenders was 66 months. This average varied depending on the type of drug trafficked in the offense. This information is available in the United States Sentencing Commission *Quick Facts: Drug Trafficking Offenses* found at:

> http://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Quick_Facts_Drug_Trafficking_2016.pdf.

Statistics from also bear out, that Mr. Garrison is not a higher risk to reoffend than the codefendants in this case. Up to this point, every other defendant in this case has received a USSG §3E1.1 reduction to their offense level. Nationally, 90.7 % of those convicted of drug trafficking offenses received this same reduction for acceptance of responsibility. This adjustment does not correlate to a lower risk of recidivism. Nationally, offenders who received no adjustment under §3E1.1 had a re-arrest rate of 46.3 percent. Offenders who received a two-level decrease had a re-arrest rate of 46.6 % and those with a three-level decrease were even higher at 50.9 %. United States Sentencing Commission, *Recidivism Among Federal Offenders: A Comprehensive* Overview, p. 21 found at:

http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf

The national statistics bear out, what a follower of this case would intuitively believe—Mr. Garrison is not a higher risk to offend in the future than others in this

case who have previously been sentenced by this Court. As a legal matter and as a matter of simple fairness, Mr. Garrison should receive a sentence that is proportionate to that of his codefendants.  A non-guideline or variant sentence is likely necessary to fairly accomplish this.

## **CONCLUSION**

Mr. Garrison respectfully requests that this Court impose a sentence that is within the range of the sentences that have been imposed in this case to the people charged as codefendants. As previously stated, this is time served at the low end, and 60 months at the high end.

DATED, this 19th day of June 2017.

Respectfully submitted,


s/ Sean M. McDermott
Sean M. McDermott
McDermott Stuart & Ward LLP
140 E. 19th Avenue, Suite 300
Denver, CO 80203
Phone: (303) 832-8888
Fax: (303) 863-8888


Miller Leonard
14143 Denver West Pkwy. Suite 100
Golden, CO 80403
(720) 613-8783 Phone
(303) 907-9516 Phone - Cell
(720) 613-8782 Fax
Attorney for Defendant
CO Reg. # 41029
milller@themillerleonardlawfirm.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 19, 2017, I electronically filed the foregoing **Pleading** and that a copy was delivered to all parties of record and designated to receive this motion by the District of Colorado's ECF filing system.


s/  Sean *McDermott*
Sean McDermott