**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Action No. 14-cr-00231-WJM

UNITED STATES OF AMERICA,
                    Plaintiff,

v.

#1 RICKY GARRISON,
                    Defendant.

---

## Defendant's Response to the Government's Objections to the PSR

---

COMES NOW, Ricky Garrison, Defendant, by and through counsel, and hereby files the following Response to the Government's Objections to the Presentence Report prepared by the United States Probation Office for the District of Colorado.

1. Defendant denies the allegations contained in Objection 3 wherein the government alleges that Mr. Garrison wanted to have Ms. Pearce's vehicle burned. The government has informed counsel for defendant that they will not be offering any evidence in support of their allegation. Since the government is not offering any evidence in support of this allegation, and defendant denies this

allegation, and further the allegation does not impact the guideline calculation, defendant requests that the Court disregard the entire content of the objection.

2. The government asserts in Objection 1 that Mr. Garrison is subject to a 2-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1).  The preliminary PSR did not find that this enhancement applied and the defense agrees.

   a. The government first asserts that the weapons found on May 22, 2014, at 1250 S. Monaco Parkway, Unit 61, Denver, Colorado should be attributed to the defendant (Mr. Garrison was arrested on May 23, 2014).   "The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."   U.S.S.G. §2D1.1(b)(1), cmt., n. 11(A).   As the Court has found a variance existed between the charged conduct and that which was actually proved, it is apparent that no criminal activity was on going on either May 22, 2014, or May 23, 2014.  In fact, the last substantive criminal charge was charged for the date of March 26, 2014.  The defendant was acquitted of this conduct, however, this act would constitute the last day of the Garrison-Aguilar-Martinez conspiracy that the Court has found was a variant of the original conspiracy charge.   Accordingly, it is "clearly improbable" that the weapons were connected to the offense.

   b. The evidence presented regarding the two seized firearms was clear: Mr. Garrison's fingerprints were not present, nor was there any DNA linking Mr. Garrison to the firearms.  The firearms were found in locations that were not

obvious and there was no proof Mr. Garrison had even handled the seized weapons. Further, there is no proof that the two weapons were Mr. Garrison's. They were found in an apartment he did not own, nor did Mr. Garrison rent the apartment. Mr. Garrison was a guest of the two individuals who rented the Monaco apartment.

c. The government argues that Mr. Painter's testimony should convince the Court that Mr. Garrison had a firearm during the course of the alleged drug transactions with Mr. Painter. Mr. Painter, due to the ruling of the Court regarding a variance, was not found to be a party to any conspiracy with Mr. Garrison. Mr. Garrison was also acquitted of any and all distribution counts involving Mr. Painter. Further, Mr. Painter's testimony is hardly reliable. By his own admission, Mr. Painter was a drug addict, consumed by the drugs he abused. While it is true that Mr. Painter said he saw Mr. Garrison in the presence of a firearm, his testimony fell apart during cross-examination. *See* Exhibit A, Transcript of Trial, Day 2, pgs. 409 – 420.

In order to gain his deal, Mr. Painter told the Agents that he saw Mr. Garrison with a firearm or firearms. The Agents took no steps to confirm these assertions by Mr. Painter. Instead, the Agents took the word of a known drug addict who needed a deal to avoid a lengthy prison term. In reality, Mr. Painter's statement regarding Mr. Garrison having a gun or guns, and his subsequent testimony, was found to be unbelievable and was so proved during cross-examination.

d.  The government attempts to link Mr. Garrison to firearms through two phone calls that were intercepted.  The first phone call occurred on November 13, 2013.  The contents of this phone call fails to prove possession of a firearm, nor does this phone call prove possession of a firearm in connection with a drug trafficking offense.  And, it is impossible to tell what actual date is being discussed.

e.  The second phone call is dated May 16, 2014.  Thus, this phone call is outside of the date of the conspiracy Mr. Garrison was convicted of based upon the variant finding of the Court.  Even assuming otherwise, this phone call fails to prove Mr. Garrison was in possession of any firearms, nor does this phone call prove possession of a firearm in connection with a drug trafficking offense.  This phone call, at best, proves Mr. Garrison was talking about firearms and that is not a basis to enhance a defendant pursuant to §2D1.1. The guideline does not make it illegal to speak about firearms.

f.  Section 2D1.1(b)(1) of the sentencing guidelines provides for a two level enhancement "[i]f a dangerous weapon (including a firearm) was possessed" in connection with a drug trafficking offense. The government bears the initial burden to prove that a defendant possessed a firearm.  *United States v. Smith*, 131 F.3d 1392, 1400 (10th Cir.1997).   To satisfy its burden for application of a two level enhancement under USSG § 2D1.1(b)(1), the government must show a temporal proximity between a weapon, the drug trafficking activity, and a defendant.  *United States v. Zavalza-Rodriguez*, 379 F.3d 1182, 1185 (10th Cir.2004).

4

g. The government has failed to show any temporal proximity between a weapon and the drug trafficking activity Mr. Garrison was convicted of at trial. The May 22/23, 2014, date does not apply to the conspiracy conviction due to the fact that a variance was found and thus the conspiracy did not extend to the May 22.23, 2014, date.  The government further failed to prove, and did not charge, any facts that constituted a drug trafficking offense on May 22 or May 23, 2014.  The "facts" the government attempts to use to connect Mr. Garrison to a weapon during drug trafficking activity are speculative at best, but more importantly, fail to satisfy the evidentiary standard of preponderance of the evidence when applied to the guideline section.   This conclusion is compelled by *United States v. Castro-Perez*, 749 F.3d 1209 (10th Cir. 2014).

In *Castro-Perez*, the defendant sold a gun and cocaine to an undercover agent on the same day, but at different times. *Id.* at 1210. The district court applied a § 2D1.1(b)(1) enhancement because the sale of the firearm was negotiated at the same time as the drug transaction, because of the temporal proximity of the two sales, and because the gun was sold to a "known drug user." *Id*. The appellate court reversed, holding that the application of this enhancement was error because "there was no physical relation between the weapon and the drug trafficking activity." *Id*. at 1211. The Court explicitly rejected the contention that proof of an ongoing conspiracy excused the government from establishing that the firearm was spatially close to specifically identifiable drug-trafficking activities". *Id.*  When a firearm is not

5

physically near drugs or trafficking activities, the "increased danger" of mixing drugs and guns contemplated by the Guidelines is not present. *See* U.S.S.G. § 2D1.1 app. cmt. n.11(A); *United States v. Flores,* 149 F.3d 1272, 1280 (10th Cir.1998).

3.  The government asserts that Mr. Garrison should be subject to a 2-level increase pursuant to U.S.S.G. § 2D1.1(b)(12) as the defendant maintained a premise for the purpose of manufacturing or distributing a controlled substance.   The preliminary PSR did not assign Mr. Garrison a 2-level increase pursuant to this guideline section.  The 2-level increase should not apply.

   a.  The defendant rejects the contention made by the government that he used the residence on 13th Avenue on a regular and continuous basis to distribute illegal narcotics.  The evidence, in the light most favorable to the government, established that the house on 13th Avenue was used on an infrequent and irregular basis to distribute and/or store illegal narcotics.[1]  Instead, the evidence clearly showed, by a preponderance of the evidence, that the house on 13th Avenue was primarily used as a home, both by Mr. Garrison and his girlfriend.  Thus, the licit use of the home was the primary use of the 13th Avenue home.

   b.  An application note to § 2D1.1(b)(12) explains that "[m]anufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or

---

[1] Defendant is not confessing guilt, nor admitting guilt by so arguing.

principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises." § 2D1.1, cmt., n.17. Courts applying the above-quoted language "should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes." *Id.*

c.  Any defendant convicted of a federal drug crime who "maintained a premises for the purpose of manufacturing or distributing a controlled substance" is eligible for an enhanced sentence. U.S.S.G. § 2D1.1(b)(12). The enhancement applies to anyone who "(1) knowingly (2) opens or maintains any place (3) for the purpose of manufacturing or distributing a controlled substance." *United States v. Johnson*, 737 F.3d 444, 447 (6th Cir. 2013). As to the third element, the application note explains that a drug trade "need not be the sole purpose" for maintaining the place. U.S.S.G. § 2D1.1 cmt., n.17. It need only amount to a "primary or principal use[]," as opposed to an "incidental or collateral use[]." *Id.* Also important, the drug activity may occur in just a portion of a house, such as a "room" or "enclosure." *Id.*; *Johnson*, 737 F.3d at 447.

d.  In making an assessment as to the primary or principal use, as opposed to an incidental or collateral use, the defense assert that a court should look at the primary or principal use of the home, or some part of it, by comparing the frequency of lawful to unlawful use. Thus, applying both the guideline section, application notes, and relevant case law, the government failed to

establish that the frequency of unlawful use overrides the frequency of lawful use for the 13th Avenue home as the evidence was clear that even in the light most favorable to the government, the 13th Avenue home was primarily used as a home.  The licit use far outweighs the illicit use.

Wherefore, for the reasons stated herein, defendant requests the Court deny the government's objections to the Presentence Report.

DATED at Denver, Colorado this 19th day of June 2017.

Respectfully submitted,

*/s/ Miller Leonard*
Miller Leonard, Esq., #41029
14143 Denver West Parkway, Suite 100
Golden, CO 80403
Ph:     (720) 613-8783
Cell:   (303) 907-9516
Fax:    (720) 613-8782
Email:  Miller@themillerleonardlawfirm.com
ON BEHALF OF DEFENDANT GARRISON

/s/ Sean McDermott
McDermott Stuart & Ward LLP
One Sherman Place
140 East 19th Avenue, Suite 300
Denver, CO 80203
303-832-8888
303-863-8888 (fax)
 smcdermott@mswdenver.com

**<u>CERTIFICATE OF SERVICE,</u>**

I hereby certify that on the 19th day of June, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in the case.


<u>Miller Leonard</u>