FILED
United States Court of Appeals
Tenth Circuit

January 23, 2019

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

RICKY GARRISON, a/k/a "G",

    Defendant - Appellant.

No. 18-1053
(D.C. No. 1:14-CR-00231-WJM-1)
(D. Colo.)

_____

ORDER AND JUDGMENT[*]
_____

Before **McHUGH**, **MORITZ**, and **EID**, Circuit Judges.
_____

Ricky Garrison was indicted with fifteen others on drug trafficking and related offenses arising from an alleged large-scale conspiracy to distribute cocaine, heroin and methamphetamines. Garrison was convicted on twenty counts after a jury trial and now appeals his convictions on three grounds: (1) the district court abused its discretion in denying him leave to file an untimely motion to suppress; (2) the evidence was insufficient to support his conspiracy conviction; and (3) he received

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

ineffective assistance of counsel. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

Garrison was charged in the indictment with 53 counts of drug and weapons offenses and one count of enabling interstate prostitution. The indictment followed an investigation in which law enforcement obtained orders authorizing a succession of wiretaps on Garrison's phone and those of some of his co-defendants, including Francisco Ramirez. The telephone calls and text messages intercepted under the wiretaps were the basis for many of the charges in the case.

Garrison filed a motion to suppress the wiretap evidence, which the district court denied. He also moved for leave to file a second, untimely motion to suppress this evidence, which the district court also denied. Garrison proceeded to trial, where the jury convicted him on one count of conspiracy to distribute and possess with intent to distribute cocaine, cocaine base, or methamphetamine, and nineteen counts of using a communications device to facilitate a drug offense. Before the jury's verdict, Garrison unsuccessfully moved for judgment of acquittal on the conspiracy count, arguing that the evidence showed only a buyer-seller relationship. The court sentenced Garrison to 156 months of imprisonment on the conspiracy count with a concurrent sentence of 48 months on the use-of-communications counts. Garrison timely appealed from the judgment of conviction.

# DISCUSSION

## A. Denial of leave to file an untimely motion to suppress the wiretap evidence

Garrison argues the district court abused its discretion in denying him leave file a second, untimely motion to suppress the wiretap evidence. *See* Fed. R. Crim. P. 12(c)(3) (stating court "may consider" an untimely pretrial motion "if the party shows good cause"). Under this standard, we will not disturb the district court's decision unless we have "a definite and firm conviction that it made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *United States v. Messner*, 107 F.3d 1448, 1454 (10th Cir. 1997) (internal brackets and quotation marks omitted). We discern no abuse of discretion in the district court's refusal to consider Garrison's untimely motion.

The district court set and then extended the deadline for filing suppression motions several times in the first two years of this case. As most relevant here, it issued an order in July 2015 setting a deadline for discovery motions and for filing "[a]ll suppression motions, including wiretap suppression motions (four corners and non-four corners)." R. Vol. 1 at 211. The deadline for filing suppression motions was 60 days after the hearing on discovery issues. *Id.* The district court decided the discovery motions on December 3, 2015, without a hearing, which made February 1, 2016, the deadline for filing all wiretap and other suppression motions. Garrison did

not file a motion to suppress the wiretap evidence by this deadline or seek an extension to do so.[1]

Two months after the February 1 deadline passed, Garrison asked the court to vacate this deadline and reopen the filing period, citing the recent withdrawal of his counsel as cause. The court concluded it had "more than adequate reason to deny" this request outright in light of Garrison's failure to meet the February 1 deadline, but nonetheless granted Garrison's request "solely in the interests of justice." R. Vol. 1 at 518. The court set May 6, 2016, as the new deadline for filing all wiretap and other suppression motions. *Id.*

Garrison filed a motion to suppress the wiretap evidence by the extended May 6 deadline. As relevant here, Garrison argued in his motion that all wiretap evidence must be suppressed because the judge that authorized the first wiretap order in the chain, on co-defendant Ramirez's phone, incorrectly concluded the wiretap was necessary as required by 18 U.S.C. § 2518(3)(c) (issuing judge must determine that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous"). The purpose of this "necessity" requirement is "to ensure that wiretapping, which is relatively intrusive compared with other investigative methods, is not used in situations where traditional investigative techniques would be sufficient to expose the criminal activity." *United States v. Zapata*, 546 F.3d 1179, 1185-86 (10th Cir. 2008). The issuing judge

---

[1] A defendant's failure to timely file a motion to suppress constitutes a waiver. *See United States v. Vance*, 893 F.3d 763, 769 & n.5 (10th Cir. 2018).

independently makes the necessity and other required determinations based on the facts submitted by the government. *See* 18 U.S.C. § 2518(3).

Garrison argued surveillance of Ramirez's phone was not necessary based primarily on the government's use of a confidential informant referred to as CHS-1 in its affidavit supporting the Ramirez wiretap. First, Garrison argued the information the government included in the affidavit regarding its use of CHS-1 demonstrated that traditional investigative techniques were working and that a wiretap was therefore not necessary. Second, Garrison asserted, as he had in a previous court filing, that he knew the identity of CHS-1 and that the government had omitted material information from the affidavit concerning this individual, information that if included would have further demonstrated that the Ramirez wiretap was not necessary. Garrison also identified CHS-1 by name in his suppression motion and recited detailed evidence from the record regarding this individual that he claimed was material and improperly omitted from the wiretap affidavit.

In his suppression motion Garrison also requested discovery of "all information about CHS-1 from the law enforcement and prosecution agencies involved in this investigation." R. Vol. 2 at 93. Garrison asserted this information was necessary for him "to complete a *Franks* argument and affidavit." *Id*.

A "*Franks* argument" seeks to suppress evidence obtained as a result of a search warrant or wiretap authorization under *Franks v. Delaware*, 438 U.S. 154 (1978). Under *Franks*, a criminal defendant may challenge a facially sufficient affidavit for a wiretap authorization on the ground that investigators knowingly,

intentionally, or recklessly included false information in the affidavit or omitted material information from it. *See United States v. Green*, 175 F.3d 822, 828 (10th Cir. 1999) (citing *Franks*). "If a wiretap affidavit omits material information that would vitiate either the necessity or the probable cause requirements had it been included, the resultant evidence must be suppressed." *Id.* at 828. Garrison's argument in his May 6 motion that the government omitted material information regarding CHS-1 from the affidavit supporting the Ramirez wiretap was thus a *Franks* argument. *See id.*

To prevail on a motion to suppress under *Franks*, the defendant must establish by a preponderance of the evidence that the government intentionally or recklessly included false statements or omitted material information from the affidavit and, further, that when these failings are corrected the affidavit was insufficient to support the warrant or authorization. *See Franks*, 438 U.S. at 155-56. The Supreme Court contemplated that an evidentiary hearing is necessary for a defendant to make this showing. *See id.*; *United States v. Yeje-Cabrera*, 430 F.3d 1, 8 (1st Cir. 2005) (observing with respect to a motion to suppress wiretap evidence that "[a] *Franks* hearing . . . is the proper route for addressing" the concern that "government omitted material information that would have prevented a finding of necessity"). But such government affidavits are presumed to be valid, so to receive a *Franks* hearing and an opportunity to present these challenges a defendant must first make "a substantial preliminary showing" that he or she can meet this standard. *Franks*, 438 U.S. at 155-56; *see id.* at 171-72. This preliminary showing must include an offer of proof, and the defendant must provide supporting

affidavits or satisfactorily explain their absence. *Id.* at 171; *United States v. Herrera*, 782 F.3d 571, 573 (10th Cir. 2015).

Garrison did not request a *Franks* hearing in his timely filed motion to suppress or attempt to make the required preliminary showing even though he made a *Franks*-based argument there. Instead, almost eight weeks later, Garrison filed a motion for leave to file a second, now untimely, motion to suppress "pursuant to the holdings in *Franks v. Delaware*." R. Vol. 1 at 542. Garrison cited the government's recent confirmation that Garrison had correctly identified CHS-1 as the basis for his request and suggested he was unable to bring a *Franks* motion without this confirmation.

The district court rejected this rationale and denied Garrison's motion for leave initially and on reconsideration. In so doing, the district court noted it had already reopened the period for filing suppression motions once at Garrison's urging. It further concluded that Garrison had failed to demonstrate that he could not bring a *Franks*-based motion regarding the wiretap affidavit and CHS-1 earlier in the proceeding, particularly since Garrison had reported his identification of CHS-1 in both his timely filed, May 6 motion to suppress and in his October 2015 discovery motions filed more than eight months earlier.[2]

---

[2] In fact, in its December 2015 order denying Garrison's discovery motions, the district court observed that not only did Garrison's attorneys claim to know CHS-1's identity, "they also seem to know many details about CHS-1 that could arguably support a claim that the Government was not sufficiently forthcoming to the judge that issued the wiretaps." R. Vol. 1 at 407.

Garrison argued to the district court and argues again on appeal that the latter conclusion is erroneous because without confirmation of CHS-1's identity he could not make the required "substantial preliminary showing" that the government had intentionally or recklessly omitted information regarding CHS-1 from its affidavit that was material to the issuing judge's necessity determination. The district court was not persuaded, and we find no abuse of discretion in this determination. First, Garrison cites no authority in support of this proposition. Second, Garrison had no difficulty making and supporting a *Franks* argument regarding alleged material omissions concerning CHS-1 in his timely May 6 motion to suppress based on his belief as to CHS-1's identity. In fact, the allegedly material omissions and supporting evidence Garrison reported there were repeated in the *Franks* motion he later proffered in connection with his motion for leave to file a second, untimely motion to suppress.[3] In addition, to the extent confirmation of CHS-1's identity was necessary to his *Franks* motion, Garrison's identification of CHS-1 in his timely motion to suppress effectively forced the government to confirm this identification so it could respond to Garrison's material omission/*Franks* argument there. As the district court noted, Garrison could have achieved the same result through a *Franks* motion timely filed by the May 6 deadline.

---

[3] We also note that when Garrison requested disclosure of information regarding CHS-1 in his October 2015 discovery motion, on the ground that the requested information was "necessary in order to fully present a *Franks* challenge," he specifically stated that he did *not* need the government to disclose CHS-1's identity because he already knew it. R. Vol. 1 at 306-07 & n.2.

The district court did not abuse its discretion in denying Garrison leave to file an untimely *Franks* motion.

### B. Sufficiency of the evidence supporting conspiracy conviction

Garrison argues the district court erred in denying his motion for acquittal because the government failed to prove he was engaged in a conspiracy. To obtain the conspiracy conviction, the government was required to prove: (1) an agreement between Garrison and at least one other person to violate the law; (2) Garrison's knowledge of the essential objectives of the conspiracy; (3) his knowing and voluntary participation in the conspiracy; and (4) interdependence among the co-conspirators. *See United States v. Cornelius*, 696 F.3d 1307, 1317 (10th Cir. 2012). Garrison argues the government failed to prove the first and fourth elements, an agreement to distribute drugs and an interdependence among the co-conspirators, because the evidence only showed a series of buyer-seller relationships. Under our precedent, a buyer-seller relationship shields end-user consumers from a drug conspiracy conviction, but not buyers who "intend to redistribute the drugs for profit, thereby furthering the objective of the conspiracy." *Id.* at 1317-18 (internal quotation marks omitted).[4] We review the sufficiency of the evidence supporting Garrison's conspiracy conviction de novo, viewing all evidence in the light most favorable to the

---

[4] Garrison cites case law from other circuits in arguing that a reseller can also benefit from the buyer-seller rule, but we have rejected this contention as "contrary to this court's precedent." *United States v. Gallegos*, 784 F.3d 1356, 1360 (10th Cir. 2015) (rejecting argument that "a drug purchaser does not enter into a conspiracy with his supplier simply by reselling the drugs to his own customers" (internal quotation marks omitted)).

9

jury verdict and drawing all reasonable inferences in support of that verdict. *See United States v. Wright*, 506 F.3d 1293, 1297 (10th Cir. 2007).

In this case there was sufficient evidence supporting the jury's conspiracy verdict. In particular, the government presented evidence of more than a simple buyer-seller relationship between Garrison and his suppliers. For example, trial testimony and other evidence showed that Garrison made repeated weekly and sometimes daily drug purchases from at least three different suppliers for the purpose of resale rather than his own personal use. The government also presented evidence that Garrison and his suppliers worked together in fulfilling the requests of Garrison's customers and that one of Garrison's suppliers, Ramirez, contacted Garrison when he had extra drugs available and sold him drugs on credit on one occasion. There was also testimony at trial that Garrison and a supplier shared "magic cut," a substance they used to add weight to the drugs so they could be sold at a higher profit. In addition, Garrison referred to one of his suppliers, Ramirez, as his "partner." Suppl. R. Vol. 1 at 72. This evidence was sufficient for a rational jury to infer that there was an agreement between Garrison and one or more of his suppliers to distribute drugs and that his relationship with his co-conspirators was interdependent. *See, e.g., United States v. Carter*, 130 F.3d 1432, 1439 (10th Cir. 1997) (stating jury may "infer an agreement constituting a conspiracy from the acts of the parties and other circumstantial evidence indicating concert of action for the accomplishment of a common purpose" (internal quotation marks omitted)); *Wright*,

506 F.3d at 1299 (stating buyer-seller relationship where participants knew that drugs were being purchased for resale "is patently an interdependent one").

### C. Ineffective assistance of counsel

Garrison also argues his convictions must be reversed and that he is entitled to a new trial due to ineffective assistance of counsel. Garrison did not contend that his counsel was ineffective before the district court, though he arguably suggested as much in his motion asking the district court to reconsider its denial of his motion for leave to file an untimely *Franks* motion. *See* R. Vol. 3 at 226-27 (arguing Garrison had asked his prior counsel to file a *Franks* motion and that their failure to timely do so before withdrawing in February 2016 was good cause for the court to reset the pretrial deadline motion for a second time). Garrison also asserted the district court's denial of his motion for leave to file an untimely *Franks* motion itself denied his right to effective assistance of counsel. *Id.* at 226. The district court did not address these contentions in its order denying Garrison's motion for reconsideration.

Under these circumstances, we will not consider Garrison's ineffective-assistance claims. We have long held that "[i]neffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal." *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc). We adopted this rule because

> [a] factual record must be developed in and addressed by the district court in the first instance for effective review. Even if evidence is not necessary, at the very least counsel accused of deficient performance can explain their reasoning and actions, and the district court can render its opinion on the merits of the claim.

*Id.* (footnoted omitted). The district court's opinion is particularly important to our review because "the district court is familiar with the proceedings and has observed counsel's performance, in context, firsthand." *Id.* The district court is also well-positioned to assess whether counsel's performance, even if ineffective, prejudiced his defense as required for relief. *See Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984) (in addition to showing counsel's assistance was deficient, defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"); *see also Massaro v. United States*, 538 U.S. 500, 505 (2003) ("[I]neffective-assistance claims ordinarily will be litigated in the first instance in the district court, the forum best suited to developing the facts necessary to determining the adequacy of representation during an entire trial.").

Garrison is correct that in rare instances we will review an ineffective assistance of counsel claim on direct appeal, but "only where the issue was raised before and ruled upon by the district court *and* a sufficient factual record exists." *United States v. Battles*, 745 F.3d 436, 457 (10th Cir. 2014) (internal quotation marks omitted). Neither circumstance is present here, because the factual record is not fully developed and the district court has not ruled on Garrison's ineffective-assistance claims. Accordingly, if Garrison wishes to bring an ineffective assistance of counsel claim, he must do so in collateral proceedings.[5]

---

[5] Garrison asserted in his opening brief that he received ineffective assistance of counsel in part because his trial attorney failed to propose two instructions necessary to his theory of defense. When the government pointed out in response that Garrison's counsel had proposed these instructions, Garrison shifted gears in his

## CONCLUSION

The district court's judgment is AFFIRMED.

                                                                         Entered for the Court

                                                                         Allison H. Eid
                                                                         Circuit Judge

---

reply brief to argue that the district court abused its discretion in failing to give these instructions. We decline to review this challenge to the district court's jury instructions because we ordinarily do not consider issues raised for the first time in a reply brief. *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000). To the extent Garrison's opening brief can be read to raise this issue, it was not adequately presented for our review. *See Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1134 n.4 (10th Cir. 2004) ("Scattered statements in the appellant's [opening] brief are not enough to preserve an issue for appeal.").

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT
# OFFICE OF THE CLERK

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Elisabeth A. Shumaker　　　　　　　　　　　　　　　　　　　　　　　　Chris Wolpert
Clerk of Court　　　　　　　　January 23, 2019　　　　　　　　Chief Deputy Clerk

Mr. Ryan Thomas Truskoski
1300-G El Paseo Road, Suite 122
Las Cruces, NM 88001

**RE:**　　**18-1053, United States v. Garrison**
　　　　Dist/Ag docket: 1:14-CR-00231-WJM-1

Dear Counsel:

Attached is a copy of the order and judgment issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40(a)(1), any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. If requesting rehearing en banc, the requesting party must file 6 paper copies with the clerk, in addition to satisfying all Electronic Case Filing requirements. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R.35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Elisabeth A. Shumaker
Clerk of the Court

cc: Karl L. Schock

EAS/at