IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 14-cr-231-WJM-1
Civil Action No. 19-cv-3125-WJM

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,

v.

1.    RICKY GARRISON,

    Defendant-Movant.

---

**UNITED STATES' RESPONSE TO MOTION UNDER 28 U.S.C. § 2255 [DOC. 1478]**
_____

In his § 2255 motion (Doc. 1478), Garrison contends that he received ineffective assistance of counsel from both of his trial attorneys and his appellate attorney. The motion should be denied. Garrison has failed to show that any of his attorneys were constitutionally deficient or that he was prejudiced by any of their alleged errors.

## BACKGROUND

Garrison was charged and convicted for his role in a conspiracy to distribute cocaine, cocaine base, and methamphetamine. The jury found Garrison guilty of the conspiracy, as well as 19 counts of using a communications device to facilitate a drug offense. Doc. 1283. It found him not guilty as to drug quantities that would have increased his statutory minimum—namely, at least 500 grams of cocaine and 28 grams of cocaine base. *Id.* The Court sentenced Garrison to 156 months. Doc. 1418.

1

Garrison's motion centers on three phases of the proceedings: plea negotiations, pretrial motions, and sentencing.  The most pertinent facts are set forth here, with additional details addressed below in the context of the claim to which they relate.

I. **Garrison twice rejects the plea agreement proposed by the government.**

Before the pretrial motion deadline, the government offered Garrison a plea agreement that included a sentence of 70 months, which the government characterized as "an extreme concession."  Mot., Ex. D.  Garrison rejected the plea offer.  *Id.*

One week later, Garrison's counsel withdrew, citing irreconcilable differences.  Docs. 780, 783.  Although those differences were not stated in the motion, Garrison asserted that the withdrawal was "because [he] didn't accept the plea agreement assigned counsel tried to coerce [him] into taking."  Doc. 789 (Mot. for Bond Reconsid.).

New counsel was appointed, and two months later, the government made Garrison the same plea offer it had made to Garrison's previous counsel.  Ex. 1.  Specifically, the government again offered to stipulate to a sentence of 70 months if Garrison pleaded guilty to the conspiracy charge.  *Id.*  Garrison did not accept the offer.

II. **Garrison's counsel moves unsuccessfully to suppress the wiretap evidence, but does not file a timely motion under *Franks v. Delaware*.**

The evidence against Garrison included wiretaps.  Law enforcement had first obtained an order authorizing a wiretap of a phone used by an individual named Francisco Ramirez.  Doc. 1338 (Tr. of Trial, Day 1), at 19-20.  As relevant here, the supporting affidavit explained that a confidential source, CHS-1, had provided information to investigators about the drug distribution activities of Garrison and Ramirez.  Doc. 1004, Ex. B, at 56-58.  It explained that CHS-1 was an associate of the

2

two men, but that CHS-1 had limitations that necessitated the use of a wiretap: CHS-1 was not in a position to purchase narcotics from the targets of the investigation or to introduce an undercover agent to anyone other than Ramirez.  *Id.* at 58, ¶ 133.

Garrison's counsel moved to suppress all wiretap evidence on the ground, among other things, that the government had failed to satisfy the necessity requirement.  Doc. 939.  The motion identified CHS-1 and asserted that the source "had multiple, detailed, in depth ties to [Ramirez]" that undercut the necessity of the wiretap.  *Id.* at 22.  It also stated that facts regarding the relationship between CHS-1 and Ramirez were "withheld from the issuing judge."  *Id.* at 25.  But counsel did not initially file a separate motion under *Franks v. Delaware*, 438 U.S. 154 (1978), claiming material omissions in the affidavit, because the government had not confirmed CHS-1's identity.  Doc. 1033 at 2; Doc. 1051 at 2-5.  After the government confirmed CHS-1's identity, counsel moved for leave to file a *Franks* motion, which the Court denied.  Docs. 1033, 1035, 1053.

The Court denied the motion to suppress.  Doc. 1076.  It noted the "close social relationship" between CHS-1 and Ramirez.  *Id.* at 19.  But it rejected the implication that such a relationship necessarily would have allowed CHS-1 to uncover the entire conspiracy.  *Id.* at 20.  The Court therefore found that the affidavit sufficiently showed that "traditional investigative techniques had reached their reasonable limits."  *Id.*

### III. The Court accepted the government's estimates of minimum drug quantities, which resulted in a base offense level of 30.

Garrison's offense level was driven primarily by the drug quantity attributable to him.  Relying on trial testimony and information provided by co-conspirators, the government presented estimates that, properly calculated, supported a total amount of

3

at least 1,268 kilograms of marijuana equivalency.[1]  Doc. 1311 (U.S. Sentencing Statement), at 2-8.  The Presentence Investigation Report (PSR) correctly calculated the total as 1,268.27 kilograms.  Doc. 1367 at ¶ 63.  That drug quantity produced a base offense level of 30.  U.S.S.G. § 2D1.1(c)(5).  Garrison argued that he could not be held accountable for any quantities beyond what was found by the jury.  Doc. 1317, at 7.

The Court rejected Garrison's argument.  Doc. 1428 (Tr. of Sentencing Hr'g), at 33-34.  It credited the government's estimates and found that the evidence supported at least the quantity of drugs sufficient to trigger a base offense level of 30.  *Id.*  After a two-level enhancement, the Court found that the total offense level was 32.  *Id.* at 48.

Later in the hearing, the Court addressed Garrison's motion for a non-guideline sentence.  In ruling on that motion, the Court reiterated its finding that Garrison was involved in the purchase of at least 1.232 kilograms of cocaine, and that he redistributed that amount in the form of both powder and cocaine base.  Doc. 1428 at 87:23-88:3.  The Court also found that Garrison had produced and redistributed at least 225 grams of cocaine—which appears from context actually to be a reference to cocaine *base*.  *Id.* at 88:3-6; *see also* Doc. 1311 at 7 (stating that Garrison redistributed 225.75 grams of base).  But in restating its prior finding as to total drug quantity, the Court erroneously

---

[1] This amount is calculated by adding the minimum quantities purchased to the minimum quantities redistributed, as set forth in the government's sentencing statement. The government's sentencing statement, despite calculating both amounts purchased and amounts redistributed, mistakenly includes only the purchased amount in its ultimate conclusion as to the minimum drug quantity.  The sentencing statement also contains a miscalculation of the marijuana equivalency of the redistributed amounts of cocaine base, by a factor of 1000.  The total of 806,153.25 kilograms should be 806.153 kilograms.  These corrections produce a total minimum quantity of 1,268.26 kilograms—which is consistent with the calculation contained in the PSR.  Doc. 1367 at ¶ 63 & n.1.

4

referred only to the purchased amount of 373.957 kilograms of marijuana equivalency. Doc. 1428 at 88:7-10; *compare* Doc. 1311 at 7.  The Court granted Garrison's motion in part and imposed a total sentence of 156 months' imprisonment.  Doc. 1428 at 88-89.

### IV. The Tenth Circuit affirms Garrison's convictions.

Garrison appealed his conviction on three grounds: (1) that the Court abused its discretion in denying him leave to file the *Franks* motion; (2) that there was insufficient evidence to support his conviction; and (3) that his counsel was ineffective in failing to ask for certain jury instructions.  The Tenth Circuit affirmed.  *United States v. Garrison*, 761 F. App'x 808 (10th Cir. 2019) (unpublished).  As relevant here, the Tenth Circuit concluded that Garrison's motion to suppress had included a *Franks* argument.  *Id.* at 811.  The Tenth Circuit did not address the ineffective assistance claim.  *Id.* at 813-14.

## RULE 5 STATEMENT AND TIMELINESS

Garrison has not previously used any other federal remedies or filed any prior post-conviction motions, and no evidentiary hearings have been conducted.

The motion is timely.  A § 2255 motion is timely if it is filed within one year of the judgment of conviction becoming final.  28 U.S.C. § 2255(f)(1).  The Tenth Circuit affirmed Garrison's conviction on January 23, 2019.  *Garrison*, 761 F. App'x 808.  Thus, his conviction became final on April 22, 2019, when his deadline for filing a petition for certiorari expired.  *United States v. Burch*, 202 F.3d 1274, 1276 (10th Cir. 2000).

## LEGAL STANDARD

To prevail on a claim of ineffective assistance of counsel, Garrison must show that: (1) his counsel's representation was objectively unreasonable under prevailing

professional norms; and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  Under the first prong of this test, Garrison must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.  Under the second prong, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  The Court must give "considerable deference to an attorney's strategic decisions and recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Bullock v. Carver*, 297 F.3d 1036, 1044 (10th Cir. 2002).

## ARGUMENT

**I.   Counsel was not ineffective for failing to file a meritless *Franks* motion.**

Garrison first contends that his counsel was ineffective for failing to file a timely *Franks* motion on the ground that the wiretap affidavit omitted information regarding the relationship between CHS-1 and the target.  But as the Tenth Circuit held, Garrison's counsel asserted that argument in the motion to suppress, and this Court rejected it. *Garrison*, 761 F. App'x at 811 ("Garrison's argument in his [motion to suppress] . . . was thus a *Franks* argument."); Doc. 939 at 25 (asserting that "facts were withheld from the issuing Judge").  It was not unreasonable for counsel not to file a separate *Franks* motion when there was no reasonable basis for such a motion.  Nor was Garrison prejudiced because such a motion, if it had been filed, would have been denied.

6

A defendant challenging a wiretap under *Franks* based on alleged omissions in the affidavit must show that the omissions were material. *United States v. Green*, 175 F.3d 822, 828 (10th Cir. 1999). In this context, that means that the omitted information would "vitiate" necessity if it had been included. *Id.* The necessity requirement is satisfied if "normal investigatory techniques have been tried and failed or [if] they reasonably appear to be unlikely to succeed if tried, or to be too dangerous to try." *United States v. Verdin-Garcia*, 516 F.3d 884, 890 (10th Cir. 2008) (quotation omitted).

The alleged omissions here—details regarding the disclosed relationship between CHS-1 and the target—were not material. As this Court has already found, the wiretap affidavit expressly acknowledged the relationship and explained why, despite that relationship, it was not possible for CHS-1 to further infiltrate the organization. Doc. 1076 at 19-21; Doc. 1004, Ex. B, at 58, ¶ 133. None of the additional details Garrison cites about the nature of the relationship undermine that assertion. *Cf. United States v. Small*, 423 F.3d 1164, 1175-76 (10th Cir. 2005) (holding that failure to inform court of relationship between informant and defendant was not material omission in light of limitations on informant). Nor would a hearing have helped Garrison's cause when the alleged facts did not matter. Thus, a *Franks* motion would have been futile. *See United States v. Afflerbach*, 754 F.2d 866, 870 (10th Cir. 1985) ("Effective assistance does not demand that every possible motion be filed, but only those having a solid foundation.").

Moreover, Garrison's counsel explained *why* he did not file a *Franks* motion earlier: he did not believe he could do so until the government had confirmed the identity of CHS-1. Doc. 1051 at 3, 5. Although this Court disagreed, that does not

7

make counsel's contrary view "completely unreasonable." *Gonzales v. McKune*, 247 F.3d 1066, 1072 (10th Cir. 2001), *vacated in part on other grounds*, 279 F.3d 922 (10th Cir. 2002). And in any event, counsel could have reasonably chosen not to risk clouding his non-*Franks* necessity argument with a dubious *Franks* allegation. Even the failure to raise a *meritorious* Fourth Amendment issue, which this was not, cannot alone establish ineffective assistance. *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986). The failure must be due to "gross incompetence" of the attorney. *Id.* Counsel's reasoned decision here—right or wrong in hindsight—falls well short of that standard.

Garrison's claim also fails because he cannot show prejudice. To show prejudice, Garrison must prove that the *Franks* motion would have been meritorious. *Kimmelman*, 477 U.S. at 375. He cannot do so. As noted above, this Court found that the relationship between CHS-1 and the wiretap target did not undermine necessity because of limitations on CHS-1's ongoing utility. Doc. 1076 at 19-21. That conclusion did not depend on the specific nature of the relationship or the ways in which that relationship was manifested. Thus, even if all of those details were true and included in the wiretap affidavit, they would not have affected—much less "vitiated"—the necessity determination. *Green*, 175 F.3d at 828. Without a showing that the omitted information was material to necessity, the *Franks* motion would fail. *Small*, 423 F.3d at 1172.

II.  **Garrison's assertion that he attempted to accept the government's plea offer is inconsistent with his prior representations to the Court and cannot show prejudice because the government later made the same offer.**

Garrison's second claim is that his first counsel impeded Garrison's attempt to accept the government's plea offer of a 70-month sentence. This claim fails for two

8

reasons. First, Garrison's allegation that he attempted to accept the offer is inconsistent with his contemporaneous representation to the Court that he did not accept the offer. Second, even accepting Garrison's allegations as true, he did not suffer any prejudice because the government later gave Garrison another opportunity to take the offer.

On January 29, 2016, Garrison's counsel conveyed to Garrison the government's plea offer of 70 months' imprisonment. Mot., Ex. D. Garrison rejected that offer and proposed 60 months. *Id.* The government explained that 70 months was as low as it was willing to go and gave Garrison the opportunity to reconsider that offer. *Id.* This much, Garrison does not dispute. But Garrison now claims that, three days later, he attempted to call his counsel to accept the offer, and counsel refused to accept his calls.

The problem for Garrison is that he told the Court otherwise. On February 12, 2016, Garrison stated in a court filing that his counsel had withdrawn because Garrison did *not* accept the plea agreement:

> I have just received confirmation of the withdrawal of my attorney on my behalf. Motion states conflict of interest but, factually it's because I didn't accept the plea agreement assigned counsel tried to coerce me into taking.

Doc. 789. That representation undercuts Garrison's new allegation that he tried to tell his attorney to accept the offer. Counsel could not have been ineffective in failing to accept a plea offer that Garrison himself told the Court he did not want to accept.[2]

But even accepting Garrison's new allegations as true, he cannot show that he was prejudiced because the government made the same offer through his replacement

---

[2] Garrison also complains, somewhat inconsistently, that his counsel acted improperly in advising him to accept the plea. That allegation cannot support a claim because Garrison did not accept the plea, and thus, suffered no prejudice.

9

counsel three months later. The government did not cancel the 70-month offer when Garrison initially failed to accept it. Rather, on April 21, 2016, the government sent Garrison's second counsel a letter, renewing the 70-month offer. Ex. 1. Garrison does not claim to have accepted, or attempted to accept, this offer. That offer eliminated any prejudice that Garrison could have suffered as a result of his first counsel's alleged ineffective assistance. *Cf. Lafler v. Cooper*, 556 U.S. 156, 164 (2012) (holding that defendant must show that, but for ineffective assistance, he would have accepted plea).

### III. Garrison's appellate counsel was not ineffective for failing to appeal Garrison's sentence.

Garrison contends that his appellate counsel was ineffective for failing to raise two sentencing arguments on appeal: (1) that the Court was bound by the jury verdict as to drug quantity; and (2) that the Court miscalculated Garrison's base offense level.

To prevail on these claims, Garrison must show that: (1) counsel's failure to raise these arguments was objectively unreasonable; and (2) there is a reasonable probability that Garrison would have prevailed on those arguments on appeal. *Neil v. Gibson*, 278 F.3d 1044, 1057 (10th Cir. 2001). The Sixth Amendment does not require appellate counsel to raise every conceivable issue—or even every nonfrivolous issue. *Banks v. Reynolds*, 54 F.3d 1508, 1515 (10th Cir. 1995). To the contrary, the "hallmark of effective appellate advocacy" is the ability to "winnow[] out weaker arguments" and focus on those more likely to prevail. *Smith v. Murray*, 477 U.S. 527, 536 (1986). Thus, when considering a claim that counsel performed deficiently by failing to raise an issue on appeal, this Court should look to the merits of the omitted issue. *Neil*, 278 F.3d

1044, 1057 (10th Cir. 2001). If the omitted issue is meritless, its omission will not constitute deficient performance. *Miller v. Mullin*, 354 F.3d 1288, 1298 (10th Cir. 2004).

### A. Tenth Circuit precedent forecloses the argument that the Court is bound at sentencing by the jury verdict regarding drug quantity.

In a special verdict, the jury found Garrison guilty of conspiring to distribute and possess with intent to distribute less than 500 grams of cocaine and less than 28 grams of cocaine base. Doc. 1283 at 2-3. It found him not guilty of conspiring to distribute greater than these amounts. *Id.* Garrison contends that his appellate counsel was ineffective by failing to argue, as his trial counsel did, that the Court was precluded at sentencing from finding a quantity of drugs higher than that found by the jury.

This argument is foreclosed by Tenth Circuit precedent. *United States v. Magallenez*, 408 F.3d 672, 685 (10th Cir. 2005). In *Magallenez*, the defendant made the exact argument Garrison wishes his appellate counsel had made here, and the Tenth Circuit rejected it. It held that, in calculating drug quantities for sentencing purposes under the guidelines, the sentencing court is *not* bound by the jury's determination of drug quantity. *Id.* at 682, 685. That is because a jury must find facts beyond a reasonable doubt, while the sentencing court need only find facts by a preponderance of the evidence. *Id.* at 684; *see also United States v. Todd*, 515 F.3d 1128, 1137 (10th Cir. 2008) (reaffirming that acquitted conduct can be considered for sentencing purposes). It was not unreasonable for Garrison's counsel to omit an argument that was foreclosed by precedent. Nor could Garrison have prevailed.

Garrison contends his counsel could have relied on *United States v. Pimentel-Lopez*, 859 F.3d 1134 (9th Cir. 2016), in which the Ninth Circuit held that the sentencing

court was bound by the jury's special verdict as to drug quantity.  But *Pimentel-Lopez* would not have helped Garrison for two reasons.  First, it is contrary to the law of this circuit (and most other circuits).  *See Pimentel-Lopez,* 859 F.3d at 1141 (noting contrary holding of Tenth Circuit in *Magallenez,* as well as Eighth, First, and Seventh Circuits).  Second, *Pimentel-Lopez* was premised on an affirmative finding by the jury that the drug quantity was less than a specified amount.  *Id.*  Here, in contrast, the jury "merely acquitted [Garrison] of possessing higher quantities."  *Id.*; *see id.* at 1142 (holding that result would have been different under verdict form similar to that used in this case).

Garrison also seems to suggest that his counsel should have appealed this Court's factual finding as to drug quantity on the ground that the government witnesses were not credible.  But factual findings regarding drug quantities are reviewed on appeal for clear error and are reversed only if they are without factual support in the record or definitely mistaken.  *United States v. Dalton*, 409 F.3d 1247, 1251 (10th Cir. 2005).  The drug quantity may be based upon an estimate, so long as the estimate "contains some record support and is based on information bearing minimum indicia of reliability." *United States v. Dahda*, 852 F.3d 1282, 1294 (10th Cir. 2017) (quotation omitted). Moreover, a sentencing court's witness credibility determinations generally will not be disturbed on appeal.  *United States v. Browning*, 61 F.3d 752, 754-55 (10th Cir. 1995).

Here, there was ample record support for this Court's finding as to drug quantity, as detailed in the PSR and the government's sentencing statement.  Doc. 1367 at ¶¶ 8-20, 39-53.  The government painstakingly detailed the amount of drugs transacted between the defendant and each co-conspirator, with references to the trial testimony

and other evidence. Doc. 1311 at 2-8. This Court's finding was then based on the bottom range of those estimates. This level of detail and conservative approach easily distinguish this case from *Dahda*, in which the district court simply assumed that every shipment of drugs had contained the amount of drugs contained in the largest shipments. 852 F.3d at 1294. Garrison's assertion that the witnesses were not credible does not make this Court's finding clearly erroneous. *See United States v. Dennino*, 29 F.3d 572, 578 (10th Cir. 1994) (upholding calculation based on "uncorroborated statements of individuals of questionable credibility"); *see also* Doc. 1428 at 32:16-17 (finding some witnesses "very credible" and without "controverting evidence").[3]

Thus, any challenge to this Court's finding on drug quantity would have been meritless, and appellate counsel was not objectively unreasonable in omitting that issue. *Miller*, 354 F.3d at 1298. For the same reason, Garrison suffered no prejudice.

**B.     The Court did not plainly miscalculate the offense level.**

The PSR calculated the total quantity of drugs attributable to Garrison to be 1,268.27 kilograms of marijuana equivalency. Doc. 1367 at ¶ 63. Garrison objected to that calculation. Doc. 1352 at 6, ¶ 21. This Court overruled the objection, thus accepting the calculation in the PSR. Doc. 1428 at 33:16-34:2. In doing so, it cited with

---

[3] Garrison also briefly complains of his trial counsel's failure to prepare a competing drug quantity chart. But he does not assert that trial counsel was ineffective in failing to do so; he challenges only appellate counsel's failure to appeal the issue. In any event, Garrison could not show prejudice from trial counsel's failure to parse the drug quantity evidence when Garrison effectively adopts the same all-or-nothing approach in his motion. Like trial counsel, Garrison offers no reasonable ground to drop below the 1000-kilogram threshold, "other than to say [the Court] should accept none of [the evidence]" beyond a few specifically identified transactions. Doc. 1428 at 31.

approval the analysis in the government's sentencing statement, on which the PSR calculation was based. *Id*; *see also* Doc. 1352 at ¶ 63 n.1. As the Court correctly noted, that amount—1,268.27 kilograms—corresponds to a base offense level of 30. U.S.S.G. § 2D1.1(c)(5). There was no error in calculating the offense level.

Garrison nevertheless cites the Court's later statement—in ruling on Garrison's motion for a nonguideline sentence—that the total drug quantity attributable to Garrison was at least 373.957 kilograms of marijuana equivalency. Doc. 1428 at 88:7-10. This was the government's estimate of the minimum amount Garrison *purchased*, and did not include the amounts he redistributed. Doc. 1311 at 7. Garrison argues that this statement reflects a miscalculation of the offense level that should have been appealed.

But the context makes clear that the Court's reference to 373.957 kilograms was simply a misstatement, not an affirmative finding. By the time the Court made this statement, it had already determined the offense level and had found that the total quantity of drugs was at least the amount necessary to trigger a base offense level of 30, i.e., at least 1000 kilograms. *Id.* at 33:25-34:2. And its findings immediately before the 373.957 comment were consistent with that earlier calculation. *Id.* at 87:23-88:6. The Court's subsequent reference to the purchased amount was not intended to modify its earlier finding, but was instead intended as a (mistaken) shorthand for that finding

Garrison's appellate counsel could have reasonably decided not to seize on this misstatement to assert an argument that was inconsistent with the record as a whole. Indeed, the argument would have been even more futile because Garrison did not object to the statement below, meaning that it would have been reviewed for plain error.

14

*See United States v. Chavez-Morales*, 894 F.3d 1206, 1213-14 (10th Cir. 2018).  Based upon the entire record, it certainly is not "clear or obvious" that the Court miscalculated the offense level.  *See United States v. Cosey*, 399 F. App'x 380, 383 (10th Cir. 2010) (holding that misstatement was not plain error).  Moreover, even if Garrison could have prevailed, that success almost certainly would have been in vain because the Court could simply have corrected itself on remand.  Thus, it was not objectively unreasonable for Garrison's appellate counsel to choose not to raise this argument.  *See Miller*, 354 F.3d at 1298 (noting that court should defer to counsel's professional judgment).

## IV.  An evidentiary hearing is not warranted.

An evidentiary hearing is not required if "the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  That is the case here.  Even accepting all of Garrison's allegations as true, he cannot state a claim for ineffective assistance of counsel.  Indeed, the only arguable factual dispute he identifies relates to his communication with his counsel about the government's plea offer.  But as discussed above, he suffered no prejudice from that incident because the plea offer remained open two months later.  Thus, no evidentiary hearing is necessary because there are "no relevant disputed issues of fact that need[] to be resolved."  *United States v. Gonzalez*, 596 F.3d 1228, 1244 (10th Cir. 2010).

## CONCLUSION

Garrison's motion should be denied without a hearing.

DATED December 13, 2019.

Respectfully submitted,

JASON R. DUNN
United States Attorney

*/s/ Karl L. Schock*
KARL L. SCHOCK
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
E-mail: karl.schock@usdoj.gov

Attorneys for United States of America

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**CERTIFICATE OF SERVICE (CM/Colorado)**


I hereby certify that on December 13, 2019, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system. I also certify that a copy will be placed in the U.S. Mail, postage pre-paid and addressed to the following:

Ricky Garrison #40459-013
Federal Correctional Institution
P.O. Box 5000
Pekin, IL 61555


/s/Erin Prall
ERIN PRALL
U.S. Attorney's Office