IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 14-cr-00231-WJM-02

UNITED STATES OF AMERICA,

    Plaintiff,

v.

2.  JAMES TILLMON,

    Defendant.

---

**GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENDANT'S STATEMENT REGARDING SUPERVISED RELEASE VIOLATIONS [ECF 1601] AND DEFENDANT'S MOTION FOR BELOW-GUIDELINE SENTENCE [ECF 1602]**

---

The United States of America, by and through Cole Finegan, United States Attorney for the District of Colorado, and Jena R. Neuscheler, Assistant United States Attorney, hereby submits this Consolidated Response to Defendant's Statement Regarding Alleged Supervised Release Violations [ECF 1601] and Defendant's Motion for Below-Guideline Sentence [ECF 1602].

## Background

On June 4, 2014, the Grand Jury returned an Indictment charging defendant James Tillmon with 11 counts relating to his role in a drug distribution network responsible for the distribution of cocaine, methamphetamine, marijuana, MDMA, and heroin in the Denver metropolitan area. [ECF 10; ECF 846, ¶ 16]. On September 14, 2015, the defendant pled guilty to Count One of the Indictment, which charged a

1

conspiracy to distribute and possess with the intent to distribute one or more of the following controlled substances: (1) more than 500 grams but less than 5 kilograms of a mixture or substance containing a detectable amount of cocaine; (2) more than 28 grams but less than 280 grams of a mixture or substance which contains cocaine base; (3) less than 100 grams of a mixture or substance containing a detectable amount of heroin; (4) less than 50 grams of a mixture or substance containing a detectable amount of methamphetamine.  [ECF 580].

The defendant's guideline range for this offense was 51-63 months.  [ECF 846, ¶¶ 49, 66; ECF 846-1, R-1].  At the February 2016 sentencing hearing, the Court granted in part the defendant's Motion for a Variant Sentence [ECF 708], and ultimately imposed a variant sentence of 40 months' imprisonment, consecutive to the sentence imposed in Denver County District Court, Case No. 12CR10298, to be followed by four years of supervised release.  [ECF 824].

The defendant commenced his term of supervision on October 18, 2021.  [ECF 1600, p. 4].  On June 10, 2022, the Probation Office filed a Petition for Warrant on Person Under Supervision.  [ECF 1586].  The defendant appeared on a summons on June 28, 2022, at which time he was released on conditions, including a condition requiring him to submit to GPS location monitoring.  [ECF 1594, 1596].  The Probation Office filed a Superseding Petition on August 9, 2022.  [ECF 1599].

## Positions Regarding the Final Revocation Hearing

The Superseding Revocation Petition [ECF 1599] sets forth 11 violations of the defendant's terms of supervision.  The defendant intends to admit violations 3, 6, 8, and

9. [ECF 1601].  The parties anticipate a hearing concerning Violations 1, 2, 4, 5, 7, 10, and 11.

### Defendant's Objections to the Supervised Release Violation Report[1]

***Violation 1.***  The defendant denies that he used methamphetamine in March 2022, and states that "[h]e had been using Adderall at the time" and "believes that this [Adderall use] may have caused a positive result for methamphetamine." [ECF 1601, pp. 2-3].  The defendant does not appear to dispute that both of his March 2022 urine samples were provided to Abbott Toxicology, which confirmed that his samples tested positive for methamphetamine.  [Gov't Exs. 1–2; ECF 1599, p. 2].  Instead, the defendant suggests that his Adderall use might somehow account for these test results. Notably, however, the defendant offers absolutely no support for his contention that the use of Adderall can result in a laboratory-confirmed positive test result for methamphetamine.  Nor is the government aware of any authority for that proposition. The defendant's baseless speculation is plainly insufficient to overcome a laboratory-confirmed positive test result. For these reasons, the government respectfully requests that the Court overrule the defendant's objection to Violation 1.

***Violation 2.***  The defendant denies that he used marijuana in April 2022, and states that he "did not use marijuana." [ECF 1601, p. 3].  Once again, the defendant does not appear to dispute that his April 2022 urine sample was provided to Abbott Toxicology, which confirmed that his sample tested positive for marijuana.  [Gov't Ex. 3; ECF 1599, p. 2].  The defendant offers no alternative explanation for this positive test

---

[1] The government notes that the majority of the defendant's objections are factual in nature, and as a result, the Court likely cannot rule on most of these objections until evidence is introduced at the revocation hearing.  For purposes of this response, the government provides a summary of the testimony and/or evidence it anticipates introducing at the hearing.

3

result.  In addition to the confirmatory test, the government notes that the defendant has previously admitted that he "is an addict," [ECF 708, p. 4], and the Presentence Investigation Report reflects that he previously used marijuana on a daily basis, [ECF 846, ¶ 87], which supports the inference that any marijuana ingestion in this case was not accidental.

The defendant further argues that Violation 2 constitutes a Grade C violation, rather than a Grade B violation, "because simple possession of marihuana carries a maximum sentence of one year (21 U.S.C. § 844) and, to be a Grade B violation, it had to carry a potential sentence of more than one year." [ECF 1601, p. 3].  The government disagrees.

To be sure, a Grade B violation requires conduct constituting a "federal, state, or local offense punishable by a term of imprisonment exceeding one year."  U.S.S.G. § 7B1.1(a)(2).  The defendant's use and possession of marijuana satisfies that standard. Simple possession of marijuana ordinarily constitutes a misdemeanor.  18 U.S.C. § 844(a).  However, Title 21, United States Code, Section 844(a) makes it a felony for any individual to possess marijuana "after a prior conviction under this subchapter or subchapter II, or a prior conviction for any drug, narcotic, or chemical offense chargeable under the law of any State."  *Id.*  There is no dispute that the defendant has a prior conviction for violating 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii)(II), (b)(1)(B)(iii), (b)(1)(C), and 846—indeed, this is the underlying conviction for which the Court originally sentenced the defendant.  For these reasons, the defendant's use of marijuana constitutes a Grade B violation, and the government respectfully requests that the Court overrule the defendant's objection to Violation 2.

***Violation 4.***  The defendant denies that he failed to provide a copy of his prescriptions to the Probation Officer, and states that he did ultimately provide her with a copy of his prescription.  [ECF 1601].  The government anticipates that Probation Officer Becker will testify that she instructed the defendant to provide a "current copy" of his prescription "by the end of the day on March 2, 2022."  [ECF 1599, p. 3].  The defendant did not follow this instruction.  Instead, he provided a copy of his prescription over three weeks later, on March 28, 2022, when Probation Officer Becker was conducting a home visit.  [ECF 1599, p. 3].  At that time, the provided prescription had apparently expired.  [ECF 1599, p. 3].  In other words, the defendant *did* provide a prescription, but he did not provide a "current" one and he did not provide it at the time Probation Officer Becker instructed him to do so.  [ECF 824, p. 3, ¶ 3].  For these reasons, the government respectfully requests that the Court overrule the defendant's objection to Violation 4.

***Violation 5.***  The defendant denies that he failed to notify the Probation Office that he terminated employment at Colorado Coalition for the Homeless ten days prior to the change.  [ECF 1601, p. 3].  The government anticipates that Probation Officer Becker will testify that she contacted the defendant on January 16, 2022, at which time the defendant stated that he was no longer employed at Colorado Coalition for the Homeless.  According to Probation Officer Becker, the defendant further stated that he had not been employed "for a couple of weeks."  [ECF 1599, p. 4].  This was the first time Probation Officer Becker learned of this change.  For these reasons, the government respectfully requests that the Court overrule the defendant's objection to Violation 5.

5

***Violation 7.***  The defendant denies that he failed to provide the financial information requested by the Probation Office.  [ECF 1601, p. 3].  The government anticipates that Probation Officer Becker will testify that, on March 2, 2022, she directed the defendant to complete financial cash flow documents and provide supporting documentation "by March 14, 2022."  [ECF 1599, p. 4].  The defendant failed to do so and was given a second deadline of April 12, 2022.  On April 5, 2022, the defendant purportedly provided the completed cash flow document, but "provided no supporting documentation," as originally directed.  [ECF 1599, p.4].  The defendant was then given even more time to provide these documents, but ultimately failed to provide the financial information that was requested.

***Violation 10.***  The defendant denies that he failed to notify the Probation Office of changes in employment in July 2022 at least 10 days prior to the relevant changes. [ECF 1601, p. 3]. The government anticipates that Probation Officer Becker will testify that the defendant attempted to contact her on Saturday, July 9, 2022.  At this time, Probation Officer Becker believed that the defendant was employed by You Move Me Denver.  When Probation Officer Becker returned the defendant's call on July 11, 2022, the defendant stated that he had started new employment at the Aurora Mall on July 9, 2022.  The defendant further stated that he remained (simultaneously) employed at You Move Me Denver.  Probation Officer Becker requested proof of employment for both jobs, but the defendant failed to provide any supporting documentation.  According to Probation Officer Becker, the defendant's GPS coordinates indicate that he did not return to You Move Me Denver as of July 2, 2022.  For these reasons, the government respectfully requests that the Court overrule the defendant's objection to Violation 10.

***Violation 11.***  The defendant denies that he changed his residence and failed to notify the Probation Office of this change.  [ECF 1601, p. 4].  The defendant acknowledges that he "spent nights sleeping away" from his residence of record, but maintains that "he did not move out of or change his residence."  [ECF 1601, p. 4]. There appears to be no dispute that, between June 28, 2022 and August 8, 2022, the defendant stayed overnight at his residence of record only 10 out of 42 nights.  [ECF 1599, p. 7; Gov't Ex. 5].  Instead, the parties simply dispute whether these actions violate the conditions of supervision requiring the defendant to notify the probation officer of any change in "residence," and to otherwise follow the instructions of the probation officer.  [ECF 824, p. 3. ¶¶ 3, 6].  The government submits that the defendant did not truly "reside" at his residence of record if he spent the vast majority of his nights sleeping somewhere else.  In addition, the government expects Probation Officer Becker to testify that she informed the defendant that she expected him to stay "nightly *at his residence of record*" and that she required the defendant to notify her if he planned to stay somewhere else overnight.  [ECF 1599, p. 7 (emphasis added)]. The defendant failed to do so.  For these reasons, the government respectfully requests that the Court overrule the defendant's objection to Violation 11.

### Guideline Range

At the time of his original sentencing, the defendant fell within criminal history category VI.  [ECF 846, ¶ 66].  If the Court finds that the defendant committed at least one Grade B violation, then the applicable Guideline range is **21-27 months' imprisonment**.  U.S.S.G. § 7B1.4(a).  If, however, the Court finds that the defendant

committed only Grade C violations, then the Guideline range is **8-14 months' imprisonment**. U.S.S.G. § 7B1.4(a).

## Sentencing Recommendation

The government respectfully submits that a sentence of imprisonment of 12 months and one day is appropriate in this case.

The defendant stands before this Court with *seven* prior felony convictions. The defendant has two prior convictions for possessing controlled substances [ECF 846, ¶¶ 51, 54], two prior convictions for possessing firearms as a felon [ECF 846, ¶¶ 59, 61], one conviction for vehicular homicide wherein the defendant fled the area without providing aid to the deceased pedestrian [ECF 846, ¶ 62], one conviction for felony escape [ECF 846, ¶ 63], and his most recent conviction before this Court for conspiring to distribute controlled substances. The defendant's criminal history also reflects a willingness to commit new law violations while on court-ordered supervision. Indeed, the defendant was on bond for the vehicular homicide case when he committed the drug distribution offense at issue here, and he was also on probation during several of the other occasions when he committed new offenses. [ECF 846, ¶¶ 60, 61; ECF 846-1, R-4].

Perhaps most notably, the defendant accrued all seven of the foregoing felony convictions by age 32. And he did so notwithstanding the fact that he grew up "in an upper-middle class neighborhood" and maintains a loving and supportive relationship with his family members. [ECF 846, ¶¶ 69–74]. The defendant is a self-admitted addict, who contends that "all of his arrests have been drug or alcohol related." [ECF

846, ¶ 89].  Indeed, the defendant cited his intense need for treatment as one of the reasons why a variant sentence was appropriate.  [ECF 708, p. 4].

Against this backdrop, the Court imposed a variant sentence of 40 months' imprisonment, as well as multiple special conditions of supervision, including participation in substance abuse testing and treatment, mental health treatment, and a search condition.  [ECF 824, p. 4].  Yet the defendant refused to take advantage of these resources.

After commencing supervision on October 18, 2021, the defendant failed to submit to drug testing as directed on eight occasions and failed to call the drug testing line as directed 107 times.  [ECF 1599, p. 5].  The defendant also failed to keep mental health evaluation and counseling appointments on nine occasions, and was "argumentative regarding his need for treatment services."  [ECF 1599, p. 5; *see also* Gov't Ex. 4].  In March 2022 and April 2022, the defendant submitted drug screens that returned positive for methamphetamine and marijuana, respectively.  [Gov't Exs. 1–3]. Rather than take responsibility for his conduct, the defendant repeatedly denied ingesting these substances.  Ultimately, the defendant was unsuccessfully discharged from treatment at Independence House in May 2022 due to his lack of participation. [Gov't Ex. 4; ECF 1599, p. 6].

During this period of ongoing non-compliance with mental health and substance abuse testing and treatment services, the defendant simultaneously failed to comply with simple directives from the Probation Office.  These included directives to notify the Probation Office of any changes in telephone number, employment, or residence.  With respect to employment, in particular, the defendant repeatedly failed to provide proof of

9

his claimed employment via paystubs. [ECF 1599, pp. 3, 4, 6; *see also* Gov't Ex. 6]. During periods when the defendant claimed to be unemployed and searching for a job, he nevertheless indicated summarily that he had an "adequate source of income." [ECF 1599, p. 4]. The defendant's statements prompted concerns from Probation Officer Becker as to the source(s) of the defendant's income. As a result of these concerns, Probation Officer Becker directed the defendant to provide cash flow documents and supporting documentation in the form of bank statements, bills, and paystubs. The defendant failed to do so. [ECF 1599, pp. 4-5; Gov't Ex. 6]. The defendant's refusal to account for his source(s) of income is all the more concerning given the nature of his most recent conviction: participating in a conspiracy to distribute various controlled substances in the Denver metropolitan area.

      The defendant argues that his violations are "mostly technical violations" that are "not extremely serious in nature." [ECF 1601, p. 4]. The government disagrees. Taken together, the defendant's violations paint a picture of an individual who is blatantly disregarding his supervision requirements, refusing to take advantage of the resources he is offered, and acting in an unnecessarily argumentative manner. [ECF 1600, p. 5 ("The following day, while meeting with the defendant at his residence, he stated, 'I don't give a fuck what the Judge says, I'm gonna do what I gotta do.'"); *see also* Gov't Ex. 6].

      The defendant contends that "a prison sentence will not assist Mr. Tillmon in getting any appropriate treatment he may need," and instead asserts that an additional period of supervised release "with the conditions that he participate in this testing and treatment would be more appropriate." [ECF 1601, p. 4]. But the defendant fails to

explain why this Court should expect testing and treatment to work the second time around when the defendant flatly refused to engage with these resources thus far on supervision. Indeed, the defendant was repeatedly offered testing and treatment services through Independence House beginning in October 2021, but failed to take advantage of these services and was unsuccessfully discharged from the program in May 2022. [Gov't Ex. 4]. Confusingly, in the same pleading, the defendant also states that he *objects* to the special conditions "of substance abuse treatment and testing, mental health treatment, Cognitive Behavioral Therapy (CBT)." [ECF 1601, p. 6].

      Regardless of the defendant's position on the appropriateness of additional treatment, the government believes that a period of incarceration is appropriate in this case. The government respectfully submits that a sentence of 12 months and one day of imprisonment will impress upon the defendant the need to change his pattern of behavior and his attitude toward the resources and services offered by the Probation Office.

Dated:  September 7, 2022

Respectfully submitted,

COLE FINEGAN
United States Attorney

By: *s/ Jena R. Neuscheler*
JENA R. NEUSCHELER
Assistant U.S. Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Fax: (303) 454-0409
E-mail: jena.neuscheler@usdoj.gov
*Attorney for the United States*

## CERTIFICATE OF SERVICE

      I hereby certify that on September 7, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties on record.

*s/ Jena Neuscheler*
Jena Neuscheler